1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### FORT LAUDERDALE DIVISION

### CASE NO.: 18-cv-60788-JEM

```
SPRINT COMMUNICATIONS, INC.,   )
                               )
          Plaintiff,           )              May 8, 2018
v.                             )
                               )
STEPHEN CALABRESE, et al.,     )              Pages 1 - 49
                               )
          Defendants.          )
_____/
```

HEARING PROCEEDINGS

BEFORE THE HONORABLE LURANA S. SNOW
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

On behalf of the Plaintiff:

                              MCGUIRE WOODS, LLP
                              800 East Canal Street
                              Richmond, VA 23219
                              BY:  LUCY J. WHEATLEY, ESQ.
                              BY:  AMANDA L. DEFORD, ESQ.

```
 1   APPEARANCES CONTINUED:

 2   On behalf of the Plaintiff:

 3                                MCGUIRE WOODS, LLP
                                  50 North Laura Street
 4                                Suite 3300,
                                  Jacksonville, FL  32202
 5                                BY:  EMILY Y. ROTTMANN, ESQ.

 6

 7   On behalf of the Defendants:

 8                                KB ASHUROV LAW GROUP P.C.
                                  7011 Knoll Center Parkway
 9                                Suite 160,
                                  Pleasonton, CA  94566
10                                BY:  BENJAMIN ASHUROV, ESQ.

11

12                                LOTT & FISCHER, LP
                                  255 Aragon Avenue,
13                                Coral Gables, FL 33134
                                  BY:  URY FISCHER, ESQ.

14

15   Transcribed By:

16
                                  BONNIE JOY LEWIS, R.P.R.
17                                7001 SW 13 Street
                                  Pembroke Pines, FL  33023
18                                954-985-8875
                                  caselawrptg@gmail.com
19

20

21

22

23

24

25
```

```
 1                    I N D E X
 2   THE WITNESS:                          PAGE:
 3
 4   MELISSA JOBE
 5
     Direct Examination by Ms. Wheatley:       13
 6
 7   Cross Examination by Ashurov:             19
 8
     Redirect Examination by Ms. Wheatley:     28
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

4

