UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-60788-CIV-MARTINEZ/SNOW

SPRINT COMMUNICATIONS, INC.

    Plaintiff,

v.

STEPHEN CALABRESE, as an individual, NEXTEL,
INC. d/b/a NEXTEL Worldwide, RETROBRANDS
USA LLC, and JEFFREY KAPLAN, as an individual,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

THIS CAUSE is before the Court on Plaintiff's Motion for Preliminary Injunction (ECF No 6), which was referred to Lurana S. Snow, United States Magistrate Judge, by the Honorable Jose E. Martinez. The Motion has been fully briefed and this Court held a hearing on May 8, 2018. On May 16, 2018, Defendant filed a Motion to Strike Improperly Introduced Evidence, for Leave to Obtain Limited Expedited Discovery, and to Supplement the Preliminary Injunction Record (ECF No. 40). The Defendant's Motion is fully briefed, and is within the scope of the referral in this case.

## I. PROCEDURAL BACKGROUND AND FACTS

Plaintiff filed this action on April 11, 2018, claiming that Defendants' use of the NEXTEL mark constitutes trademark infringement, trademark dilution, unfair competition, false designation of origin, counterfeiting, cybersquatting, and violation of Florida's Deceptive and Unfair Trade Practices Act. Two days after filing this case, Plaintiff field a Motion for Preliminary Injunction, supported by the Declaration of Melissa A. Jobe, who also appeared before the Court and testified on May 8, 2018. Ms. Jobe is legal counsel for Sprint/United Management Company, an indirect wholly owned subsidiary of Sprint Corporation. Sprint Corporation is the parent of Plaintiff Sprint Communications, Inc. (Sprint). Declaration of Jobe, at ¶ 2. (ECF No. 6-1) Ms. Jobe is

responsible for managing the trademark registrations of Sprint Communications and she managed and maintained the trademark registrations owned by Nextel Communications, Inc., after it merged with Sprint Corporation in August 2005 and through the present. Id., at ¶ 3.

A. Sprint's claims to the NEXTEL trademark

According to the Complaint, and the parties' briefs on the preliminary injunction issue, NEXTEL Communications, Inc., was a phone and wireless network company in the 1990s that allowed customers to "push-to-talk" (instead of dialing a telephone number to connect to another phone). After NEXTEL merged with/was acquired by Sprint in 2005 the merged companies were known as Sprint NEXTEL Corporation, and now are known as Sprint Communications, the Plaintiff in this case. Sprint has two trademark registrations relevant to this case.[1]

> NEXTEL    Reg. No. 1,637,139, first use Nov. 1988, for "Telecommunications services"
>
> NEXTEL    Reg. No. 1,884,244, first use Aug. 1993, for "Equipment used in providing telecommunications services; namely, mobile radios; namely, two-way radios, mobile telephones, dispatch radios, pagers and mobile data transceivers."

Sprint claims to have "continuously used the famous NEXTEL Mark for nearly the last thirty years." Complaint, ¶ 27. In support, Sprint says that it currently sells "rugged" Sonim XP Strike and Sonim XP Strike IS phones in connection with the NEXTEL mark nationwide. Complaint, ¶ 28. No sales data was provided with the Complaint, nor with the Motion for Preliminary Injunction.

---

[1] Sprint doesn't refer to a third mark, Reg. No. 2236098 (for NEXTEL Direct Connect), which was cited by the U.S. Patent and Trademark Office (USPTO) in rejecting Defendant Calabrese's trademark application, and which is the subject of a pending request to the USPTO to cancel the registration (filed by Defendant Retrobrands).

The photo Sprint provided to support its Motion for Preliminary Injunction was of a Sonim XP Strike IS phone's packaging (Ex. 4 to Sprint's Motion, see ECF No. 6-5) bearing the mark: "NEXTEL Inspired." After Defendants challenged that photo as not current, *i.e.*, having been taken years earlier, Sprint then provided a printout from a website showing a Sonim XP Strike phone purportedly offered for sale, which did not reveal a NEXTEL mark Ex. B to Reply (ECF No. 26-2). Defendants provided photos of a current box for the phone Sprint claims is NEXTEL-related and that photo reveals no NEXTEL marks Ex. A to Surreply (ECF No. 28-3).

