**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION**

SPRINT COMMUNICATIONS, INC.,

      Plaintiff,

v.

STEPHEN CALABRESE, as an individual,
NEXTEL, INC. d/b/a NEXTEL
WORLDWIDE, RETROBRANDS USA
LLC, and JEFFREY KAPLAN, as an
individual,

      Defendants.

_____

Case No. 0:18-cv-60788-JEM

Jury Trial Demanded

**PLAINTIFF'S OBJECTIONS TO THE JULY 5, 2018 REPORT AND
RECOMMENDATION ON PLAINTIFF'S MOTION FOR
<u>ENTRY OF A PRELIMINARY INJUNCTION</u>**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.    BACKGROUND ................................................................................................. 2

    A.    Sprint's Rights in the Nearly Thirty-Year-Old, Famous NEXTEL Mark ............. 3

    B.    Defendants' Violations of Sprint's Rights in the Famous NEXTEL Mark .......... 3

        1.    The 2017 Infringement and Sprint's Response ........................................ 3

        2.    The 2018 and Ongoing Infringement and Sprint's Response ................... 4

III.    ARGUMENT ...................................................................................................... 6

    A.    Sprint Did Not Unjustifiably Delay in Seeking Preliminary Relief ..................... 7

        1.    Sprint Acted Expeditiously to Stop Irreparable Harm Stemming from Infringements in 2017 ..................................................................... 8

        2.    Sprint Acted Expeditiously to Seek Judicial Relief to Stop Irreparable Harm Stemming from the Resumption and Expansion of Infringements in 2018 ................................................................. 9

    B.    Sprint Easily Established a Likelihood of Success on the Merits ....................... 11

        1.    Sprint Did Not Need to Provide Sales Data to Establish a Likelihood of Success on the Merits ..................................................... 11

            i.    Sprint's Unfair Competition Claim Does Not Even Require Evidence of Use ....................................................................... 11

            ii.    Sprint Provided Sufficient Evidence of Use to Support its Other Claims ........................................................................ 13

        2.    Sprint Established a Likelihood of Confusion ........................................ 14

            i.    The R&R's Weighing of the Factors Is Inconsistent with Circuit Law ....................................................................... 15

            ii.    The R&R's Conclusions Regarding Factors 3, 4, 5, and 7 are Contradicted by the Record .................................................. 17

IV.    CONCLUSION .................................................................................................. 19

# TABLE OF AUTHORITIES

Page(s)

## Federal Cases

*AT&T Mobility LLC v. Nat'l Ass'n for Stock Car Auto Racing*,
  487 F. Supp. 2d 1370 (N.D. Ga. 2007), *rev'd on other grounds*, 494 F.3d 1356
  (11th Cir.) .................................................................................................................9

*Athleta, Inc. v. Pitbull Clothing Co.*,
  12-10499, 2013 WL 142877 (C.D. Cal. Jan. 7, 2013) ...........................................10

*Babbit Electronics, Inc. v. Dynascan Corp.*,
  38 F.3d 1161 (11th Cir. 1994) ...............................................................15, 16, 17

*Bayer Consumer Care AG v. Belmora LLC*,
  819 F.3d 697 (4th Cir. 2016) .........................................................................11, 13

*BP Chemicals Ltd. v. Formosa Chemical & Fibre Corp.*,
  229 F.3d 254 (3rd Cir. 2000) .................................................................................10

*Bulman v. 2BKCO, Inc.*,
  882 F. Supp. 2d 551 (S.D.N.Y. 2012) ...................................................................10

*Caliber Automotive Liquidators, Inc. v. Premier Chrysler, Jeep, Dodge, LLC*,
  605 F.3d 931 (11th Cir. 2010) ...............................................................................18

*Cumulus Media, Inc. v. Clear Channel Comm'ns, Inc.*,
  304 F.3d 1167 (11th Cir. 2002) ...............................................................12, 13, 14

*Frehling Enterprises, Inc. v. Int'l Select Group, Inc.*,
  193 F.3d 1330 (11th Cir. 1999) ...............................................................15, 16, 18

*Intec, Inc. v. Monster Cable Prods., Inc.*,
  No. 10-22772-civ, 2011 WL 13223537 (S.D. Fla. Sept. 6, 2011) (Martinez, J.) .................7, 9

*It's A 10, Inc. v. Beauty Elite Grp., Inc.*,
  932 F. Supp. 2d 1325 (S.D. Fla. 2013) ..................................................................15

*Juicy Couture, Inc. v. Bella Int'l Ltd.*,
  930 F. Supp. 2d 489 (S.D.N.Y. 2013) ....................................................................10

*Louis Vuitton Malletier, S.A. v. Louisvuittonbasgonsale.com*,
  No. 15-61814, 2015 WL 12550754 (S.D. Fla. Sept. 16, 2015) ....................14, 16, 17

*Menudo Int'l, LLC v. In Miami Prod., LLC*,
  No. 17-21559-civ, 2017 WL 4919222 (S.D. Fla. Oct. 31, 2017) .............................8

*Polar Corp. v. PepsiCo, Inc.*,
    789 F. Supp. 2d 219 (D. Mass. 2011) ...................................................................................10

*Rebel Debutante LLC v. Forsythe Cosmetic Grp., Ltd.*,
    799 F. Supp. 2d 558 (M.D.N.C. 2011) ................................................................................7, 9

*Seiko Kabushiki Kaisha v. Swiss Watch Int'l, Inc.*,
    188 F. Supp. 2d 1350 (S.D. Fla. 2002) ...................................................................................9

*TracFone Wireless, Inc. v. Clear Choice Connections, Inc.*,
    102 F. Supp. 3d 1321 (S.D. Fla. 2015) .................................................................................15