```
1              (Thereupon, the following proceedings were held:)
2              THE COURTROOM DEPUTY:  The United States District
3   Court for the Southern District of Florida is now in session.
4   The Honorable Lurana S. Snow presiding.
5              THE COURT:  All right.  Please be seated.  Okay.
6              THE COURTROOM DEPUTY:  Yes.  Calling Case Number
7   18-60788-civil-Martinez; Sprint Communications, Inc., et al.,
8   versus Stephen Calabrese, et al.
9              THE COURT:  All right.  May I have counsel's
10  appearances, please.
11             MS. WHEATLEY:  Lucy Wheatley from McGuire Woods for
12  the Plaintiff Sprint Communications, Inc., Your Honor.
13             THE COURT:  Is your microphone on or are you not
14  speaking into it?
15             MS. WHEATLEY:  I am not speaking into it.  Can you
16  hear me?
17             THE COURT:  Yes, I am going to remind the lawyers.
18              I do not mind if you stay seated, but you either need
19  to be seated or standing at the podium because we do not have
20  court reporters.  We have a recording system which works really
21  well if talk into the microphone and really badly if you don't.
22             MS. WHEATLEY:  I will try that again.
23             THE COURT:  Okay.
24             MS. WHEATLEY:  Lucy Wheatley from my McGuire Woods for
25  the Plaintiff Sprint Communications, Inc.
```

1          MS. DEFORD:  And Amanda DeFord from McGuire Woods for

2   Sprint Communications, Inc.

3          MS. ROTTMANN:  And finally, Emily Rottmann with

4   McGuire Woods on behalf of Sprint Communications, Inc.

5          THE COURT:  Okay.

6          MR. ASHUROV:  Good afternoon, Your Honor Benjamin

7   Ashurov on behalf all the Defendants.

8          THE COURT:  Okay.

9          MR. FISCHER:  And Ury Fischer on behalf of the

10  Defendants.

11         THE COURT:  All right.  We are here this afternoon for

12  the Plaintiff's motion for preliminary injunction.

13         I did not specifically set it for an evidentiary

14  hearing.  I am leaving that pretty much up to the parties.  So

15  if there is evidence that you wish to present, you may do so,

16  or if you just wish to have oral argument we can do that as

17  well.

18         But I understand that there are a couple of witnesses

19  and both sides have documentary exhibits; am I correct?

20         MS. WHEATLEY:  You are correct, Your Honor.

21         THE COURT:  Okay.

22         MR. ASHUROV:  Yes, Your Honor.

23         THE COURT:  All right.  I can give you an opportunity

24  for opening statement.  I have gone over the papers.

25         And I think I am pretty well familiar with the issues,

1  but sometimes lawyers feel strongly about that.  So I shall

2  leave that up to you.

3           If the Plaintiff wants to summarize your position you

4  may.  If you just want to go ahead, I understand you have two

5  witnesses.

6           Is that right?

7           MS. WHEATLEY:  Yes, though we may only need to call

8  Miss Jobe.

9           THE COURT:  All right.  So you may just call your

10 witness or if you want to summarize your position, you may do

11 that as well.

12          MS. WHEATLEY:  If I may briefly summarize our

13 position, Your Honor.

14          It would be our position that we have met our burden

15 here to show a cause for a preliminary injunction to be issued

16 and that the key facts are not in dispute.

17          The Defendants have adopted a counterfeit version of

18 Sprint's famous 30-year-old Nextel trademark.  And they are

19 using it to deceive consumers into buying Defendants' unknown

20 telecom devices while thinking they are buying genuine Nextel

21 products.

22          The Defendants have not disputed that they are using

23 the Nextel trademark and the Nextel branding, including the

24 yellow and black coloring and the logo treatment.  The only

25 argument they have made is abandonment.

1         Sprint has presented sworn testimony that Sprint

2    continues to use the Nextel trademark.  The Nextel trademark

3    was renewed as recently as 2015 and is incontestable, which

4    gives in the Eleventh Circuit.

5         To make out their burden to show abandonment,

6    Defendants have to show both non use and an intent not to

7    resume use.  The only evidence Defendants have put forward is

8    some news argument that suggest that Sprint ceased using Nextel

9    as its flagship brand, but that on its own does not establish

10   non use.

11        And Sprint has put forward samples of product

12   packaging showing continuing use of the Nextel mark, which we

13   would submit along with the incontestable trademark

14   registrations more than meets Sprint's burden to show both use

15   and a continuing intent to use.

16        The only other point I would lay out here on argument

17   is that this is an example of a preliminary injunction where

18   the public interest weighs unusually strongly in favor of

19   issuing an injunction.

20        The particular devices that are at issue here are used

21   by First Responders.  So knowledge of the source of these

22   devices is, in fact, very important and it is extremely

23   dangerous to have First Responders buying devices that they

24   think are from a known brand and are, in fact, from a totally

25   unknown third party.  So we would submit here that there is

1  some urgency to issue an injunction.

2         THE COURT:  An argument that was presented rather

3  recently, but, yes.  All right.  I understand.

4         Do you want to do your opening now or do you want to

5  defer?

6         MR. ASHUROV:  I would like to do it now, Your Honor.

7         THE COURT:  All right.  We will let you do that and

8  then we will call the witnesses.

9         MR. ASHUROV:  Thank you.

10         Good afternoon, Your Honor.  May it please the Court.

11  A preliminary injunction is a drastic remedy meant to address

12  clear imminent and irreparable harm.

13         In this instance, Your Honor, there is no such harm or

14  even the possibility of such harm.  And this is simply not the

15  kind of case or the kind of fact pattern that a preliminary

16  injunction is meant to address.

17         Your Honor, the Defendants are not some nefarious

18  criminal counterfeiters that are looking to make fake copies of

19  Louis Vuitton bags or Rolex watches.  They are two small

20  businessmen that saw a mark that wasn't being used and believed

21  it was abandoned and in good faith decided to use it in

22  connection with their business.

23         Nextel is not some ongoing famous brand that the

24  consumers still flock to, to this day.  It is an old brand that

25  was abandoned a long time ago.  What sort of harm could warrant

1  a preliminary injunction in connection with a defunct brand

2  that is no longer used today?

3        As I am sure the Court is aware, the movant bears the

4  burden of proving each of the four elements in the preliminary

5  injunction analysis and the Defendants submit that Sprint falls

6  well short on each of these elements.

7        Sprint cannot show a likelihood of success on the

8  merits of any of its claims.  All of its claims require Sprint

9  to have valid, subsisting, and protectable trademarks in the --

10  rights in the Nextel mark.

11        Now the Defendants, despite having no opportunity to

12  conduct discovery to date, have come forward with overwhelming

13  evidence consisting mostly of admissions by Sprint that it has

14  ceased using Nextel and it has no intention to do so and that

15  the cessation occurred on June 30th of 2013.

16        In the face of this overwhelming evidence and having

17  all the time and all the incentive to provide evidence of use,

18  Your Honor, the Plaintiff has come forward with one image.  One

19  image of a phone that the Jobe declaration purports to show

20  recent use for which the Defendants actually discovered was

21  from 2015.

22        So the only piece of evidence to rebut the presumption

23  of abandonment that applies in this case is from an old picture

24  that is not even from the last three years.

25        THE COURT:  From where does the presumption of

1   abandonment arise?

2          MR. ASHUROV:  In the evidence of non use in the last

3   three years, Your Honor.

4          Now, in its reply, Sprint attempts to again mislead

5   the Court by slowing a phone that is apparently being sold on

6   Sprint's website.  Now, that phone, that image does not show