In response to Sprint's motion for preliminary injunction Defendants also offered a number of news articles from 2013-2014 reporting that Sprint had "shut down the IDEN Nextel National Network," "burie[d] the Nextel brand once and for all," Ex. 3 (ECF No. 20-4), and had "no intention of bringing back the Nextel brand for enterprise customers [quoting an interview with Matt Carter, then-president of Sprint Enterprise Solutions]," Ex. 8 (ECF No. 20-9). In addition, Defendants submitted Sprint's filings before the Securities and Exchange Commission which include statements such as "[after shut-down of the Nextel Platform], Sprint is migrating existing Nextel platform subscribers to other offerings on the Sprint platform." Ex. 5 to Defendant's Response, Sprint's Form 10-K, for year ended December 31, 2012 (ECF No. 20-6). Defendants also submitted Sprint's Form 10-K for the fiscal years ending March 31, 2013, and March 31, 2015, showing that Sprint listed "Nextel" among the "Patents, Trademarks and Licenses" it owned, and the Form 10-K for the fiscal year ending March 31, 2016, which does not include Nextel. Ex. 11 (ECF No. 20-12).

At the hearing before this Court on May 8, 2018, Plaintiff introduced two exhibits that had not been disclosed previously: a box for a Sonim XP Strike IS phone, and the instruction booklet included therein, Plaintiff's Exs. 40 and 41. The box bears a NEXTEL mark with a copyright date of 2013. Transcript, at p. 19 (ECF No. 57). Ms. Jobe testified that she obtained the box months earlier, in October 2017, from Sprint's "sales group," id. at p. 16, and that Sprint currently sells the Sonim XP Strike IS phone, although "it might be out of stock," id. at p. 15. According to Ms. Jobe,

she last checked sales of the Sonim XP phone "through the end of December of 2017." Id. at p. 15. No further evidence regarding sales was presented, nor was any sales data presented by Plaintiff. The Court overruled Defendants' objection to the admission of Exhibits 40 and 41, without prejudice for Defendants to rebut the evidence at a later date. Id., at pp. 16-17. After the hearing, Defendants moved to strike this evidence, arguing that Sprint violated S.D. Fla. L. R. 7.1(c) by not disclosing the evidence in advance. Defendants have asked for approval to obtain limited expedited discovery from Sprint regarding the claimed sales of such phones testified to by Ms. Jobe at the hearing, and seek leave to obtain expedited discovery from the manufacturers of the phone at issue (non-parties in this case), and to supplement the preliminary injunction record with the results of this discovery.

B. Defendants' allegedly infringing conduct

On October 31, 2016, Defendant Stephen Calabrese's company, Defendant NEXTEL, Inc. d/b/a NEXTEL Worldwide, filed a trademark application to register the NEXTEL mark as:"[t]elecommunication access services; [t]elecommunication gateway services; [and t]ransfer of data by telecommunication," including as part of the claimed mark, the distinct all-caps black lettering with the X and T run together and set against a yellow backdrop. U.S. Appl. Ser. No. 87/220,918. Defendant Calabrese had been actively marketing products using the NEXTEL mark in 2017, with disclaimers to show that the products were not connected to Sprint. Sprint asserts that NEXTEL Worldwide also registered the domain name "nextelworldwide.com." Declaration of Jobe, at ¶¶ 20, 24 (ECF No. 6-1). Defendants have not directly disputed this assertion, and instead argue that Sprint's "Nextel.com" website was shut down a few years ago.

The application was rejected by the U.S. Patent and Trademark Office (USPTO) on February 8, 2017, based on Sprint's existing registration of the marks NEXTEL (Reg. No. 1637139) and NEXTEL Direct Connect (Reg. No. 2236098). On August 8, 2017, the denial of Defendant Calabrese's trademark application became final, and he appealed the denial on Dec. 21, 2017.