*Wetzel's Pretzels, LLC v. Johnson*,
    797 F. Supp. 2d 1020 (C.D. Cal 2011) ..................................................................................9

*Wreal, LLC v. Amazon.com, Inc.*,
    840 F.3d 1244 (11th Cir. 2016) .............................................................................................9

**Federal Statutes**

28 U.S.C.
    § 636(b)(1) ..............................................................................................................................1

**Rules**

Fed. R. Civ. P.
    Rule 72 ....................................................................................................................................1

**Other Authorities**

McCarthy on Trademarks
    § 17:2 ...............................................................................................................................12, 13

Restatement (Third) of Unfair Competition
    § 30 cmt. a (1990) ...........................................................................................................11, 13

iii

Plaintiff Sprint Communications, Inc. ("Sprint Communications"), by counsel and pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72, hereby submits the following objections to the July 5, 2018 Report and Recommendation, which recommends that the Court deny Sprint Communications' Motion for Entry of a Preliminary Injunction against Defendants Stephen Calabrese, Nextel, Inc. d/b/a Nextel Worldwide, Retrobrands USA LLC, and Jeffrey Kaplan (collectively, "Defendants"), and states as follows:

## I.    INTRODUCTION

Two days after filing the above-captioned case, Sprint Communications filed a Motion for Entry of a Preliminary Injunction (the "Motion"), seeking to enjoin, among other things, Defendants' willful counterfeiting and infringement of Sprint Communications' famous NEXTEL trademark ("NEXTEL Mark") as well as Defendants' unfair competition and cybersquatting. *See* [D.E. 6] Pl.'s Mot. for Prelim. Inj. ("Pl.'s Mot."); [D.E. 26] Pl.'s Reply in Supp. of Pl.'s Mot. ("Pl.'s Reply"). Sprint put forward documentary and testimonial evidence supporting both its claims as well as its right to injunctive relief. *See, e.g.*, [D.E. 6-1 to 6-31] Decl. of Melissa Jobe ("Jobe Decl.") & Exs. 1-30 to Jobe Decl.; [D.E. 6-32 to 6-37] Decl. of Brian Mancuso ("Mancuso Decl.") & Exs. A-D to Mancuso Decl.; [D.E. 43] Index of Pl.'s Exs. Admitted During Prelim. Inj. Hearing (reflecting admission of physical evidence produced at the hearing); [D.E. 57] Tr. of Prelim. Inj. Hearing ("Hearing Tr.").

In response, Defendants conceded that their adoption and use of a counterfeit NEXTEL Mark – which incorporates not just the mark itself but also the exact NEXTEL branding down to color and how the letters are presented – constitutes textbook counterfeiting, infringement, unfair competition, and other Lanham Act violations. *See generally* [D.E. 20] Defs.' Opp'n to Pl.'s Mot.; *see also* Pl.'s Mot. at 11 (showing a side-by-side comparison of the parties' marks). Their sole defense of their admittedly unlawful conduct is the unsupported claim that Sprint abandoned the

1

famous NEXTEL Mark, allowing Defendants to adopt a counterfeit NEXTEL Mark in connection with the same goods and services offered by Sprint Communications and capitalize on the significant goodwill and fame that Sprint Communications, its predecessors-in-interest, and prior and current licensees (collectively, "Sprint") created over the last thirty years. *See id.*

But Defendants' sole "defense" is meritless. It does not even apply to Sprint's false designation of origin/unfair competition claim, and in any event, Sprint provided evidence to show that it has not abandoned the NEXTEL Mark. *See infra* Section III.B.1.

The Court referred the Motion for a Report and Recommendation. There was a hearing on May 8, 2018, and the Report and Recommendation issued on July 5, 2018 (the "R&R"). *See* [D.E. 58] R&R. Although Sprint demonstrated that it is entitled to a preliminary injunction to stop the harm Defendants' counterfeiting scheme is perpetrating on Sprint and the consuming public (including first responders that rely on these goods and services for literally life-and-death situations), the R&R recommended the Court deny the Motion for two reasons: (1) Sprint's alleged delay in seeking preliminary relief; and (2) insufficient evidence to establish either continuing trademark use or a likelihood of confusion (the latter despite Defendants' use of the exact same mark, branding, goods and services, methods of marketing, and consumer base, and despite the evidence of actual confusion and Defendants' admitted bad intent). R&R at 8-13.

Sprint respectfully disagrees with the R&R's findings and recommendations on the Motion and therefore files these objections, asking the Court to grant Sprint's Motion after conducting a *de novo* review.

## II.    BACKGROUND

To aid the Court in its *de novo* review of Sprint's objections, Sprint provides the below overview of pertinent facts. A more detailed account of the facts can be found in the papers Sprint previously submitted in support of the Motion (the "Motion Papers"), which Sprint incorporates

by reference as if set forth fully herein.  *See* Pl.'s Mot.; Pl.'s Reply; Jobe Decl.; Mancuso Decl.

### A.      Sprint's Rights in the Nearly Thirty-Year-Old, Famous NEXTEL Mark

Sprint owns and has incontestable trademark registrations for the famous NEXTEL Mark. Jobe Decl. ¶ 4 & Exs. 1-2.  Sprint has used the famous NEXTEL Mark in connection with wireless devices over the last approximately thirty years, including but not limited to the recent use in connection with the Sonim XP Strike IS, a "rugged" device marketed to businesses and first responders because of its durability, reliability, and two-way radio communication features. *Id.*  ¶¶ 6-9; Hearing Tr. at 13:25-15:11.   Sprint submitted evidence of its ownership and use of the NEXTEL Mark in connection with the Motion, including but not limited to (a) evidence of Sprint's valid, incontestable registrations for the NEXTEL Mark; (b) evidence showing the Sonim XP Strike IS product boxes and manuals that bear the NEXTEL Mark; and (c) testimony that Sprint has actual sales of the Sonim XP Strike IS as recently as December 2017.   Jobe Decl. ¶¶ 4, 9 & Exs. 1-2, 4; Pl.'s Exs. 43-44 (admitted during the preliminary injunction hearing); Hearing Tr. at 13:25-15:11.