7   Nextel being used on that phone.

8          It is not the same phone that was shown in the

9   original image from the original declaration.  And in the

10  surreply, in Defendants' surreply they have come forward with

11  evidence that shows that there is no phone anywhere in it.  And

12  with us today we actually have a copy of that packaging as

13  well.

14         In addition to not being able to demonstrate a

15  likelihood of success on any of its claims given Sprint's

16  abandonment of the Nextel mark, there is also no irreparable

17  harm here, Your Honor.

18         It's a defunct brand.  The goodwill has already been

19  written off by Sprint in 2009 and per Sprint's own valuation

20  the goodwill has diminished to zero.  Moreover, this has been

21  going on for close to 18 months.

22         The Defendants have been selling these devices.  They

23  have been out there.  There has been no irreparable harm to

24  date that Sprint has pointed out, merely pointed out the

25  possibility that there is some, but if there has not been some

1  to date there is likely no irreparable harm going forward.  And

2  that delay, which is quite significant in the preliminary

3  injunction hearing, is fatal to Sprint's claim of irreparable

4  harm.

5          As to the remaining two factors, the balance of the

6  harm, an injunction here would only harm the Defendants, Your

7  Honor.  They have made investments in their business.

8          As I mentioned before, they are small businessowners.

9  They have invested personal funds in a business in connection

10  with a mark that, based on overwhelming representations from

11  Sprint, was abandoned.

12          Now, as far as the public interest, the public first

13  and foremost has an interest in maintaining unfettered

14  competition, Your Honor.  It also has an interest in preventing

15  trademark warehousing, which is why the abandonment concept is

16  in trademark law.  If no trademarks can go abandoned companies

17  would simply warehouse them forever preventing others from

18  using them.

19          Now, on the point of public safety, first, Your Honor,

20  the Defendants make quality products.  There is no evidence

21  that their products are inferior in any way.  They use current

22  technology.  They are made by Defendant Calebrese who has been

23  a cell phone fanatic since he was 15 years old.  He has issued

24  patents in his name.

25          Now, on the other hand, Sprint and Sprint's treatment

1  of the Nextel products was essentially what brought about its

2  downfall.  The inferior quality that users experience is well

3  documented in complaints, Your Honor.

4       So, the fact that First Responders may use it, which

5  there is no evidence for that either, the Defendants don't

6  particularly sell to First Responders or --

7       THE COURT:  I think the argument was that First

8  Responders utilize the initial Nextel product which was a

9  push-to-talk.

10      MR. ASHUROV:  Perhaps before we shut down in 2013, but

11  it has been five years since that time.  And there is

12  overwhelming public evidence that Sprint abandoned and shut

13  down Nextel and there is no doubt that First Responders are

14  aware of that.

15      Thank you, Your Honor.

16      THE COURT:  All right.  The Plaintiff may call your

17  witness.

18      MS. WHEATLEY:  May I call Melissa Jobe to the stand,

19  Your Honor.

20      THE COURT:  All right.

21      MS. WHEATLEY:  Your Honor, may I approach to give the

22  witness an exhibit binder?

23      THE COURT:  Yes, you may or I may do it.  I have a

24  brand new law clerk.  So we are working this out together.

25  (Witness sworn.)

1      THE COURTROOM DEPUTY:  Please state your name for the

2  record and spelling it for the recording.

3      THE WITNESS:  My name is Melissa Jobe; J-O-B-E.

4      THE COURT:  All right.  You may inquire.

5      MELISSA JOBE, PLAINTIFF'S WITNESS SWORN

6                    DIRECT EXAMINATION

7  BY MS. WHEATLEY:

8  Q.  Good afternoon, Miss Jobe.

9      Where are you currently employed.

10 A.  **I'm employed by Sprint Management Company.**

11 Q.  And how is Sprint Management Company related to the

12 Plaintiff Sprint Communications, Inc.?

13 A.  **It's a wholly subsidiary of Sprint Communications.**

14 Q.  And how long have you worked for Sprint?

15 A.  **Almost 14 years.**

16 Q.  And what is your current position at Sprint?

17 A.  **I am senior counsel in the intellectual law group.**

18 Q.  And what are your primary job responsibilities?

19 A.  **One of my primary job responsibilities is managing all of**

20 **Sprint's trademarks.  I do trademarks and I do trademark filing**

21 **and I monitor trademark use and misuse.**

22 Q.  Okay.  Do you have any responsibilities related to the

23 Nextel trademark?

24 A.  **Yes.  I manage and maintain the Nextel marks.**

25 Q.  Does Sprint currently use the Nextel trademarks?

1  A.  **Yes, we do.**

2  Q.  How does Sprint use the Nextel trademark?

3  A.  **We use them on some of our rugged phones.**

4  Q.  And which rugged phones are those?

5  A.  **We use them on the Sonim XP Strike IS.**

6          THE COURT:  Can you spell Sonim for me, please?

7          THE WITNESS:  It's S-O-N-I-M.

8          THE COURT:  And give me the rest of the designation,

9  please.

10          THE WITNESS:  XP Strike IS.

11          THE COURT:  Okay.  Thank you.

12  BY MS. WHEATLEY:

13  Q.  Does Sprint do any licensing of the Nextel brand?

14  A.  **Yes.  We have a license with NAI Inc., which licenses all**

15  **of the entire portfolio of Nextel marks to them to use in Latin**

16  **America.**

17  Q.  Does Sprint own any Nextel trade name subsidiaries?

18  A.  **Yes, we do.  We have several Nextel entities that hold**

19  **spectrum which is a building block of our network.**

20  Q.  And the Sonim XP device that you referenced, can you tell

21  me what sort of device that is?

22  A.  **It's a handheld wireless device.  It's a rugged device.**

23  Q.  And what does rugged device mean?

24  A.  **It means it is able to withstand extreme conditions.  It**

25  **can be submerged in water for over 30 minutes.  And it's got a**

1  hardened shell so it can be beat up pretty badly and still

2  function.

3  Q.  And does Sprint currently sell the Sonim XP Strike IS

4  device?

5  A.  Today maybe it -- today it might be out of stock, but yes,

6  we have.

7  Q.  And when was the last time you checked sales for the Sonim

8  XP Strike IS?

9  A.  I have sales through the end of December of 2017.

10  Q.  Okay.  And so was the Sonim XP Strike IS sold in 2017?

11  A.  It was.

12        MS. WHEATLEY:  I would like to introduce what has been

13  pre-marked as Exhibits 40 to 41 and let the record reflect I am

14  showing them to opposing counsel.

15        MR. ASHUROV:  Sorry.  Your Honor, it's the first time

16  we've seen this exhibit.

17        THE COURT:  Take your time.  I understand.

18        MS. WHEATLEY:  May I approach, Your Honor?

19        THE COURT:  Yes, you may.

20  BY MS. WHEATLEY:

21  Q.  Turning to the item that has been pre-marked as Exhibit 40,

22  do you recognize that item?

23  A.  Yes, it's a box for the Sonim XP Strike IS.

24  Q.  And how do you recognize this item?

25  A.  I obtained this box in October of 2017.

1 Q.   Did you bring it with you today?

2 A.   **I did.**

3        MS. WHEATLEY:  I would like to offer Exhibit 40 into

4 evidence, Your Honor.

5        THE COURT:  Any objection or any voir dire?

6        MR. ASHUROV:  Yes, Your Honor.

7        We object.  We weren't informed of the existence of

8 this evidence prior to today.

9        THE COURT:  And you are prejudiced how?

10        I mean, I understand your point, but rather than

11 trying to resume the hearing at a later date.  I am going to

12 overrule the objection for now with the understanding that it

13 may be necessary for you to try to rebut it at a later time,

14 but I will let it in for now just to move the proceedings

15 along.

16        MS. WHEATLEY:  And Your Honor, to clarify, this is in

17 response to the surreply submitted yesterday by Defendants at

18 2:00 p.m.

19 BY MS. WHEATLEY:

20 Q.   So, Miss Jobe, I believe you said you first obtained this

21 box in October of 2017?

22 A.   **That's correct.**

23 Q.   And where did you obtain it from?

24 A.   **I ordered it from our sales group.**

25 Q.   Does the Nextel trademark appear on this box?