4

At some time Defendant Calabrese apparently transferred at least some of his interest in NEXTEL Worldwide to Defendant Retrobrands USA, LLC, owned by Defendant Jeffrey Kaplan. Defendant Retrobrands, which specializes in reviving popular brands that have been abandoned by original manufacturers, then filed a new application on January 29, 2018, to register the NEXTEL mark as "Telecommunications access services" with an alleged first use date of January 2018. Appl. No. 87774826. The next day, January 30, Retrobrands filed a petition to cancel Sprint's existing registrations for the NEXTEL mark, arguing that those registrations were obtained based on false statements by Sprint in 2015 that it was still using the mark. No. 92067840. Sprint asked the USPTO to stay the cancellation proceeding while this federal lawsuit is pending. On February 7, 2018, Calabrese withdrew his appeal of the denial of his original application for the trademark registration. On March 12, 2018, Retrobrands' trademark application for NEXTEL was refused by the USPTO because of a likelihood of confusion with Reg. No. 1637139.

Sprint alleges that Defendants' conduct has been willful because it was done openly, and Sprint offers evidence from one of its employees, Brian Mancuso, who saw the Defendants' phones at a communications technology conference in Orlando, Florida in March 2018 and found them confusingly similar to NEXTEL phones. (ECF No. 6-32) Defendants admit that they promoted their NEXTEL Worldwide-branded products at the Orlando show in March 2018, but argue that there has been no violation of trademark or any other laws. In support of their argument, Defendants note that disclaimers were posted that the Defendants' products were not affiliated with Sprint, and that even Sprint's own witness acknowledges that disclaimers were being made. Defendants argue that they made a good faith effort to adopt a long-ago abandoned mark and that Sprint's threats to Defendants' vendors have harmed Defendants' business. Defendants claim that an injunction may cause Defendants to go out of business.

C. Sprint's actions to stop the alleged infringement

On April 26, 2017, two and a half months after the USPTO denied Defendant Calabrese's application, Sprint, through its legal counsel Ms. Jobe, sent cease and desist letters to Defendant NEXTEL Worldwide and to several sellers of the NEXTEL Worldwide products. Plaintiff's Motion, Ex. 17 (ECF No. 6-18). The letters do not indicate the source of Sprint's information about the allegedly infringing activity. Ms. Jobe simply states that Defendant's actions had "come to my attention." Id. Ms. Jobe's Declaration states that she was advised "[i]n or around March and April 2017" that the mark was being used." Declaration, at ¶ 27, see ECF No. 6-1.

On October 26, 2017, Defendant's counsel Leonard Rubin informed Sprint that "pursuant to [Sprint's] recent demand, [Mr. Calabrese] has ceased using the mark on any products or services over which he has any sort of controlling interest, and has ceased all offers for sale of telecommunications services and equipment using the Nextel mark." ECF No. 26-3. On Jan. 25, 2018, "outside counsel on behalf of Sprint informed [Calabrese's entity] that [Sprint] reserved all rights but was not taking action 'at this time.'" Declaration of Jobe, at ¶ 41. Mr. Rubin advised Sprint on February 8, 2018, that Calabrese's appeal had been withdrawn and that he had stopped using the mark (there is no mention of the Retrobrands proceedings). Plaintiff's Motion, Ex. 20, ECF No. 6-21.

D. Procedural posture of this case

After the hearing on Plaintiff's Motion for Preliminary Injunction, Defendants filed their Answer and Affirmative Defenses, asserting defenses including: abandonment, estoppel, laches, innocent infringement, invalid registration, unclean hands of Sprint, fraud and that Sprint's state law claims are preempted. (ECF No. 49) Defendants also brought Counterclaims against Sprint asserting unenforceability of the trademark due to abandonment, fraud by Sprint on the U.S.P.T.O, tortious interference with Defendants' business relationships, defamation, unfair competition, and reverse domain name hijacking; Defendant also seeks a declaration that there was no trademark infringement

and that Sprint's trademark registrations should be cancelled. (ECF No. 49) Sprint has answered Defendants' Counterclaims and raised a number of affirmative defenses thereto. (ECF No. 56)