### B.      Defendants' Violations of Sprint's Rights in the Famous NEXTEL Mark

Defendants' unlawful conduct breaks down into two distinct periods:  (1) violations committed by Defendants Calabrese and NW Entity that began **and ended** in 2017; and (2) violations committed by all four Defendants that began in 2018 and are ongoing.

#### 1.      The 2017 Infringement and Sprint's Response

The first infringement period began when Defendants Calabrese and NW Entity (collectively, "NW Entity") – acting alone and without involvement by Defendants Kaplan and Retrobrands – started promoting, advertising, offering to sell, and selling wireless devices using a counterfeit NEXTEL Mark.  *See* Jobe Decl. ¶¶ 10-12, 20-26 & Exs. 14-16.  Sprint first learned that NW Entity was using a counterfeit NEXTEL Mark to compete with Sprint when Sprint

employees came across NW Entity promoting, advertising, selling, and offering to sell wireless devices under that counterfeit mark at the International Wireless Communications Expo ("IWCE") industry show in March 2017. *Id.* ¶ 27; *see also* Mancuso Decl. ¶¶ 7-18 & Exs. A-D. Sprint was also attending that show to promote its own wireless devices and several consumers approached Sprint employee Brian Mancuso to express confusion as to why Sprint would have two booths, evidencing their mistaken belief that NW Entity's 'Nextel' booth and counterfeit products were part of the genuine NEXTEL brand and therefore were associated with or connected to Sprint, when they were not. Mancuso Decl. ¶ 16.

Upon discovering NW Entity's counterfeiting, Sprint sent cease and desist letters to NW Entity as well as all of its purported dealers and distributors, asserting Sprint's rights in the famous NEXTEL Mark and demanding that those entities and individuals cease all use of the NEXTEL Mark. Jobe Decl. ¶ 28 & Ex. 17. Many of the dealers and distributors quickly responded that they would not sell or advertise counterfeit NEXTEL products for NW Entity. *Id.* ¶ 29 & Ex. 18. Some also specifically stated that NW Entity had led them to believe that NW Entity was authorized to use the NEXTEL Mark or owned the actual, three-decade old brand. *Id.* ¶ 30 & Ex. 18.

NW Entity, through its counsel, then explicitly told Sprint that it would cease use of NEXTEL and actually did stop that use. *Id.* ¶¶ 33-37, 39-40; [D.E. 26-1, 26-3] Suppl. Decl. of Melissa Jobe ("Suppl. Jobe Decl.") ¶ 4 & Ex. B. This is not a case where the parties were in negotiations. Sprint actually resolved (or reasonably believed it had resolved) its initial dispute with NW Entity in 2017. *Id.* There was literally nothing at that point that would merit filing for an injunction.

### 2. The 2018 and Ongoing Infringement and Sprint's Response

NW Entity decided to go back on its representation to Sprint and teamed up with Defendants Retrobrands and Kaplan (collectively, "Retrobrands") to launch a new counterfeiting

scheme in 2018.  The first public action in that scheme appears to have occurred from January 29-30, 2018, when Retrobrands, not NW Entity, filed an application to register the counterfeit NEXTEL Mark with the United States Patent and Trademark Office ("USPTO") and filed a Petition to Cancel Sprint's federal registrations for the famous NEXTEL Mark.  *See* Jobe Decl. ¶¶ 51, 57-58 & Exs. 26, 30.  But neither the Petition to Cancel nor Retrobrands' application, let alone any other publicly available information, made it clear upon what grounds Retrobrands based its claim to Sprint's famous NEXTEL Mark.  *See* Exs. 26, 30 to Jobe Decl.  Retrobrands' website suggested it did not personally use the NEXTEL Mark, and its public comments about its rights referred only cryptically to an unidentified licensee.  *See, e.g.*, Exs. 21, 28-29 to the Jobe Decl.  As such, there was no way to tell what Retrobrands was doing, let alone to link them to NW Entity.  *See, e.g.*, Jobe Decl. ¶¶ 48-50, 53, 55-56 (explaining some of the steps she took to investigate Sprint's claims and form a good faith basis regarding the relationship between Defendants).  This is particularly true because, at the very same time that Retrobrands and NW Entity were launching this new, joint attack on Sprint's three-decade old rights in the famous NEXTEL Mark, NW Entity went out of its way to falsely reassure Sprint in a February 8, 2018 email that it was honoring its prior representation that it "ha[d] stopped using the mark" and that Sprint could therefore "close [its] file on this matter."  Jobe Decl. ¶ 43 & Ex. 20.

It took two months of investigation for Sprint to unravel the details of Defendants' joint violation of Sprint's intellectual property rights.  *See, e.g.*, Jobe Decl. ¶¶ 46-50, 53, 55-56 & Exs. 21-26, 28-29.  Sprint confirmed that Retrobrands was not actually using the NEXTEL Mark but instead claimed ownership as the licensor. *See, e.g.*, *id.*  Sprint eventually learned that the unnamed licensee was in fact NW Entity.  *See, e.g.*, *id.*

In March 2018, Sprint employees learned that Defendants were at IWCE 2018 and were

using the counterfeit NEXTEL Mark to advertise, promote, sell, and offer to sell wireless devices in direct competition to Sprint, which was also at that show.  Mancuso Decl. ¶¶ 7-8, 10-14 & Exs. A-D.  Consumers again approached Sprint employees to express the mistaken belief that Defendants' 'Nextel' booth and counterfeit products were affiliated with or in some other way connected to Sprint and the genuine NEXTEL brand.  Mancuso Decl. ¶ 17.