```
 1  A.   It does.

 2  Q.   Can you show us where?

 3  A.   Yes, it's on the back.  It says Nextel mobile phone.

 4  Q.   Thank you.

 5            THE COURT:  Let's see.

 6            Yes, I guess you can point it out.  All right.  For

 7  the record, since it was pointed out to me, the Nextel

 8  designation is toward the lower right-hand corner of the back

 9  of the box.

10            MS. WHEATLEY:  Thank you, Your Honor.

11  BY MS. WHEATLEY:

12  Q.   Miss Jobe, do you recognize the document that I have handed

13  you pre-marked as Exhibit 41?

14  A.   I do.

15  Q.   And how do you recognize this document?

16  A.   This is a getting started guide that is included in the box

17  for this phone.

18  Q.   And did you bring this document with you today?

19  A.   I did.

20            MS. WHEATLEY:  I would like to offer Exhibit 41 into

21  evidence, Your Honor.

22            THE COURT:  Same objection?

23            MR. ASHUROV:  Same objection, Your Honor.

24            THE COURT:  All right.  Noted and overruled.  Exhibit

25  41 will be received.
```

1  BY MS. WHEATLEY:

2  Q.   Does the Nextel trademark appear in this instruction

3  manual?

4  A.   **It does.**

5  Q.   Can you show the Court where it appears and narrate where

6  it appears?

7  A.   **It is on the back cover in the center and it says Nextel**

8  **with an R-ball mobile phone TM.**

9  Q.   Thank you.

10     Miss Jobe, did you review the exhibits attached to the

11 surreply filed by Defendants today?

12 A.   **I did.**

13        MS. WHEATLEY:  Your Honor, may I approach?

14        THE COURT:  Yes.

15        MS. WHEATLEY:  And this, I will represent, is the

16 supplemental declaration of Jeffrey A. Kaplan that was

17 pre-marked by Defendants on their exhibit list as Defendants'

18 Exhibit T.

19 BY MS. WHEATLEY:

20 Q.   Miss Jobe, can you look at the fourth page of Exhibit A of

21 this document?

22 A.   **Yes.**

23 Q.   What does this particular picture show?

24 A.   **It shows the back of the box.**

25 Q.   What year is the copyright notice for this box?

1  A.   **It's copyright 2012.**

2  Q.   And looking back at Exhibit 40, what is the year for the

3  copyright notice there?

4  A.   **It's copyright 2013.**

5  Q.   Can you explain why the Nextel mark would not appear on the

6  Sonim box with copyright 2012, but would appear on the Sonim

7  box with 2013?

8  A.   **In 2012 we were still operating the iDEN networks.**

9       **It was decommissioned in 2012 and that's the time when we**

10  **made the decision to begin using the Nextel mark with our**

11  **rugged devices.  And so that's when it started showing up on**

12  **the Sonim boxes in 2013.**

13        MS. WHEATLEY:  Thank you, Miss Jobe.  I have no

14  further questions.

15        MR. ASHUROV:  Your Honor, permission to approach,

16  please?

17        THE COURT:  Yes, you may.

18        All right.  These are exhibits for me, I take it.

19        MR. ASHUROV:  Yes, Your Honor.

20        THE COURT:  All right.

21        MR. ASHUROV:  Your Honor, may I approach the witness,

22  please?

23        THE COURT:  Yes, you may.

24                          CROSS EXAMINATION

25  BY MR. ASHUROV:

1  Q.   Good morning, Miss Jobe.

2       Miss Jobe, I would like you to turn your attention to what

3  has been premarked as Defendants K.   Miss Jobe, would you

4  please take a look at this document.

5       Have you had a chance to look at the document?

6  A.   **Yes.**

7  Q.   Okay.   If I may please turn your attention to the first

8  page.   Would you please tell the Court if you recognized this

9  document.

10 A.   **It appears to be a 10-K filing from Sprint Corporation to**

11 **the Securities and Exchange Commission.**

12 Q.   And what is a 10-K, Miss Jobe?

13 A.   **It's a form that we report to the Securities and Exchange**

14 **Commission.**

15 Q.   And this form was filed by Sprint; is that correct?

16 A.   **I assume so, yes.**

17 Q.   Okay.   If I may please turn your attention to the following

18 page designated as Page 12.   At the very lower bottom section

19 titled patents, trademark, and licenses --

20 A.   **I don't have Page 12.**

21 Q.   It's the second page of the exhibit, Miss Jobe.

22 A.   **All right.   Yes.**

23 Q.   Do you see a section entitled patents, trademark, and

24 licenses?

25 A.   **I do.**

1  Q.   Now, that section states:

2       "We own numerous patents, patent applications, service

3  marks, trademarks, and other intellectual properties in the

4  U.S., and other countries, including Sprint, Nextel, Direct

5  Connect, Boost Mobile, and Assurance Wireless."

6       Is that correct?

7  A.   **That's what it says, yes.**

8  Q.   If I may turn your attention to the following page, please.

9  Do you recognize this document, Miss Jobe?

10 A.   **It appears to be another 10-K filing with the Securities**

11 **and Exchange Commission filed by Sprint corporation.**

12 Q.   And this one was filed on the fiscal year ending March 31

13 of 2015; is that correct?

14 A.   **Where would I find that?**

15 Q.   It appears right under the form 10-K title just a couple of

16 lines below that.

17 A.   **Oh, I see.  Fiscal year ended March 31st of 2015, yes.**

18 Q.   If I may turn your attention to the following page, Miss

19 Jobe.

20 A.   **Okay.**

21 Q.   Do you see the section titled patents, trademarks, and

22 licenses?

23 A.   **I do.**

24 Q.   And this paragraph begins by saying:

25      "We own numerous patents, patent applications, service

1  marks, trademarks, and other intellectual properties in the

2  U.S. and other countries, including Sprint Nextel, Connect

3  Direct, Boost Mobile, and Assurance Wireless."

4      Is that correct?

5  A.  **Correct.**

6  Q.  Now, if I may turn your attention to the following page,

7  please.  Do you recognize this document, Miss Jobe?

8  A.  **It appears to be another 10-K filed by Sprint Corporation**

9  **with the Securities and Exchange Commission.  It seems to be a**

10 **report for the fiscal year ending March 31st of 2016.**

11 Q.  Thank you.

12     Now, if I may turn your attention to the following page,

13 please.  The section that reads patents, trademarks, and

14 licenses starts by saying:

15     "We own numerous patents, patent applications, service

16 marks, trademarks, and other intellectual properties in the

17 U.S., including Sprint, Boost Mobile, and Assurance Wireless."

18     Is that correct?

19 A.  **That is correct.**

20 Q.  Nextel is not included in that list; is that correct?

21 A.  **Not that list, no.**

22 Q.  And Miss Jobe, if I may turn your attention to the

23 following page, please.  Please let the Court know if you

24 recognize this document.

25 A.  **It appears to be a 10-K filing by Sprint Corporation to the**

1  **Securities and Exchange Commission filed for the fiscal year**

2  **ending March 31st of 2017.**

3  Q.   Thank you.

4      And if I may turn your attention to the following page,

5  please, at the very top?

6  A.   **Yes.**

7  Q.   The patents and trademarks and licenses section states:

8      "We own numerous patents, patent applications, service

9  marks, trademarks, and other intellectual properties in the

10  U.S. and other countries, including Sprint, Boost Mobile, and

11  Assurance Wireless."

12      Is that correct?

13  A.   **That's correct.**

14  Q.   Nextel doesn't appear in that paragraph; is that correct?

15  A.   **That's correct.**

16  Q.   Now, Miss Jobe, did you review the evidence submitted

17  together with your declaration in Sprint's motion filed on

18  April 13th?

19  A.   **I believe so, but it was a lot of information.  I need more**

20  **information to state whether I reviewed everything.**

21      MR. ASHUROV:  Your Honor, may I approach the witness,

22  please?

23      THE COURT:  You may.

24      MR. ASHUROV:  Your Honor, Defense counsel would like

25  to move this exhibit into evidence, please.

1    THE COURT:  Which exhibit is it?

2    MR. ASHUROV:  Defendants Exhibit P, the declaration of

3  Melissa Jobe filed together with the motion.

4    THE COURT:  All right.  Any objection to the admission

5  of Exhibit P?

6    MS. WHEATLEY:  Well, it is not a complete copy and it

7  doesn't include the exhibits.  So we have no objection as long

8  as it's clear that this is omitting the exhibits which are --

9    THE COURT:  All right.  So Exhibit P will be received.