## II. ANALYSIS

Injunctive relief is an extraordinary and drastic remedy not frequently granted. Cafe 207, Inc v. St. Johns County, 989 F.2d 1137 (11th Cir. 1993). "Preliminary injunctions are issued when drastic relief is necessary to preserve the status quo." All Care Nursing Serv., Inc v. Bethesda Mem'l Hosp., Inc., 887 F.2d 1535, 1537 (11th Cir. 1989). To obtain a preliminary injunction the moving party must conclusively establish:

> (1) a substantial likelihood of success on the merits,
>
> (2) a substantial threat that the movant will suffer irreparable injury if injunctive relief is not granted,
>
> (3) the threatened injury to the movant outweighs the threatened harm injunctive relief may cause to the opposing party, and
>
> (4) issuance of the injunction would not be adverse to the public interest.

American Red Cross v. Palm Beach Blood Bank, Inc., 143 F.3d 1407, 1410 (11th Cir. 1998). The movant has the burden of proof as to each of these elements, and if it fails to sustain its burden as to any one of these prerequisites, the motion must be denied. Cafe 207, 989 F.2d at 1137. "If any element is not proven, there is no need to address the others" and the injunction should be denied. Safarelli v. Pinellas County, 931 F.2d 718, 724 (11th Cir. 1991). To obtain a preliminary injunction requires a showing that the injury is "neither remote nor speculative, but actual and *imminent*." Siegel v. Lepore, 234 F.3d 1163, 1176–77 (11th Cir.2000) (citations omitted) (emphasis added).

Indeed, the expedited nature of the proceedings explain why appellate review of a preliminary injunction decision is "exceedingly narrow," BellSouth Telecomms., Inc. v. MCIMetro Access Transmission Servs., LLC, 425 F.3d 964, 968 (11th Cir. 2005), and the issuance or denial of injunctive relief will not be reversed absent abuse of discretion, Haitian Refugee Center, Inc. v. Christopher, 43 F.3d 1431, 1432 (11th Cir. 1995).

> Our review is deferential since a district court often must make difficult judgments about the viability of a plaintiff's claims based on a limited record and 'without the luxury of abundant time for reflection. <u>Cumulus Media, Inc. v. Clear Channel Commc'ns, Inc.</u>, 304 F.3d 1167, 1171-72 (11th Cir. 2002). So a plaintiff faces not only a tough road in establishing four prerequisites to obtain a preliminary injunction in the first instance, but, on appeal, must also overcome the steep hurdles of showing that the district court clearly abused its discretion in its consideration of each of the four prerequisites.

<u>Wreal, LLC v. Amazon.com, Inc.</u>, 840 F.3d 1244, 1248 (11th Cir. 2016) (affirming denial of preliminary injunction where party delayed five months in seeking injunction).

A. Delay by Sprint in seeking a preliminary injunction

Before turning to the parties' arguments, the Court observes that a finding of unexplained delay in seeking injunctive relief strongly suggests a lack of *irreparable* and *imminent* harm that would compel the denial of a request for a preliminary injunction. The Eleventh Circuit has held that "the very idea of a preliminary injunction is premised on the need for speedy and urgent action to protect a plaintiff's rights before a case can be resolved on its merits." <u>Wreal, LLC v. Amazon.com, Inc.</u>, 840 F.3d at 1248 (11th Cir. 2016) (citations omitted). "[A] party's failure to act with speed or urgency in moving for a preliminary injunction necessarily undermines a finding of irreparable harm," <u>id.</u>, and demonstrates that preliminary injunctive relief is unnecessary. "[E]ven if Plaintiffs establish a likelihood of success on the merits, the absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper." <u>Siegel</u>, 234 F.3d at 1176. "A delay in seeking a preliminary injunction of even only a few months - though not necessarily fatal - militates against a finding of irreparable harm." <u>Id.</u>