Sprint immediately acted to draft and file its Complaint on April 11, 2018 and its Preliminary Injunction motion, filed two days later, requesting the Court preliminarily enjoin Defendants' unfair competition, cybersquatting, infringement, and counterfeiting.

## III.   ARGUMENT

Sprint demonstrated that it is entitled to injunctive relief to stop Defendants from continuing to use their counterfeiting scheme to confuse the public, unfairly compete with Sprint, and profit off the goodwill embodied in Sprint's famous NEXTEL Mark.  It respectfully submits that nothing in the R&R warrants a different conclusion.

As an initial point, the Defendants do not dispute at all that Sprint is entitled to injunctive relief based on its cybersquatting claim, and the R&R fails to mention this claim.  *See* Pl.'s Mot. at 15-17; *see also* R&R at 1-14; Defs. Opp'n at 1-19.  Sprint therefore requests the Court enter an injunction on that claim for the reasons set forth in the Motion Papers, which were not responded to by Defendants.

With respect to Sprint's remaining requested relief, the R&R recommends denial of the Motion based on (A) the claim that Sprint unreasonably delayed in seeking a preliminary injunction; and (B) that Sprint did not provide sufficient evidence to establish a likelihood of

success on the merits on the infringement and counterfeiting claims.[1]  *See* R&R at 8-13.  Sprint respectfully objects to both grounds because they are unsupported by the law and facts.

### A.     Sprint Did Not Unjustifiably Delay in Seeking Preliminary Relief

The R&R first states that Sprint is not entitled to preliminary relief because (1) Sprint allegedly waited a year after it sent a cease and desist letter to NW Entity before filing suit; and (2) Sprint did not contact Retrobrands at all prior to filing the lawsuit and waited two and half months after learning about the mere existence of Retrobrands to seek injunctive relief.  *See* R&R at 8-10.  Sprint respectfully disagrees with both the R&R's factual findings and its application of those findings to the law.

Although delay may militate against entry of a preliminary injunction, it only does so when the delay is unjustified.  *See, e.g.*, *Intec, Inc. v. Monster Cable Prods., Inc.*, No. 10-22772-civ, 2011 WL 13223537, at *3 (S.D. Fla. Sept. 6, 2011) (Martinez, J.); *Rebel Debutante LLC v. Forsythe Cosmetic Grp., Ltd.*, 799 F. Supp. 2d 558, 580 (M.D.N.C. 2011).  The principle behind this rule is that a party will act expeditiously to protect itself against immediate and imminent irreparable harm.  *See, e.g.*, *Monster Cable*, 2011 WL 13223537, at *3; *Rebel Debutante*, 799 F. Supp. 2d at 580.

There is no delay that justifies denying Sprint's Motion.  Instead, Sprint acted diligently from the start to address what for purposes of a delay analysis must be treated as two separate events:  (1)  the initial violation of Sprint's rights perpetrated by NW Entity alone that Sprint reasonably believed ended and actually did end in 2017 (something NW Entity assured Sprint of

---

[1] The R&R does not address the remaining preliminary injunction factors.  R&R at 8-13.  Sprint respectfully refers the Court to Sprint's Motions Papers, which establish that those elements are satisfied.

as late as February 2018);[2] and (2) the violation of Sprint's rights by all the Defendants that started at the end of January 2018 but was only fully revealed in March of 2018, a few of weeks before Sprint filed its Complaint and Motion.  *See supra* Section II; *infra* Sections III.A.1-2.

### 1. Sprint Acted Expeditiously to Stop Irreparable Harm Stemming from Infringements in 2017

NW Entity's counterfeiting and unfair competition in 2017 cannot support a finding of unjustified delay.  It is undisputed that Sprint learned of NW Entity's unlawful conduct in March or April of 2017.  Jobe Decl. ¶ 27.   Sprint acted quickly to stop the harm stemming from that conduct by sending cease and desist letters to not just NW Entity but also NW Entity's purported distributors and dealers.  *See Id.* ¶¶ 27-28 & Ex. 17.  Several of those purported distributors and dealers quickly agreed to and did stop promoting and/or selling NW Entity's counterfeit NEXTEL products, and NW Entity itself fully stopped use of the counterfeit NEXTEL Mark in 2017, assuring Sprint it would never take such actions again.  *Id.* ¶¶ 29, 33-37, 39-40 & Ex. 18; Suppl. Jobe Decl. ¶ 4 & Ex. B.

Sprint's persistent efforts and NW Entity's 2017 voluntary cessation of infringement are significant.  They distinguish this case from the ones relied upon in the R&R where the parties engaged in half-hearted year-long attempts at non-litigation-based resolutions that proved unfruitful, and then delayed even further after filing a lawsuit to seek preliminary injunctive relief. *See Menudo Int'l, LLC v. In Miami Prod., LLC*, No. 17-21559-civ, 2017 WL 4919222, at *3-*6 (S.D. Fla. Oct. 31, 2017) (finding delay unjustified because the plaintiff did not act diligently to

---

[2] The R&R suggests that Sprint should have acted as soon as NW Entity filed an *intent-to-use* application to register NEXTEL with the United States Patent and Trademark Office in October 2016.  But Sprint had no legal remedy at that time because an intent-to-use application on its face means that there is no actual use to support infringement or unfair competition claims; even an opposition to the application was not ripe because the application had not completed examination.

try to protect itself in the two years between learning of infringement and seeking injunctive relief); *Seiko Kabushiki Kaisha v. Swiss Watch Int'l, Inc.*, 188 F. Supp. 2d 1350, 1352 (S.D. Fla. 2002) (plaintiff only sent two letters over the course of a year, never received a response from the defendant, and waited another three months to file suit after receiving no response to its second letter); *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016) (plaintiff offered no explanation for its five month delay).