10    It is noted that it is a declaration without the

11  exhibits that were attached to it at the time it was initially

12  filed.

13    MR. ASHUROV:  Thank you, Your Honor.

14  BY MR. ASHUROV:

15  Q.  Miss Jobe, would you please take a moment to look at this

16  document.

17  A.  **Okay.**

18  Q.  Miss Jobe, this declaration doesn't reference any sales

19  figures; is that correct?

20  A.  **That's correct.**

21  Q.  And this declaration doesn't reference any invoices; is

22  that correct?

23  A.  **That's correct.**

24  Q.  And this declaration doesn't reference any licensing

25  activities in connection with Nextel; is that correct?

1  A.  **I'm not sure.  I need to review it.**

2  Q.  You can take your time.  Thank you.

3  A.  **I don't believe there is any information in this**

4  **declaration about any licensing of the Nextel mark.**

5  Q.  Now, Miss Jobe, if I may turn your attention to Paragraph

6  33 of this exhibit, please.

7  A.  **Okay.**

8  Q.  This paragraph references a disclaimer which states that:

9      "Nextel Inc. is not affiliated with Sprint Corporation or

10  its defunct wholly owned subsidiary Nextel Corporation and

11  makes no representation thereof."

12      Is that correct?

13  A.  **That's what it says, yes.**

14      MR. ASHUROV:  Your Honor, Defendants' counsel would

15  like to move to admit the previous exhibit, which is

16  Defendants' Exhibit K in which Miss Jobe was questioned prior

17  to this Exhibit P.

18      THE COURT:  All right.  Any objection to Exhibit K?

19      MS. WHEATLEY:  No, Your Honor.

20      THE COURT:  All right.  Exhibit K will be received.

21  BY MR. ASHUROV:

22  Q.  Miss Jobe, going back to the exhibit in front of you,

23  Exhibit P, this exhibit doesn't reference any 2017 sales of the

24  Sonim XP Strike IS phone; is that correct?

25  A.  **No, it did not include that.**

1  Q.   And in the supplemental declaration that you submitted in

2  connection with the reply, there is also no mention of any

3  sales of the Sonim XP Strike IS; is that correct?

4  A.   **That's correct.**

5  Q.   Now, Miss Jobe, Sprint issued public statements and press

6  releases concerning the June 30th of 2013 shutdown of Nextel;

7  is that correct?

8  A.   **That's incorrect.**

9  Q.   Sprint did not issue any press releases regarding any

10  shutdown of Nextel?

11  A.   **It did not.  It issued press releases on the**

12  **decommissioning of the iDEN network.**

13         THE COURT:  And the iDEN network was what?

14         THE WITNESS:  That was a legacy network that we

15  acquired out of the Sprint/Nextel merger.  It was the

16  technology they used that made the push-to-talk on the Nextel

17  network work.

18         THE COURT:  Is the Sonim device a push-to-talk device?

19         THE WITNESS:  Not specifically, no.

20         THE COURT:  Okay.

21         MR. ASHUROV:  Your Honor, may I approach the witness,

22  please?

23         THE COURT:  You may.

24         MR. ASHUROV:  Your Honor, I have handed the witness

25  what has been pre-marked as Defendants' Exhibit C and the

1  Defendant moves to introduce this evidence into evidence,

2  please.

3          THE COURT:  Defendants C?

4          MS. WHEATLEY:  Objection, Your Honor.

5          THE COURT:  All right.  What is the objection?

6          MS. WHEATLEY:  Defendants' Exhibit C hasn't been

7  properly authenticated and it consists of hearsay.

8          THE COURT:  That's true.

9  BY MR. ASHUROV:

10 Q.  Miss Jobe, do you recognize this exhibit?

11 A.  **No, I don't.**

12 Q.  Can you please look down at the URL listed at the bottom of

13 the exhibit.

14 A.  **Okay.**

15 Q.  Does that help you understand what this exhibit is?

16 A.  **Well, the URL indicates that it came from the Sprint**

17 **newsroom so it could be a press release, but the print on this**

18 **-- on my copy is so garbled at the top that I can't tell what**

19 **the header is.**

20 Q.  I'm putting this exhibit aside for the moment.

21     You mentioned earlier that Nextel -- that Sprint did inform

22 people in the public that the Nextel network was being shut

23 down; is that correct?

24 A.  **The iDEN network was being decommissioned.**

25 Q.  And that network was, in fact, decommissioned; is that

1  right?

2  A.   **That's correct.**

3  Q.   And that network is not in use by Sprint today; is that

4  correct?

5  A.   **Well, we use the spectrum from that network.**

6      **That's why we had to decommission it.  We needed to use the**

7  **spectrum to continue evolving our current network to LTE.  So**

8  **to say the network doesn't exist, it just evolved into a**

9  **different technology.**

10 Q.   Is that network used in connection with any Nextel

11 products?

12 A.   **Yes.**

13 Q.   And which products are those?

14 A.   **The Nextel products; the Sonim devices.**

15      MR. ASHUROV:  Your Honor, I have no more questions for

16 the witness at this time.

17      THE COURT:  All right.  Any redirect?

18      MS. WHEATLEY:  Just briefly, Your Honor.

19                  REDIRECT EXAMINATION

20 BY MS. WHEATLEY:

21 Q.   Miss Jobe, could you turn back to what has been marked

22 Exhibit K?

23 A.   **Yes.**

24 Q.   And would you mind looking at the highlighted paragraph on

25 the very last page of Exhibit K?

1  A.   **Sure.**

2  Q.   This lists three Sprint trademarks; is that correct?

3  A.   **That's correct.**

4  Q.   Are all of the trademarks that Sprint used in 2017 listed

5  here?

6  A.   **No.**

7  Q.   If you could give me your best sort of ballpark about how

8  many registered trademarks do you think Sprint used in 2017?

9  A.   **Probably over a hundred registered -- U.S. registered**

10 **trademarks.**

11        MS. WHEATLEY:  Thank you.  No further questions Your

12 Honor.

13        THE COURT:  Do you know what the status of the direct

14 detective mark is.

15        THE WITNESS:  It's still a valid mark we have direct

16 and we recently have Sprint direct detective.

17        THE COURT:  Did you have any involvement in filing --

18 it looks like the 10-K is an annual report to the S. E C.

19        THE WITNESS:  Right.

20        THE COURT:  Did you participate in that in any way?

21        THE WITNESS:  No.

22        THE COURT:  So you don't know why the direct detective

23 annex tell were left --

24        THE WITNESS:  That is correct.

25        THE COURT:  All right.  You may step down.

1          Any other witnesses?

2          THE WITNESS:  Should I leave this here?

3          THE COURT:  Yes, all the exhibits and stuff, the

4   lawyers will take care of that.

5          MS. WHEATLEY:  And no further witnesses for the

6   Plaintiff, Your Honor.

7          THE COURT:  All right.  Do you wish to introduce any

8   further documents?

9          MS. WHEATLEY:  Your Honor, may we treat the

10  declaration submitted in connection with the briefing as

11  admitted?

12         THE COURT:  The ones that the Defendants referred to?

13         You are going to have to identify them because my

14  record is going to be a mess if you don't tell me exactly.

15         MS. WHEATLEY:  So in connection with the briefing, we

16  submitted a declaration of Melissa Jobe and the associated

17  exhibits.  A declaration of Brian Mucosa and the associated

18  exhibits.

19         THE COURT:  Wait, wait, wait.

20         You gave me an exhibit list.  So let's go through it.

21  Exhibit 1 is the declaration of Miss Jobe.  That's ECF 61,

22  Pages 1 through 17.

23         MS. WHEATLEY:  Correct, Your Honor.

24         And then, exhibits, Plaintiff's Exhibits 2 through 31

25  are the exhibits to the Jobe declaration that were submitted in

1    connection with the preliminary injunction motion.

2           And then, Plaintiff's Exhibit 32 is the declaration of

3    Brian Mancuso.  And then, Plaintiff's Exhibit 33 through 36 are

4    the exhibits attached to the declaration of Brian Mancuso.

5           And then, Plaintiff's Exhibit 37 is the supplemental

6    declaration of Melissa Jobe.  And then, Plaintiff's Exhibits 38

7    through 39 are the exhibits that were attached to the

8    supplemental declaration of Melissa Jobe.

9           And then, we moved into evidence Exhibits 40 and 41

10   and we don't need to submit Exhibits 42 and 43 at this time.

11          THE COURT:  All right.  Any objection to the Court's