When there has been delay in seeking injunctive relief, courts look to whether the moving party has reasonably justified the delay. At least two courts in this District have found that a plaintiff's efforts to resolve disputes through settlement are insufficient to explain extended periods of delay. In <u>Menudo Int'l, LLC v. In Miami Prod., LLC</u>, No. 17-21559-CIV, 2017 WL 4919222 (S.D. Fla. Oct. 31, 2017), the plaintiff had been selling its goods and services since 2015 using the

trademark Menudo (Menudo was a Puerto Rican band popular in the 1970s-1990s). In 2015, the defendant also began selling merchandise and promoting performances by entertainers using the Menudo trademark and the following year the defendant applied to register the trademark in Mexico. The plaintiff sent a cease-and-desist letter to defendant in May 2016 and filed an objection to the trademark application in Mexico in October 2016. Several months later, in March 2017, the defendant moved to cancel the plaintiff's Menudo trademark on the basis of fraud. The plaintiff then filed the federal lawsuit in April 2017. As observed by Magistrate Judge Torres in that case, when a plaintiff "delays filing a complaint after a substantial amount of time," it "undercuts the sense of urgency ... and suggests that there is, in fact, no irreparable injury." Id. Magistrate Judge Torres found that the delay of almost one year from the initial cease-and-desist letter was fatal to the plaintiff's claimed need for an injunction, even though plaintiff argued that some of the delay was attributable to efforts to reach a settlement with the alleged infringer. Finding that a plaintiff concerned about a truly irreparable harm will act "'swiftly to protect itself,' even in the midst of negotiating a potential settlement," id. (citation omitted), the court denied injunctive relief.

Similarly, in Seiko Kabushiki Kaisha v. Swiss Watch Int'l, Inc., 188 F. Supp. 2d 1350, 1352 (S.D. Fla. 2002), the plaintiff knew of the trademark violations months before sending a cease-and-desist letter in November 2000, and then waited several more months before filing a lawsuit in May 2001. In that case Judge Lenard found that "[e]ven ... giving Plaintiff credit for attempting to reach a settlement without litigation, there remain[ed] a three-month delay between [p]laintiff's last communication with [d]efendants and commencement of this suit." Id. at 1356. Judge Lenard determined that "Plaintiff's dilatory prosecution of its rights somewhat vitiates the notion of irreparable harm.... [and] this unexplained delay undercuts any sense of urgency ... therefore, Plaintiff failed to demonstrate sufficient need for a preliminary injunction." Id.

Having reviewed pertinent portions of the record, and having heard argument from the parties, the Court finds that Sprint has not reasonably explained a basis for its delay in seeking a

preliminary injunction. There are periods of several months of unexplained delay between Sprint's efforts to protect its alleged use of the NEXTEL mark and the filing of this case. In addition, Sprint has not offered an explanation for why it failed to monitor proceedings before the USPTO related to the NEXTEL mark; if Sprint had been monitoring such proceedings, it would have known as early as October 31, 2016, that an application had been filed by Defendant Calabrese to register the NEXTEL mark. Sprint's first cease-and-desist letters were not sent until April 26, 2017. Ms. Jobe attests that she learned of the alleged infringement "[i]n or around March and April 2017." This case was not filed until a year later. Sprint's efforts to obtain a guarantee from Defendant Calabrese or Defendant NEXTEL Worldwide that they would not continue to use the NEXTEL mark were limited to the sending of several letters in April 2017 and apparently a few phone calls with Mr. Rubin in late 2017 or early 2018; there is no evidence of action taken by Sprint against Defendant Retrobrands or Defendant Kaplan even though Defendant Retrobrands filed a petition to cancel Sprint's registration of the NEXTEL mark on January 30, 2018. Sprint still waited two and a half months to file this action and seek an injunction. In sum, the Court finds that Sprint has failed to establish that any injury it is experiencing or may experience as a result of Defendants' activities is irreparable and, therefore, a preliminary injunction is unwarranted.