Because Sprint's efforts were quickly successful and NW Entity and its dealers stopped using the counterfeit NEXTEL Mark, Sprint had no need (or basis) for judicially ordered relief in 2017:  Sprint was able to get NW Entity to effectively agree to a self-injunction without court intervention, something to be encouraged, not punished. *See, e.g.*, *Rebel Debutante*, 799 F. Supp. 2d at 580 ("The law encourages conciliation efforts to avoid the expense and time of litigation," rather than using those efforts to find delay); *Wetzel's Pretzels, LLC v. Johnson*, 797 F. Supp. 2d 1020, 1029 n.4 (C.D. Cal 2011) (same); *see also Seiko*, 188 F. Supp. 2d at 1356 (recognizing that courts should give plaintiffs credit for trying to resolve disputes without judicial intervention).

### 2.     Sprint Acted Expeditiously to Seek Judicial Relief to Stop Irreparable Harm Stemming from the Resumption and Expansion of Infringements in 2018

Although Sprint's delay is truly no more than a month, even the two and a half month period between when Retrobrands filed the Petition to Cancel Sprint's three federal registrations for NEXTEL-formative marks and when Sprint sought preliminary injunctive relief would not warrant a finding of unjustified delay.  Courts routinely excuse "delays" of under three months and this case should be no different.  *See, e.g.*, *Monster Cable*, 2011 WL 13223537, at *3 (Martinez, J.) (finding a "three-month delay [to] filing suit and [an] additional two-month delay seeking a preliminary injunction are not long enough to militate against granting a preliminary injunction" in a trademark infringement case); *AT&T Mobility LLC v. Nat'l Ass'n for Stock Car*

*Auto Racing*, 487 F. Supp. 2d 1370 (N.D. Ga. 2007) (granting preliminary relief despite two to three month delay), *rev'd on other grounds*, 494 F.3d 1356 (11th Cir.); *see also Polar Corp. v. PepsiCo, Inc.*, 789 F. Supp. 2d 219 (D. Mass. 2011); *Juicy Couture, Inc. v. Bella Int'l Ltd.*, 930 F. Supp. 2d 489 (S.D.N.Y. 2013); *Bulman v. 2BKCO, Inc*., 882 F. Supp. 2d 551 (S.D.N.Y. 2012); *Athleta, Inc. v. Pitbull Clothing Co.*, 12-10499, 2013 WL 142877 (C.D. Cal. Jan. 7, 2013).

This is especially true given that Sprint spent the two and half month period between the filing of the Petition to Cancel and the Motion for Preliminary Injunction investigating its claims. Sprint had little information about Retrobrands in January 2018.  The Petition to Cancel did not contain information regarding Retrobrands use of the NEXTEL Mark and the company's public statements all referred to an unnamed licensee.  *See, e.g.*, Exs. 21, 28-30 to Jobe Decl.  At the same time, NW Entity was going out of its way to reassure Sprint that NW Entity "ha[d] stopped using the mark," and that Sprint could "close [its] file on this matter."  Jobe Decl. ¶ 43 & Ex. 20.  Sprint therefore had to use limited publicly available information to piece together that, contrary to those assurances, Defendants were acting in concert, as well as to understand exactly what Defendants were doing and the scale of their unlawful conduct.  *See, e.g.*, Jobe Decl. ¶¶ 48-50, 53, 55-56.

Any "delay" by Sprint is therefore not the type of delay that courts point to when denying preliminary injunctive relief.  It reflects Sprint's good faith investigation into the nature and scope of its claims and is therefore justified.  *See, e.g.*, *BP Chemicals Ltd. v. Formosa Chemical & Fibre Corp.,* 229 F.3d 254, 264 (3rd Cir. 2000) ("To the extent that delay can justify denial of a motion for a preliminary injunction a delay caused by a plaintiff's good faith efforts to investigate an infringement or to determine how serious an infringement is does not preclude a finding of irreparable harm."); *see also Polar Corp.*, 789 F. Supp. 2d at 239 (finding excusable delay where it took time for the plaintiff to determine exactly what the defendant was doing).  Sprint therefore

respectfully requests that the Court decline to adopt the R&R's finding of unjustified delay.

### B.    Sprint Easily Established a Likelihood of Success on the Merits

The second reason the R&R gives for denying the Motion is that Sprint allegedly failed to show a likelihood of success on the merits because (1) Sprint did not provide specific sales data, and (2) Sprint did not provide enough evidence regarding certain likelihood of confusion factors. R&R at 10-13.  Sprint respectfully objects that these conclusions are not supported by law or fact.

### 1.    Sprint Did Not Need to Provide Sales Data to Establish a Likelihood of Success on the Merits

Ignoring all of the testimony and evidence put forward by Sprint, the primary ground that the R&R gives for why Sprint allegedly did not establish a likelihood of success on the merits is that Sprint cannot establish use of its famous NEXTEL Mark without providing specific financial data regarding revenue generated or units sold under the NEXTEL Mark, even though it provided physical evidence of that use on product boxes as well as sworn testimony regarding that use. R&R at 10-13.  Sprint objects to that conclusion for two reasons.