12   consideration for purposes of this hearing of Exhibits 1

13   through 39?

14          MR. ASHUROV:  No objection, Your Honor.

15          THE COURT:  All right.  One through 39 will be

16   received and 42 and 43 will be designated as not offered.

17          All right.  Any evidence or testimony from the

18   Defendants at this time?

19          MR. ASHUROV:  Your Honor, the Defendants would like to

20   include into evidence the declaration of Benjamin Ashurov,

21   which was part of the briefings in connection with this motion.

22          THE COURT:  Where is it on your exhibit list?

23          MR. FISCHER:  I don't believe it is in the exhibit

24   list, Your Honor.  The exhibits, but the declaration itself is

25   only included as part of the briefing.

1          MR. FISCHER:  We have a copy here, Your Honor, for

2    you.

3          THE COURT:  All right.  Let's mark that as Exhibit V

4    and we will add it to your list.  And that is the declaration

5    of?

6          MR. FISCHER:  Benjamin Ashurov, counsel.

7          MS. WHEATLEY:  Mr. Ashurov, could you give us a copy

8    of that?

9          THE COURT:  Okay.  Anything else that you wish to move

10   in?  I think P has been received.  We received K and P.

11         MR. ASHUROV:  We do not have an extra copy, but it's

12   ECF-20, I believe.

13         THE COURT:  Yes.  That is the declaration of Mr.

14   Ashurov, right?

15         MR. ASHUROV:  That is correct.

16         THE COURT:  All right.  I will pull it out.

17         Anything else?

18         MR. ASHUROV:  Your Honor, Defendants would also like

19   to include the supplemental declaration of Jeffery Kaplan and

20   its attached exhibits, which has been pre-marked as Defendants'

21   Exhibit T.

22         MS. WHEATLEY:  Your Honor, we do have an objection to

23   the submission of that declaration.  The photographs attached

24   to that declaration are not properly authenticated in the

25   declaration.

1        THE COURT:  All right.  Let me take a look.

2        What is wrong with the authentication?

3        MS. WHEATLEY:  It doesn't say how Kaplan got a Sonim

4   XP Strike phone.  It merely says it was picked up from the

5   other Defendant in this case.

6        THE COURT:  Any response to that objection?

7        MR. ASHUROV:  Your Honor, it's a Sprint's phone.

8        We have a copy of it right here.  If there is any

9   objection as to the authenticity of it, of the photographs,

10  let's hear it.  It's a box that is sitting right here as one of

11  their phones.

12        Are they claiming it is not a Sprint phone?  And if

13  so, I guess they can go on the record and say this is not a

14  Sprint phone and this is a counterfeit or something.

15        THE COURT:  Well, I am going to overrule the

16  objection.  That goes to the weight and not the admissibility

17  of it.  He got it.  This is what it looked like.  If there is

18  something wrong with it that can be addressed.

19        What else?  Any other exhibits?  Some of them are

20  exhibits from the Plaintiff.

21        MR. ASHUROV:  That would be it, Your Honor.

22        THE COURT:  All right.  Any rebuttal evidence?

23        I am not suggesting you should have some.  It is just

24  a tennis match.  I always say that that's what the rules are.

25  The ball goes back and forth.

1    MS. WHEATLEY:  No, Your Honor.

2    THE COURT:  All right.  Let's hear any argument that

3  the Plaintiff wishes to make at this time.  And I would like

4  you to address the issue of the time of your filing of the

5  motion for preliminary injunction.

6    MS. WHEATLEY:  Yes, Your Honor.

7    I will address the timing issue first.  As stated in

8  Miss Jobe's declaration, which has been entered into evidence,

9  Sprint first learned of use of Nextel trademark by Defendants

10  in approximately March of 2017.

11    Sprint, then, sent a cease and desist letter, which

12  has also been entered into evidence as an attachment to Miss

13  Jobe's declaration of April 2017.

14    Along with that cease and desist letter to Defendant

15  Calebrese and Nextel Inc., Sprint also sent a large number of

16  cease and desist letters to the distributors listed on the

17  Nextel Worldwide.com website, a copy of which is attached to

18  Miss Jobe's declaration.

19    Following that round of correspondence, many of the

20  distributors responded and agreed to stop using the mark.  And

21  copies of that correspondences are attached to Miss Jobe

22  declaration and a summary of that correspondence is included in

23  Miss Jobe's declaration.

24    I filed continuing negotiations with Defendant in

25  October of 2017.

1          THE COURT:  Calebrese?

2          MS. WHEATLEY:  Defendant Calebrese, yes.

3          Defendant Calebrese's attorney Leonard Rubin sent an

4   e-mail in which he stated that Defendants had ceased using the

5   Nextel mark and the website was taken down.

6          And that e-mail is actually attached to Miss Jobe's

7   supplemental declaration as Plaintiff's Exhibit Number 39 in

8   the binder and we can turn to --

9          THE COURT:  Oh, we can turn to it.  Yes, that's fine.

10          MS. WHEATLEY:  If you will look at it, it says that:

11          "Mr. Calebrese has advised me that he conducted his

12   business marketing on-line, so he has no marketing or printed

13   material bearing the mark Nextel.  And so, consequently, there

14   is nothing to destroy."

15          Mr. Calebrese has also advised me that pursuant to

16   your recent demand he has ceased using the marks on any

17   products or services over which he has any sort of controlling

18   interest and has ceased all offers for sale of

19   telecommunication services and equipment using the Nextel

20   mark."

21          Sprint relied justifiably on that representation from

22   a member of the Bar.  And as you can see, Stephen Calebrese is

23   cc'd here.  Sprint received further assurances as recently as

24   February 8th of 2018, in which Mr. Rubin again sent an e-mail

25   saying that Nextel Inc. and Mr. Calebrese had ceased all use of

1  the Nextel mark.

2        That e-mail is also attached to Miss Jobe's

3  declaration.  That is Exhibit 21.  We can turn to that.

4        As you can see, that e-mail says really though last

5  two lines is the most relevant:

6        "My client has stopped using the mark.  This should

7  allow you to close your file on this matter."

8        With respect to retro brands, retro brands -- and we

9  have submitted a copy of his cancellation and filed a

10  cancellation petition with the USPTO related to Sprint/Nextel's

11  trademarks on approximately January 30th of 2018.

12        That was Sprint's first notice that retro brands had

13  any interest in the Nextel trademark.  It took some time to

14  investigate the connection between these two entities and

15  learned that, contrary to this February 8th of 2018

16  representation, Mr. Calebrese and Nextel Inc., were in fact

17  still using.

18        And Sprint filed its preliminary injunction motion

19  very shortly thereafter.  So we do not believe there was any

20  delay whatsoever, Your Honor.

21        THE COURT:  Okay.

22        MS. WHEATLEY:  With respect to -- I would just like to

23  briefly address a couple of the points Mr. Ashurov made in his

24  opening statement.

25        First, he made the statement that Nextel is a defunct

1  brand and there is no goodwill whatsoever in it.  Clearly if

2  there were --

3          THE COURT:  He wrote it off in 2009; is that correct?

4          MS. WHEATLEY:  No.  Sprint did not write off the

5  Nextel brand in 2009, Your Honor.

6          THE COURT:  I assume that is having to do with

7  financial documents where there is depreciation and fully

8  writing off.  Is that where that is coming from?  Where did you

9  get that?

10          MR. ASHUROV:  Yes, Your Honor, that is correct.

11          THE COURT:  And where did you see the write-off in

12  2009?

13          MR. ASHUROV:  From Sprint's annual report, Your Honor.

14          THE COURT:  So your last comment may not be correct.

15          MS. WHEATLEY:  Your Honor, I am fairly certain that

16  Nextel iDEN network was still in existence through 2013 and

17  Defendants have acknowledged that.

18          THE COURT:  Well, they are talking about goodwill and