B. <u>Substantial likelihood of success on the merits has not been established</u>

Even if Sprint had not delayed in seeking injunctive relief, the Court is persuaded by Defendants' argument that Sprint's lack of use of the NEXTEL mark compels a conclusion that there is not a substantial likelihood of Sprint's success on the merits and, thus, injunctive relief is unwarranted at this stage.

Because this case primarily is a trademark infringement action, or at least the common underlying element of Sprint's claims is that Defendants improperly are using the NEXTEL mark, the essential test of whether Sprint is likely to succeed on the merits is whether the use by Defendants of

the NEXTEL mark creates a likelihood of confusion with Sprint's use of the mark, assuming that Sprint has a valid mark. The Eleventh Circuit has set forth a seven-part test for likelihood of confusion: 1) the strength of the plaintiff's mark; 2) the similarity between the plaintiff's mark and the accused mark; 3) the similarity between the products and services offered by the plaintiff and defendant; 4) the similarity of the sales methods; 5) the similarity of advertising methods; 6) the defendant's intent in using a trademark that is similar to the plaintiff's trademark; and 7) consumers' actual confusion. Alliance Metals, Inc. of Atlanta v. Hinely Indus., Inc., 222 F.3d 895, 907 (11th Cir. 2000).

Sprint argues that Defendant's infringement is, effectively, conceded by Defendants' admission to using the NEXTEL mark and, thus, Sprint asserts that it is entitled to a finding that it is substantially likely to succeed on the merits because there is a likelihood of confusion among Defendants' use of the mark and Sprint's use of the mark. That argument presumes, however, that Sprint currently *is using* the mark, and the evidence is weak, at best, that Sprint's alleged "use" meets the standards of trademark law.

The Lanham Act provides that "registration shall be conclusive evidence of the registrant's exclusive right to use the registered mark," *i.e.*, the mark is incontestable, subject to certain conditions. *See* 15 U.S.C. § 1064. For example, one of those conditions is that an incontestable mark can be cancelled at any time if it has been abandoned, or if it was obtained fraudulently or contrary to the provisions of 15 U.S.C. § 1054, or 15 U.S.C. §§ 1052(a)–(c). *See, e.g.*, Park 'N Fly, Inc. v. Dollar Park & Fly, Inc., 469 U.S. 189, 194–95 (1985). According to 15 U.S.C. § 1127, a mark shall be deemed to be "abandoned" when its use has been discontinued "with intent not to resume such use." The Act provides that "[i]ntent not to resume may be inferred from circumstances," and "[n]onuse for 3 consecutive years shall be prima facie evidence of abandonment."

The Lanham Act defines use in commerce as:

> [T]he bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark .... [A] mark shall be deemed to be in use

> in commerce ... on goods when (A) it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale, and (B) the goods are sold or transported in commerce ....

15 U.S.C. § 1127. "'Use' of a mark means the bona fide use of such mark made in the ordinary course of trade, and not made merely to reserve a right in a mark." Id., see also Vitaline Corp. v. Gen. Mills, Inc., 891 F.2d 273, 275 (Fed. Cir. 1989) ("Although abandonment requires both non-use and intent not to resume use of the mark, the element of intent can be established inferentially by the same facts that establish non-use.").

Defendants have the burden of establishing that Sprint has abandoned the NEXTEL mark. Cumulus Media, Inc. v. Clear Channel Commc'ns, Inc., 304 F.3d 1167. The burden has been described as "strict," "stringent," or "heavy," because it works an involuntary forfeiture of rights. Id. at 1175. Sprint does not dispute that it has cancelled, abandoned, or allowed to expire, several of its registrations of NEXTEL-related marks, but argues that it still has at least one active mark and has the right to protect the NEXTEL mark even if it isn't being actively used today. This argument must fail. As noted by the Eleventh Circuit, "[t]rademark rights flow from use, not from intent to protect rights. Were the rule otherwise, a party could hold trademarks that it never intended to use but did not want to allow others to use. The Lanham Act does not permit such warehousing of trademarks." AmBrit, Inc. v. Kraft, Inc., 812 F.2d 1531, 1550–51 (11th Cir. 1986) (rejecting the argument that once abandoned, a mark's prior owner could resume commercial use and avoid a cancellation).