### i.    Sprint's Unfair Competition Claim Does Not Even Require Evidence of Use

First, Sprint does not need to establish current use of the NEXTEL Mark to show a likelihood of success on the merits.  As set forth more fully in Sprint's prior briefing, actual current use of a trademark is not needed to support a claim for false designation of origin or unfair competition.  *See, e.g.*, *Bayer Consumer Care AG v. Belmora LLC*, 819 F.3d 697, 709-10 (4th Cir. 2016) (holding that use of a trademark is not required to bring such claims); Restatement (Third) of Unfair Competition § 30 cmt. a (1990) ("A designation that has been abandoned … may for a time retain its significance as an indication of association with the former user.  During the period of residual significance, use of the designation by another is likely to be perceived by prospective purchasers as an indication of association with the former user.  Unless the subsequent user

adequately distinguishes its use of the designation from the use by the original owner, the subsequent use is likely to deceive prospective purchasers with respect to the source or sponsorship of the goods or services."); McCarthy on Trademarks § 17:2 ("[B]ecause their subsequent use of the abandoned mark may well evoke a continuing association with the prior user, those who make subsequent use may be required to take reasonable precautions to prevent confusion."); *see also Cumulus Media, Inc. v. Clear Channel Comm'ns, Inc.*, 304 F.3d 1167, 1179 n.18 (11th Cir. 2002).

In the Motion Papers, Sprint moved for preliminary injunctive relief based on, among other things, its false designation of origin/unfair competition claim, which is premised in part on the fact that Defendants are relying and capitalizing on the association of that mark with Sprint, as well as the fame of and three-decades of goodwill embodied in the NEXTEL Mark, to attract customers, instead of Defendants' own merits and efforts.  Pl.'s Mot. at 11-15.  Defendants did not, and cannot, contest that conclusion: their entire *expressly admitted* business model is to adopt famous and iconic brands like NEXTEL so that they can sell products by trading on the substantial goodwill and nostalgia consumers associate with those brands. Ex. 21 to Jobe Decl. (Retrobrands' website stating that "[n]ostalgia is very important to us Americans" and therefore Retrobrands' mission "is to revive 'abandoned' consumer iconic brands and to bring them back to the marketplace").

Despite this distinct avenue of relief and Sprint's likelihood of success on the merits, the R&R rejects it out of hand, stating that Sprint has to establish use to have trademark rights to the NEXTEL Mark.  R&R at 12.  But this confuses the point:  Sprint's alternative unfair competition claim is not dependent on Sprint possessing trademark rights in the NEXTEL Mark. *See* Pl.'s Mot. at 13-15. It is based on the fact that, even assuming *arguendo* that Sprint had abandoned the NEXTEL Mark, unfair competition law prohibits any third-party – including Defendants – from

12

using the famous NEXTEL Mark because that use provides an unfair advantage in the marketplace due to the mark's fame, inherent goodwill, and association with Sprint.  *Id.*; Restatement (Third) of Unfair Competition § 30 cmt. a; McCarthy on Trademarks § 17:2; *see also Cumulus*, 304 F.3d at 1179 n.18; *Belmora*, 819 F.3d at 709-10.  For this reason alone, the Court can decline to adopt the R&R and grant the Motion.

       *ii.*     *Sprint Provided Sufficient Evidence of Use to Support its Other Claims*

Although Sprint's likelihood of success on the unfair competition claim renders moot the R&R's findings related to Sprint's evidence of continued use, Sprint nevertheless objects to those findings.  Specifically, the requirement that Sprint provide financial data in addition to the other evidence Sprint submitted to show non-abandonment is at odds with the binding Eleventh Circuit precedent Sprint cited in its Motion Papers.  In the controlling case of *Cumulus Media, Inc. v. Clear Channel Comm'ns, Inc.*, the Eleventh Circuit addressed a similar situation in which a plaintiff sought a preliminary injunction to enjoin trademark infringement and the defendant fought the preliminary injunction by arguing the plaintiff had abandoned its rights.  304 F.3d 1167 (11th Cir. 2002).  In reviewing the lower court's decision, the Eleventh Circuit articulated the exacting burden that the *defendant* bears to prevent entry of a preliminary injunction based on an abandonment defense, defining it as "strict," "stringent," and "heavy."  *Id.* at 1175.  The *Cumulus* court also confirmed that, even if the burden shifts to the plaintiff after the defendant establishes a prima facie case of abandonment, the plaintiff's burden is simply a limited one of production, not persuasion.  *Id.* at 1176-77.  As a result, evidence *as limited as showing use on business cards and a single billboard* – with no information on how many people would actually see that billboard or receive those business cards – was sufficient to overcome an abandonment defense and establish a likelihood of success on the merits at the preliminary injunction stage.  *Id.* at 1177 & n.10.

The R&R simply cannot be squared with *Cumulus*.  Although it recites the exacting burden

*Cumulus* places on Defendants, the R&R contains no analysis as to how Defendants met that burden.   *See* R&R at 1-14.   Defendants only "evidence" of abandonment are alleged public statements regarding Sprint's alleged future plans for the NEXTEL Mark.   Even that was addressed by *Cumulus*, explicitly holding that the "public announcement of [a] name change . . .  does not alone serve to make a prima facie showing of abandonment.   A defendant must also introduce evidence of nonuse." *Cumulus*, 304 F.3d at 1178 n.17.   Defendants have not done so here and the R&R does not state that they have.

The R&R's treatment of Sprint's evidence of continued use is also contrary to the binding precedent of *Cumulus*.   Sprint's evidence of use in the form of product boxes, manuals, and testimony regarding sales is the same type of evidence that the court found sufficient in *Cumulus*. 304 F.3d at 1177.   By rejecting that evidence out of hand, the R&R ignores *Cumulus*' binding statement of the burdens each parties bear at the preliminary injunction stage, and incorrectly places the heightened burden of *persuasion* on Sprint, requiring that Sprint provide financial data to corroborate Sprint's other evidence of continued use.   R&R at 8-10; *Cumulus*, 304 F.3d at 1176-77.   Sprint therefore respectfully requests that the Court decline to adopt the R&R's reasoning as contrary to controlling law.