19  that seems reasonable to me that it would likely have been

20  depreciated and written off in 2009.  That is not to say that

21  the technology was no longer in use.

22          But do you have that document somewhere?  If you do

23  not, I am not going to fuss at you, but if you do that will

24  resolve that and you can go on with your argument.

25          MR. ASHUROV:  Yes, Your Honor.  I believe we do.

1       THE COURT:  Well, you look for it and she will go

2   ahead.

3       MS. WHEATLEY:  Your Honor, I think that -- well, and

4   to address the point of sort of how much goodwill is associated

5   with the Nextel trademark, the standard is not that the

6   trademark's flagship brand the standard that Sprint continued

7   to use the trademark and does it have an intent to continue to

8   use the trademark.

9       We think we have established both of those factors

10  here today.  And you know, I think the fact that Sprint

11  continues to maintain these trademarks also indicates that they

12  certainly have value to Sprint.

13      THE COURT:  Were there any sales of the Sonim device?

14      MS. WHEATLEY:  Miss Jobe did earlier testify that

15  there were sales of the Sonim device in 2017 that she has

16  confirmed.

17      THE COURT:  I don't remember that.

18      She did say that they were referenced in her -- okay.

19  Go ahead.  But we don't know how many?

20      MS.  WHEATLEY:  I mean, Miss Jobe can talk about what

21  she observed.  I don't think she can memorize the exact

22  numbers, but she certainly reviewed them if you would like to

23  hear from her again.

24      THE COURT:  Well, let's hear the rest of your argument

25  and I will worry about that.

1    MS. WHEATLEY:  Okay.  And I would also make the point

2    that goodwill related to Nextel in a financial document

3    concerning a merger is different from the goodwill and the mark

4    itself.

5         And if Your Honor is interested in testimony from

6    Sprint regarding the valuation they have on the trademark, I

7    think Miss Jobe can provide information about what they know

8    about the current worth.

9         THE COURT:  Well, we are done with the evidentiary

10   part of the hearing.  So that might be an issue for trial, but

11   not now.

12        MS. WHEATLEY:  But I think on the goodwill point,

13   Defendant retro' brands own website answers this question.

14   Their website says -- and I quote and this is also attached to

15   the Jobe declaration.

16        "They are actively seeking out famous trademarks."

17   End quote.  "They are looking for characteristics like strong

18   and favorable existing brand awareness."

19        So they would not be targeting the Nextel brand if

20   there were not substantial goodwill associated with it.

21        On the issue of irreparable harm, Mr. Ashurov said

22   Sprint has failed to show that here.  It is well established in

23   the Eleventh Circuit that evidence of consumer confusion and a

24   resulting inability of the mark holder to control the quality

25   of goods sold under its mark is *per se* irreparable harm.

1        We have provided testimony regarding consumer

2   confusion in both the Jobe declaration and Mr. Mancuso's

3   declarations.  And we have Mr. Mancuso here today if there were

4   questions about that but --

5        THE COURT:  Neither of them are consumers, correct?

6        MS. WHEATLEY:  Mr. Mancuso's declaration discusses

7   confusion by attendees to the IWCE Trade Show who are consumers

8   of telecommunication services and technology.

9        THE COURT:  He didn't say that he observed any

10  confusion.  He said that there might be confusion, correct?

11       MS. WHEATLEY:  That is not correct, Your Honor.

12       Mr. Mancuso was approached by attendees who expressed

13  confusion as to why the Nextel booth was not located near the

14  Sprint booth because they assumed they were the same company.

15       And I would point to the fact that Mr. Ashurov raised

16  that if the disclaimer was placed on the Nextel Worldwide

17  website there would be no need for a disclaimer if there was

18  not confusion as to the association of Sprint and the

19  Defendants use of Nextel.

20       But both consumer confusion and loss of the trademark

21  owner's ability to control the quality of services and goods

22  under the mark is *per se* irreparable harm in the Eleventh

23  Circuit.

24       And we cite that case law in our briefing for

25  reference; *North American Med Corp. v. Axiom,* 11th Circuit,

1    2008 and *Edge Systems v. Aguila,* Southern District of Florida,

2    2016 both set this forth.  So we have met the standard for

3    showing irreparable harm.

4           But, Your Honor, in closing, the bottom line here is

5    that Defendants are taking something that is not theirs.  They

6    are not building a new brand.  They are not building their own

7    company.

8           They are actively trying to deceive consumers who

9    think that this is the original Nextel brand.  For the purposes

10   of Lanham Act is to prevent consumer confusion.  And so that it

11   is not in the public interest to allow that to continue.

12          THE COURT:  Okay.  Let's hear from the Defendants.

13          MR. ASHUROV:  Your Honor, I would like to point out

14   that the use of Nextel has been demonstrated here today.

15          And in Miss Jobe's declaration, original declaration

16   submitted with its moving papers does not demonstrate trademark

17   use.

18          It is well established that not all designations are

19   considered trademarks.  And placing the mark in such an area

20   where consumers are unlikely to see it would not create a

21   commercial impression of a trademark, Your Honor.

22          Now, at best, it would be token use made to reserve

23   rights in the mark and that's the inference that would be drawn

24   from the very few examples of use of Nextel that has been

25   presented today.

1        Your Honor, as I mentioned in my objection to the

2    admission of this evidence regarding the Sonim XP phone in

3    2017, we believe the Defendant should be entitled to take some

4    discovery to see if, in fact, there have been sales because

5    there has been nothing provided to date to corroborate that.

6        And self-serving testimony is simply unpersuasive as

7    compared to objective evidence in the context of abandonment

8    arguments, Your Honor.

9        Now, addressing the point regarding actual confusion,

10   mere inquiries are not confusion.  It is not the same thing.

11   As cited in Defendants' brief inquiries can actually show a

12   lack of confusion as would explain why people would ask about a

13   connection between two entities.

14       I would also like to point out that a trade show

15   attended by industry insiders is not a typical consumer

16   environment, but more importantly there was no actual confusion

17   regarding any sales evidenced by Mr. Mancuso, Your Honor.

18       Regarding the issue of presuming irreparable harm in

19   this circuit, I believe the Supreme Court was clear that

20   irreparable harm should not flow from the likelihood of success

21   on the merits in a trademark injunction consideration.

22       That said, even if irreparable harm could somehow flow

23   from the likelihood of success on the merits, the cases cited

24   by the Plaintiff are vastly different than what is going on in

25   this instance.

1           In those cases, there wasn't a defunct brand that

2    hasn't been used and shut down for a long time.  Also, there

3    wasn't considerable delay like there was here.

4           For example, in the *Cumulus* case, Your Honor, I

5    believe a lawsuit was filed four days after the Plaintiff

6    discovered the allegedly infringing use.

7           So even if irreparable harm could flow from any

8    likelihood of success on the merits, which we believe there is

9    none because of the abandonment defense, it doesn't apply here

10   because of the considerable delay.

11          Now, Plaintiff raises the issue of an alleged

12   agreement to cease use based on Calebrese, on Defendant

13   Calebrese counsel's representations.

14          As shown in counsel's declaration, submitted with the

15   Defendants' moving papers, there was never an agreement to