Despite the importance of Sprint's current sales of NEXTEL-branded items as a method to establish that Sprint is using the mark, no documentary evidence as to sales was provided. Ms. Jobe admitted at the hearing that her Declaration in support of the Motion for Preliminary Injunction references no sales data related to use of the NEXTEL mark, and no invoices representing marketing of phones with the NEXTEL mark, nor does it reference any licensing activities related to the NEXTEL mark. Transcript, at pp. 24-25. Ms. Jobe's sparse testimony that she has "sales through

the end of December of 2017" of the Sonim XP Strike IS phone is insufficient to establish active use of the NEXTEL mark. Further, Sprint presented little or no compelling evidence as to the similarity of the sales methods or advertising methods of the Defendants' products and Sprint's currently marketed products, two of the factors identified by the Eleventh Circuit as relevant to establish a likelihood of confusion. Alliance Metals, 222 F.3d at 907.

Sprint argues that it already is being harmed by Defendants' use of the NEXTEL mark on products that do not have the "push-to-talk" technology for which NEXTEL was known in the 1990s, because customers will be frustrated with Defendants' products not working the way NEXTEL phones used to work and will blame Sprint, but this argument lacks merit. Sprint no longer offers the "push-to-talk" type of service, and its SEC filings demonstrate that it abandoned that type of service, *i.e.*, the NEXTEL service platform, in 2013 or earlier. Indeed, in response to the Court's question as to whether the Sonim XP Strike IS phone is a "push-to-talk" device, Ms. Jobe responded "Not specifically, no." Transcript, at p. 26. Thus, there is no credible evidence of confusion between the items being sold by Defendants and any specific Sprint product currently sold. Further, the only evidence Sprint offered of potential confusion was from its own employee. In the Eleventh Circuit, evidence that shows instances of *actual consumer* confusion is the best proof of likelihood of confusion. AmBrit, Inc. v. Kraft, Inc., 812 F.2d 1531, 1543 (11th Cir. 1986). Sprint has not met the test in this Circuit for establishing a likelihood of confusion and, as such, cannot meet the test for obtaining a preliminary injunction.

In summary, the Court finds that Sprint has fallen far short of sustaining its burden of persuasion on the first two elements of the test for entry of a preliminary injunction and, thus, the Court need go no further.

### III. CONCLUSION

Sprint's delay in seeking injunctive relief is fatal to its request for entry of a preliminary injunction, particularly where there is at least a colorable claim that Sprint's indisputably

limited, if any, use of the NEXTEL mark in the past five years has been merely to secure trademark rights to reserve the mark for furture use. As such, Sprint has not established a substantial likelihood of success on the merits which could support its request for entry of a preliminary injunction. Based on the above, it is

RECOMMENDED that Plaintiff's Motion for Preliminary Injunction (ECF No 6) be DENIED. Further, it is

RECOMMENDED that Defendant's Motion to Strike Improperly Introduced Evidence, for Leave to Obtain Limited Expedited Discovery, and to Supplement the Preliminary Injunction Record (ECF No. 40) be DENIED, as such issues either are moot based upon the recommendation that the request for preliminary injunction be denied, or can be addressed as this case proceeds.

The parties shall have 14 days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, for consideration by the Honorable Jose E. Martinez, United States District Judge. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained therein, except upon grounds of plain error if necessary in the interest of justice. See 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140, 149 (1985); Henley v. Johnson, 885 F.2d 790, 794 (1989); 11th Cir. R. 3-1 (2016).

DONE AND SUBMITTED at Fort Lauderdale, Florida, this 5th day of July, 2018.

_____
LURANA S. SNOW
UNITED STATES MAGISTRATE JUDGE

Copies to:
  All Counsel of Record