### 2.      Sprint Established a Likelihood of Confusion

Although this is a counterfeiting case in which confusion is all but presumed, and despite acknowledging that Defendants conceded a likelihood of confusion, not to mention that confusion with famous brands is identified and acknowledged on Retrobrands' website as its entire business model, the second ground upon which the R&R finds that Sprint did not establish a likelihood of success on the merits is predicated on the belief that Sprint has not met the Eleventh Circuit's likelihood of confusion test.   R&R at 13; *see also Louis Vuitton Malletier, S.A. v. Louisvuittonbasgonsale.com*, No. 15-61814, 2015 WL 12550754, at *4 (S.D. Fla. Sept. 16, 2015)

(noting that it is reasonable to presume likelihood of confusion where a counterfeit mark is used). Sprint respectfully disagrees.

      i.       *The R&R's Weighing of the Factors Is Inconsistent with Circuit Law*

Likelihood of confusion is open and shut. Defendants use an exact copy of Sprint's famous NEXTEL Mark, right down to the font and yellow and black coloring (including using the ® after NEXTEL to refer to *Sprint's* trademark registration) on the same goods and services, through the same methods of marketing to the same consumers, who were actually confused, all with the intent of profiting off the goodwill Sprint created in that mark.

It is well-settled that the likelihood of confusion test requires the court to balance and weigh the various factors. *See, e.g.*, *It's A 10, Inc. v. Beauty Elite Grp., Inc.*, 932 F. Supp. 2d 1325, 1331 (S.D. Fla. 2013) ("Plaintiff need not prevail on all seven factors to succeed in its trademark infringement claim. Rather the court looks to the overall balance of the factors to see if a reasonable consumer would be confused by the infringing mark."). Moreover, certain factors – such as the strength of the plaintiff's mark and the defendant's intent – are weighted more heavily than others. *See, e.g.*, *Babbit Electronics, Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1179 (11th Cir. 1994); *TracFone Wireless, Inc. v. Clear Choice Connections, Inc.*, 102 F. Supp. 3d 1321, 1332 (S.D. Fla. 2015). Where those factors favor a finding of confusion, the remaining factors are unlikely to tip that balance. *See, e.g.*, *Frehling Enterprises, Inc. v. Int'l Select Group, Inc.*, 193 F.3d 1330, 1332 (11th Cir. 1999).

Here, the R&R does not contest that Sprint established that the factors related to the strength of the famous NEXTEL Mark, the similarity of the parties' marks, and Defendants' intent all favor a finding of confusion. R&R at 13. The R&R also does not find that *any factors weigh against* a finding of confusion. *Id.* It simply concludes that Sprint did not proffer enough evidence of actual confusion or establish that the similarities between the parties' sales methods, advertising

methods, and goods weigh in favor of confusion, such that those factors are, at worst, neutral.  *Id.*

But even if the Court were to adopt this breakdown of the factors, the conclusion that there is not a likelihood of confusion does not follow.  The three factors that the R&R does not contest as weighing in favor of a likelihood of confusion are significant.  In fact, the Eleventh Circuit, in its oft-cited decision in *Frehling Enterprises, Inc. v. International Select Group, Inc.*, reversed a district court and found a likelihood of confusion where the exact same three factors weighed in favor of finding confusion and the remaining factors were either neutral or disfavored confusion. Thus, on an even less favorable breakdown of the facts than the one found by the R&R, the Eleventh Circuit found clear error and reversed the district court's finding of no likelihood of confusion.  *See Frehling*, 193 F.3d at 1332 (reversing the district court and finding a likelihood of confusion where only three factors, the similarity of the marks, the strength of the mark, and the defendant's intent, weighed in favor and the rest were neutral or slightly disfavored confusion).

Moreover, it is well established in this Circuit that Defendants' expressly admitted reason for adopting the NEXTEL Mark—because it is an iconic, famous mark that has substantial goodwill and creates feelings of nostalgia in consumers—is by itself enough to find a likelihood of confusion as a matter of law.  *Babbit Electronics*, 38 F.3d at 1179 (finding likelihood of confusion as a matter of law where the defendant's reason for infringing the plaintiff's mark was improve sales of its telephone and therefore to derive economic benefit from the plaintiff's mark); Ex. 21 to Jobe Decl. (Defendants publicly admitting that they are trying to trade on the goodwill embodied in, and nostalgia associated with, iconic marks, including NEXTEL); *see also Louisvuittonbagsonsale.com*, 2015 WL 12550754, at *4.  Sprint therefore established a likelihood of success, even under the R&R's interpretation of the factors.

16

ii.     *The R&R's Conclusions Regarding Factors 3, 4, 5, and 7 are Contradicted by the Record*

In any event, Sprint also respectfully objects to the R&R's factual conclusion that Sprint did not show that the sales methods, advertising methods, similarity of the goods, and actual confusion factors weigh in favor of confusion. With respect to the similarity of the sales methods or advertising methods, Sprint provided evidence showing that Defendants and Sprint sell their products to overlapping customer bases (including but not limited to first responders) through retail stores and both advertise their products at least at the same trade shows. *See, e.g.*, Jobe Decl. ¶¶ 25-26, 38, 45; Mancuso Decl. ¶¶ 9-12, 15.   Sprint even discovered Defendants' use through attendance at the same trade show.  Mancuso Decl. ¶¶ 7-8 & Exs. A-D; *see also* Jobe Decl. ¶ 27. Although the R&R dismisses this evidence as "little or no[t] compelling," that ignores that this is the exact type of evidence that is often relied upon to find this factor favors confusion (not to mention that Sprint is submitting these papers before discovery).  *See Louisvuittonbagsonsale.com*, 2015 WL 12550754, at *4 (finding that the similarity of sales and advertising methods factors weigh in favor of confusion where there is a single form of advertising in common and the customers are the same).