16   cease use.

17          What there was, Your Honor, was an agreement that

18   Calebrese would drop the application and the appeal challenging

19   Sprint's registration of Nextel.

20          There was never any kind of a settlement agreement

21   that was drawn up and executed, as is standard in these kinds

22   of settlements and agreements regarding any continued use.

23          But, nevertheless, even for to take into account that

24   February 2018 date, the delay from April 28th to February 2018,

25   in the absence of any irreparable harm, any real actual

 1  demonstrated evidence of irreparable harm still shows the

 2  absence of irreparable harm in this instance.

 3          Now, the disclaimer, those added by the Defendants,

 4  was added precisely because they want to avoid any affiliation

 5  and any association with any of Nextel's prior users.

 6          It was done in good faith with the understanding that

 7  Defendants have a duty to make sure that they avoid any

 8  confusion and that was the role of that disclaimer.

 9          Now the Mancuso declaration further demonstrates the

10  steps taken by the Defendants to avoid confusion.  It

11  specifically states in, I believe, Paragraph 16 that Mr.

12  Mancuso witnessed the Defendants telling people that they are

13  not affiliated -- the Defendants are not affiliated with Sprint

14  and that Sprint abandoned the mark.

15          There was no intention on the part of the Defendants

16  to create any confusion with Sprint, Your Honor.

17          And I would just like to point out that in cases of

18  abandonment intent not to resume use may be inferred from the

19  circumstances.  And considering the press releases, the 10-Ks,

20  which actually removed -- it's not that the 10-Ks didn't

21  include Nextel.

22          They actually removed Nextel from the list of

23  trademarks.  I think that would be the more meaningful point.

24  And Sprint's public statements to the media also just an intent

25  to abandon and not to resume use.

1        And Your Honor, based on the investments the

2   Defendants have made in their business, they would be the only

3   ones harmed by the injunction.

4        If the Defendants were wrong in their assessment of

5   the status of the Nextel mark and it somehow wasn't abandoned

6   and this case proceeds to be decided on its merits, even if the

7   Defendants' plans were realized beyond their greatest

8   expectations, that would not harm Sprint in the least.

9        The Defendants are a small business located in

10  Florida.  Sprint is a large corporation.  They would suffer no

11  irreparable harm whatsoever, Your Honor.

12       And in closing, Your Honor, I would just like to note

13  that if Your Honor feels that there are any steps that the

14  Defendants could take, for example, adding additional

15  disclaimers, or something to that effect that would address any

16  potential harm here, we believe that that would be a more

17  appropriate instruction for the Defendants in this instance.

18       Thank you very much.

19       THE COURT:  All right.  Anything else?  Once again,

20  not required, but offering opportunity.

21       MS. WHEATLEY:  If I may say a few words, Your Honor?

22       THE COURT:  Sure.

23       MS. WHEATLEY:  First, to quickly address the argument

24  of trademark use which Defendants raised for the first time

25  today, I would point out first that Sprint's use of Nextel on

1  the back of the box was accepted by the USPTO as a specimen

2  demonstrating use.

3      Furthermore, use on packaging, the exterior of

4  packaging with the registration symbol is a classic example of

5  trademark use.

6      THE COURT:  I am not so concerned about that.

7      MS. WHEATLEY:  And then, I would also like to address

8  the burden on abandonment.

9      The *Cumulus* media case from the Eleventh Circuit

10  explicitly and in great detail expresses the burden for a

11  Defendant on abandonment in a preliminary injunction situation

12  and they found that that is a strict burden that rests with

13  Defendant.

14      Defendants here have not put forward any direct

15  evidence whatsoever of abandonment.  And Sprint has put forward

16  direct evidence of not --

17      THE COURT:  What would direct evidence of abandonment

18  look like?

19      MS. WHEATLEY:  It could be testimony from a Sprint

20  employee, or a former Sprint employee that they had abandoned

21  the trademark.

22      They could have asked Sprint for permission to use the

23  mark, or ask Sprint if they had any objection to them using the

24  mark.  They could have shown somehow that boxes provided by

25  Plaintiff were not authentic, which they failed to do.

1          And I think, again, the key point here is it's not --

2   abandonment of a registered trademark does not occur from

3   momentarily being out of stock.  This is something that to only

4   get a presumption or a rebuttable presumption you've got to

5   show non use for three consecutive years and plus an intent not

6   to resume use.

7          They have some news articles that refer to the iDEN

8   network coming down, but that is very separate from using it on

9   telecommunication devices.

10         And we have sworn testimony from Sprint employees here

11  that sales were occurring as recently as 2017 and we brought a

12  copy of the box.

13         So we would submit that Sprint has unquestionably met

14  their burden and Defendants have not even put on any testimony

15  that approaches meeting their burden to show abandonment and

16  that's the only defense that they have here.

17         I would also raise that even setting aside the issue

18  of abandonment, we also are moving on unfair competition and

19  the Defendants' conduct does amount to unfair competition.

20  Sprint does not have to show use as a trademark to show that

21  Defendants' conduct is creating a misidentification as to

22  source here.

23         In fact, the Fourth Circuit recently decided unfair

24  competition could exist even in the *Bayer v. Belmora* case even

25  when the trademark had never been used in the United States

1  because it was a clear case of counterfeiting where the

2  Defendant was using a mark that they knew was associated with

3  another company to deceive consumers.  And the consumer

4  deception here really does render this unfair competition that

5  should be enjoined.

6       And then, I would finally quibble with counsel's

7  characterization of the *Ebay v. MercExchange* case on the

8  irreparable harm presumption.  That was a patent case and the

9  Supreme Court did not decide whether to apply in the trademark

10  context.

11       And the Eleventh Circuit has specifically declined to

12  decide that that case got rid of the presumption of irreparable

13  harm in the trademark context.

14       In fact, in the *North American Med case specifically*

15  *said when the facts resemble places where irreparable harm was*

16  *historically applied presumption was still appropriate.*

17       *Those were the only points I had to address, Your*

18  *Honor.*

19       *THE COURT:  All right.  I am not going to rule from*

20  *the bench on this one.*

21       *I am going to consider all of the exhibits that have*

22  *been presented.  And make the assessment of the various*

23  *factors, but you will get an order as quickly as we can get one*

24  *out or a report and recommendation.*

25       *MS. WHEATLEY:  Thank you, Your Honor.*

1          THE COURT:  All right.  Thank you everybody.

2          MR. ASHUROV:  Thank you, Your Honor.

3          MR. FISCHER:  Thank you.

4          (Thereupon, the proceedings concluded.)

1

2                              *CERTIFICATE*

3

4          *I hereby certify that the foregoing transcript is an*

5     *accurate transcript of the audio recorded proceedings in the*

6     *above-entitled matter.*

7

8

9

10
      *05/17/18*                         *Bonnie Joy Lewis,*
11                          *Registered Professional Reporter*
                                 *CASE LAW REPORTING, INC.*
12                             *7001 Southwest 13 Street,*
                             *Pembroke Pines, Florida 33023*
13                                  *954-985-8875*

14

15

16

17

18

19

20

21

22

23

24

25