With respect to the similarity of the goods factor, Sprint demonstrated that this factor weighs in favor of finding confusion by providing evidence that Defendants are selling wireless devices that are identical, closely related to, or within the zone of natural expansion of the devices sold by Sprint.  *Babbit Electronics*, 38 F.3d at 1181 (affirming confusion based on use of an identical mark on similar telephones); *Louisvuittonbagsonsale.com*, 2015 WL 12550754, at *4 (finding the similarity of goods factors supports confusion where the goods are nearly identical). The R&R nevertheless appears to reject Sprint's evidence based on the belief that, although both parties sell wireless devices, Sprint's Sonim XP Strike IS is not a "push-to-talk" device.  R&R at

13.  Regardless of whether that is true, this granular analysis of the type of goods is not permitted under trademark law.  *See, e.g.*, *Frehling*, 192 F.3d at 1338 ("This factor requires a determination as to whether the products are the kind that the public attributes to a single source, not whether or not the purchasing public can readily distinguish between the products of the respective parties.").

Finally, the R&R states that "the only evidence that Sprint offered of potential confusion is from its own employees" and that "evidence that shows instances of *actual consumer* confusion is the best proof."  R&R at 13 (emphasis in original).  But Sprint did provide evidence of actual consumer confusion, and it is unclear why the R&R fails to rely on it.  Specifically, in the declaration of Brian Mancuso, Mr. Mancuso recounted several instances in which he was approached by consumers during a trade show who mistakenly believed that Defendants' NEXTEL booth was affiliated with, sponsored by, or in some other way connected to Sprint. Mancuso Decl. ¶¶ 16-17.  Similarly, in connection with the declaration of Ms. Jobe, Sprint provided evidence to show that Defendants had caused actual confusion among its potential distributors or dealers (i.e., the first layer of customers that buy and then resell Defendants' counterfeit products) because those dealers or distributors falsely believed that Defendants were authorized licensees of the NEXTEL brand or had bought the NEXTEL brand.  Jobe Decl. ¶ 30. Thus, although actual consumer confusion is not even needed to establish a likelihood of confusion, because in most cases, it is impossible to find, Sprint nevertheless (even before discovery) provided significant evidence of that confusion, especially in light of the short amount of time in which Defendants have been violating Sprint's rights.  *See, e.g.*, *Caliber Automotive Liquidators, Inc. v. Premier Chrysler, Jeep, Dodge, LLC*, 605 F.3d 931, 937 (11th Cir. 2010) (noting that "'the quantum of evidence needed to show actual confusion is relatively small'" (citation omitted)).

## IV.     CONCLUSION

WHEREFORE, for at least the foregoing reasons, Sprint Communications respectfully requests the Court decline to adopt the July 5, 2018 Report and Recommendation and instead, after a *de novo* review, grant the Motion and enter a preliminary injunction against Defendants.

Dated: July 19, 2018                                      **MᴄGᴜɪʀᴇWᴏᴏᴅꜱ LLP**

                                                          /s/ Sara F. Holladay-Tobias
                                                          Sara F. Holladay-Tobias
                                                          Fla. Bar No. 26225
                                                          Emily Y. Rottmann
                                                          Fla. Bar No. 93154
                                                          stobias@mcguirewoods.com
                                                          erottmann@mcguirewoods.com
                                                          flservice@mcguirewoods.com
                                                          50 North Laura Street, Suite 3300
                                                          Jacksonville, Florida  32202
                                                          Tel:   (904) 798-3200
                                                          Fax:   (904) 798-3207

                                                          Brad R. Newberg (admitted *pro hac vice*)
                                                          bnewberg@mcguirewoods.com
                                                          1750 Tysons Boulevard
                                                          Suite 1800
                                                          Tysons, Virginia 22102
                                                          Tel:  (703) 712-5000
                                                          Fax:  (703) 712-5050

                                                          Lucy Jewett Wheatley (admitted *pro hac vice*)
                                                          Amanda L. DeFord (admitted *pro hac vice*)
                                                          lwheatley@mcguirewoods.com
                                                          adeford@mcguirewoods.com
                                                          Gateway Plaza
                                                          800 East Canal Street
                                                          Richmond, Virginia 23219
                                                          Tel:  (804) 775-1000
                                                          Fax:  (804) 775-1061

                                                          *Attorneys and Trial Counsel for Plaintiff Sprint*
                                                          *Communications, Inc.*

19

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 19, 2018, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will cause the foregoing document to be electronically served on all counsel of record.

*/s/ Sara F. Holladay-Tobias*
Attorney

## <u>SERVICE LIST</u>
## Case No. 0:18-cv-60788-JEM

Ury Fischer, Esq.
LOTT & FISCHER PL
255 Aragon Avenue, Third Floor
Coral Gables, FL 33134
ufischer@lottfischer.com


Benjamin Ashurov, Esq.
Neil A. Smith, Esq.
KB ASH LAW GROUP PC
7011 Koll Center Parkway, Suite 160
Pleasanton, CA 94566
bashurov@kb-ash.com
nsmith@kb-ash.com


James J. Kernell, Esq.
ERICKSON KERNELL IP
8900 State Line Road, Suite 500
Leawood, KS 66206
jjk@kcpatentlaw.com

*Counsel for Defendants*