**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION**

SPRINT COMMUNICATIONS, INC.,

    Plaintiff,

v.

STEPHEN CALABRESE, as an individual,
NEXTEL, INC. d/b/a NEXTEL
WORLDWIDE, RETROBRANDS USA
LLC, and JEFFREY KAPLAN, as an
individual,

    Defendants.

Case No. 0:18-cv-60788-JEM

Jury Trial Demanded

**PLAINTIFF'S REPLY IN SUPPORT OF ITS OBJECTIONS
TO THE JULY 5, 2018 REPORT AND RECOMMENDATION ON
PLAINTIFF'S MOTION FOR ENTRY OF A PRELIMINARY INJUNCTION**

## **TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................. 1
II.  THERE WAS NO UNREASONABLE DELAY BY SPRINT ......................................... 4
III. DEFENDANTS FAIL TO COUNTER THAT UNFAIR COMPETITION MANDATES A PRELIMINARY INJUNCTION REGARDLESS OF DEFENDANTS' PURPORTED ABANDONMENT DEFENSE ..................................... 6
IV.  DEFENDANTS' ABANDONMENT DEFENSE DOES NOT BAR THE PRELIMINARY INJUNCTION ON THE TRADEMARK CLAIMS ............................. 7
V.   SPRINT'S SHOWED A LIKELIHOOD OF CONFUSION ........................................... 10
VI.  CONCLUSION .................................................................................................... 10

# **TABLE OF AUTHORITIES**

**Cases**

*Babbit Electronics, Inc. v. Dynascan Corp.*,
    38 F.3d 1161 (11th Cir. 1994) ................................................................................................10

*Brand Ventures, Inc. v. TAC5, LLC*,
    2018 WL 691774 (M.D. Fla. Feb. 2, 2018) ...............................................................................5

*CORD:USE Cord Blood Bank, Inc. v. CBR Systems, Inc.*,
    2012 WL 8745157 (M.D. Fla. Nov. 5, 2012) ............................................................................6

*Cumulus Media, Inc. v. Clear Channel Communications, Inc.*,
    304 F.3d 1167 (11th Cir. 2002) ..............................................................................................8, 9

*Menudo Int'l, LLC v. In Miami Prod., LLC*,
    No. 17-21559-civ, 2017 WL 4919222 (S.D. Fla. Oct. 31, 2017) ...............................................5

*Seiko Kabushiki Kaisha v. Swiss Watch Int'l, Inc.*,
    188 F. Supp. 2d 1350 (S.D. Fla. 2002) ......................................................................................6

*Wreal, LLC v. Amazon.com, Inc.*,
    840 F.3d 1244 (11th Cir. 2016) ..................................................................................................6

Plaintiff Sprint Communications, Inc. hereby submits the following reply in support of its objections to the July 5, 2018 Report and Recommendations:

## I.      INTRODUCTION

In its opening brief in support of its Objections to the July 5, 2018 Report and Recommendations (the "Objections"), Sprint provided the Court with pin cites to the record and multiple on-point cases that show both factual and legal errors in the R&R's findings.[1]  *See* [ECF No. 59] Sprint's Objs. to R&R ("Sp. Br.").  Sprint showed that there is no basis upon which to find unexplained delay.  *Id.* at 7-11.  It showed that binding circuit precedent precludes a finding of abandonment where, as here, the trademark holder provides evidence of ongoing use.  *Id.* at 13-14.  It showed that unfair competition and false designation and origin claims would apply even for abandoned trademarks where consumers will be confused.  *Id.* at 11-13.  And it showed that the likelihood of confusion factors clearly weigh in favor of confusion where, like here, the infringer uses *the exact same mark for the exact same goods and services*.  *Id*. at 14-19.

Defendants respond emotionally.  *See generally* [ECF No. 60] Defs.' Opp'n to Sprint's Objs. to R&R ("Def. Br."), stating falsely that Sprint's Objections are merely "pejorative," and that Sprint supposedly wants the Court to look for needles in a haystack  *Id.* at 1-3.

But what Defendants cannot counter is that the R&R relies on legal and factual errors.  As opposed to a baseless attack on Defendants or their business, Sprint is protecting its intellectual property, as any company is expected to do.  Reference to Defendants as counterfeiters recognizes that they are, by definition, engaging in counterfeiting by taking *the exact NEXTEL Mark* and using it with what *the exact same type of goods and services* as Sprint (complete with Sprint's yellow and black branding and an R in a circle ® referring to *Sprint's* incontestable trademark),

---

[1] For the convenience of the Court, Sprint will use the same abbreviations it used in its opening brief on the objections to the R&R.  *See* [ECF No. 59] Sprint's Objs. to R&R ("Sp. Br.").

1

and it underscores the need for a preliminary injunction.  "Evidence" of Sprint's purported intent to abandon the NEXTEL Mark is irrelevant in the face of evidence that Sprint's use did not stop. Defendants simply ignore that point because it is fatal to their case.

Defendants are correct that this is not a normal trademark case—they are just wrong about why.  This is not a normal case because it is a situation where Defendants openly and publicly admit that they are trying to take Sprint's NEXTEL Mark—a mark emblazoned in the mind of consumers as one of the most prominent wireless brands in the public sector and services industries over the last thirty years.  *See, e.g.*, [ECF No. 6-30] Ex. 30 to Jobe Decl. (Defendant press release referring to the "ICONIC NEXTEL" and "immensely popular NEXTEL brand"); [ECF No. 6-21] Ex. 21 to Jobe Decl. (Retrobrands' stating that "[n]ostalgia is very important to us Americans" and that its mission "is to revive 'abandoned' consumer iconic brands").  Defendants are adopting Sprint's mark with the sole goal of transforming their unknown goods and services into a household name overnight by capitalizing on the fame, goodwill, and nostalgia that they expressly admit is embodied in that mark.  *See, e.g.*, *id.*

Despite Defendants' claims to the contrary, Sprint has not abandoned the NEXTEL Mark—a point confirmed by its evidence of current use that Sprint directly cites to in its briefing. *See, e.g.*, Sp. Br. at 3; *infra* Section IV.  By law, this should end Defendants' arguments and a preliminary injunction should issue.  But even assuming *arguendo* that there is abandonment (which there is not), this is not a case where the law permits even an abandoned mark to be revived by others.  This case deals with adoption of the famous NEXTEL Mark in connection with wireless devices and related services.  As the multiple instances of actual confusion previously cited by Sprint confirm, there is no level of precaution that Defendants can take (and certainly they have tried to increase not decrease confusion) that can prevent Defendants from unfairly competing based on consumer love and recognition of NEXTEL and its connection to Sprint. Sp. Br. at 18.

Finally, this case is very different from cases where courts have denied preliminary injunctions due to unexplained delay. Sprint did not sit idly by while Defendants violated its intellectual property rights. Sprint immediately contacted NW Entity and its purported dealers and distributors. *Id.* at 7-9. The majority of the dealers and distributors immediately agreed to cease use, and through a series of communications, Sprint *succeeded* in stopping the 2017 infringement in its entirety by getting NW Entity to stop all use within a few months of when Sprint first learned of the issue. *Id.* Sprint also acted diligently in investigating what it initially believed was a new threat by Retrobrands at the end of January 2018, discovering that Retrobrands had teamed up with NW Entity to relaunch the counterfeit NEXTEL brand. *Id.* at 9-11. Defendants ignore those inconvenient points and pretend as if they did not take active steps to hide their plot from Sprint, including NW Entity's counsel telling Sprint in February 2018 that NW Entity was not using the mark, would not be using the mark in the future and telling Sprint it could close its files, while secretly hiding its actions from Sprint and having Retrobrands begin taking all public facing actions in 2018 at first, before the plot was finally discovered. *See* Def. Br. at 6-10.

Sprint has shown that adopting the R&R's denial of the preliminary injunction with the record in this case is not just legally and factually unjustifiable, it works an injustice. It penalizes Sprint for using its own resources to shut down the 2017 infringement, while rewarding NW Entity for strategically stopping use long enough to convince Sprint there was no problem. It penalizes Sprint for investigating the 2018 infringement in order to file a complaint in good faith and a motion for preliminary injunction within two days of each other, while rewarding Defendants for hiding their scheme from Sprint. But perhaps most significantly, it could create precedent that (1) a defendant can adopt an unquestionably and admittedly *counterfeit mark* in connection with *the same type of goods and services*; (2) a trademark owner can provide evidence of actual, ongoing

3

use but still be found to have abandoned a mark; and (3) regardless of the confusion and unfair advantages in the marketplace, a party can adopt a thirty-year old famous mark for the sole purpose of trading in on the fame and goodwill it did not create.

Sprint has provided the Court with the facts and case law that preclude it from adopting the R&R.  Nothing in Defendants' opposition warrants a contrary conclusion.

## II.   THERE WAS NO UNREASONABLE DELAY BY SPRINT

Sprint provided the Court with cases and specific record citations that demonstrate there is no delay, let alone inexcusable delay, in this case.  Sp. Br. at 7-11.  Defendants' three arguments offered in support of a contrary conclusion do not withstand scrutiny.

First, Defendants contend Sprint's delay was inexcusable because NW Entity filed its intent-to-use (not actual use) application in October 2016, and Sprint 'waited' until April 2017 to send a cease and desist letter.  Def. Br. at 6.  But as Sprint already showed, this time period cannot support delay because Sprint did not learn about NW Entity until March/April 2017 and the clock on delay does not start running before knowledge of the issue.  Sp. Br. at 8 n.2.  Moreover, even if Sprint had knowledge (which it did not), NW Entity's lack of use as represented by the intent-to-use application meant that neither Sprint's claims nor its request for preliminary injunction of use were ripe in October 2016.  *Id.*  And finally, the argument ignores that Sprint acted immediately to contact NW Entity after learning of its actual infringement in March/April 2017.  *Id.* at 3-4, 8.

Second, Defendants try to hide that Sprint's 2017 enforcement efforts against NW Entity *succeeded*, again eliminating any legal basis for Sprint to seek a preliminary injunction.  Def. Br. at 6-10.  They do so by calling these efforts "sporadic" and "half-hearted."  *Id*.  They falsely say NW Entity never agreed or promise to stop use.  *Id*.  And they point to NW Entity's *resumption* of its violation of Sprint's rights in 2018, pretending as though there was no break in NW Entity's conduct from when Sprint learned of it in March/April 2017 and filed suit in 2018.  *Id.*  But in

4

doing so, Defendants gloss over the most important fact that renders all of their contentions irrelevant: NW Entity's counsel expressly told Sprint *twice* that NW Entity "ha[d] stopped using the [NEXTEL] mark" and even went so far as to say that Sprint could "close its file," not to mention that NW Entity did in fact *stop using the mark* until January 29, 2018, when it teamed up with Retrobrands. Sp. Br. at 8-10. The 2017 time period is irrelevant for purposes of delay, and the R&R's reliance on it is improper. *See, e.g.*, *id.*

Finally, Defendants claim without support that Sprint should have filed its complaint immediately after Retrobrands filed its application, which would have essentially required Sprint to file a lawsuit without conducting any investigation into its claims.[2] Putting aside that the federal rules require Sprint to exercise reasonable diligence to develop its claim prior to filing for judicial relief, Defendants' argument cannot be squared with the fact that reasonable investigation is one of the most accepted bases for finding excusable delay, and the same holds true here. *See, e.g.*, *Brand Ventures, Inc. v. TAC5, LLC*, 2018 WL 691774, at *3 (M.D. Fla. Feb. 2, 2018) (five month delay excusable due to pre-suit investigation); Sp. Br. at 10-11. Defendants' handful of cases do no warrant a contrary conclusion, as each involved delay significant delay and/or periods of complete inaction after obtaining the information needed to know a preliminary injunction was required. *See Menudo Int'l, LLC v. In Miami Prod., LLC*, No. 17-21559-civ, 2017 WL 4919222, at *3-*6 (S.D. Fla. Oct. 31, 2017) (finding delay unjustified because the plaintiff did not act

---

[2] Contrary to Defendants' characterization, Sprint has provided the Court with evidence that it first learned about Retrobrands when the company filed the trademark application in late January 2018. Sp. Br. at 4-6. Moreover, although Defendants try to construe Ms. Jobe's statements in her declaration about how she eventually linked Retrobrands and NW Entity to favor their position, this in fact confirms the lengths to which Sprint had to go in order to figure out exactly who was using the mark on behalf of Retrobrands and to what extent that mark was being used, so Sprint could identify its claims and the defendants, as well as to evaluate the need for a preliminary injunction. *Id.*

5

diligently to try to protect itself in the two years between learning of infringement and seeking injunctive relief); *Seiko Kabushiki Kaisha v. Swiss Watch Int'l, Inc.*, 188 F. Supp. 2d 1350, 1352 (S.D. Fla. 2002) (plaintiff only sent two letters over the course of a year, never received a response from the defendant, and waited another three months to file suit after receiving no response to its second letter); *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016) (plaintiff offered no explanation for its five month delay); *CORD:USE Cord Blood Bank, Inc. v. CBR Systems, Inc.*, 2012 WL 8745157, at * (M.D. Fla. Nov. 5, 2012) (finding delay because the plaintiff took no action in the two month period after it determined mediation would not work).  Sprint therefore respectfully requests the Court sustain its objection to the R&R's finding of inexcusable delay and therefore also hold that the irreparable harm requirement is satisfied.

### III. DEFENDANTS FAIL TO COUNTER THAT UNFAIR COMPETITION MANDATES A PRELIMINARY INJUNCTION REGARDLESS OF DEFENDANTS' PURPORTED ABANDONMENT DEFENSE

Sprint provided the Court with case law and specific record citations to show that it is entitled to a preliminary injunction on its unfair competition claim, which is immune to any purported abandonment defense, and that the R&R erred in summarily dismissing that point, barely mentioning it even though Defendants conceded this argument, failing to address it in prior briefing.  Sp. Br. at 11-13.  Despite their prior waiver, Defendants offer two meritless arguments.

First, Defendants claim without citation to any authority that unfair competition claims require evidence of use.  Def. Br. at 15.  This is demonstrably false, and Sprint has provided the Court with authority that confirms unfair competition claims do not depend on "trademark rights," allowing this claim to proceed regardless of the abandonment defense.  *See, e.g.*, Sp. Br. at 11-13.

Second, Defendants claim that the NEXTEL Mark does not have any "residual goodwill" to allow Sprint to maintain an unfair competition claim.  Def. Br. at 15-17.  That argument is incredible.  This is not some brand or sub-brand that few people have encountered and will not

6

remember.  This is NEXTEL.  It is a household name.  In fact, Defendants expressly acknowledge that it is *exactly* the residual goodwill that makes them want the mark so badly.  *See supra* Section I (quoting public statements by Defendants that refer to NEXTEL as "iconic" and "immensely popular").  It makes no difference if Sprint took an impairment in the Nextel *companies* or shutdown the iDEN network operated by the Nextel *companies*.  Consumers still know and love the NEXTEL brand—a fact on which Defendants are quite eager to capitalize.

Defendants also cannot defend against a likelihood of success on the unfair competition claim by boldly asserting that no one associates NEXTEL with Sprint.  As recently as March 2018, the mere sight of Defendants' NEXTEL booth at the IWCE trade show prompted several consumers to ask Sprint why Sprint had a separate booth for NEXTEL instead of combining that booth with the Sprint booth.  [ECF No. 6-32] Mancuso Decl. ¶¶ 16-17.  At this exact same trade show, Defendants displayed the article they claim is sufficient to prevent these instances of actual confusion.  Def. at 16-17; Mancuso Decl. ¶¶ 13-17.  Clearly, they are not.  And neither are the other "precautionary" measures Defendants' claim they are taking, a point to which Defendants provide no actual response.  [ECF No. 6] Sp. Mot. for Prelim. Injun. at 13 n.4.

Sprint therefore requests the Court sustain its objection to the R&R's summary refusal to consider the unfair competition claim and to enter the preliminary injunction on Sprint's behalf.

**IV.  DEFENDANTS' ABANDONMENT DEFENSE DOES NOT BAR THE PRELIMINARY INJUNCTION ON THE TRADEMARK CLAIMS**

Sprint provided the Court with binding Eleventh Circuit precedent and specific citations to the record to show that Defendants' abandonment defense cannot defeat the preliminary injunction.  Sp. Br. at 13-14; *see also id.* at 3.  Defendants' opposition confirms that conclusion.

As an initial point, Defendants focus the majority of their argument on Sprint's purported intent to not resume use of the NEXTEL Mark, citing alleged statements and public filings.  Def.

7

Br. at 12-13. But this argument puts the cart before the horse: purported evidence of intent not to resume has no legal significance unless Sprint *actually stopped* use. Defendants' claimed 'voluminous' evidence is therefore meaningless in the face of Sprint's continued use.

Likely recognizing that point, Defendants challenge Sprint's evidence of use by arguing that the Eleventh Circuit's holding in *Cumulus Media, Inc. v. Clear Channel Communications, Inc.*, 304 F.3d 1167 (11th Cir. 2002) is factually distinguishable, and questioning without basis whether Sprint's use evidence is "current." Def. Br. at 14-15, 17-18. Both points fail.

As an initial point, the record in *Cumulus* at the preliminary injunction stage is quite analogous to the one here. In *Cumulus*, the defendant tried to avoid a preliminary injunction by claiming abandonment based on the plaintiff radio station changing its name and its cessation of use of the mark on air. *Cumulus*, 304 F.3d at 1169. Here, Defendants claim abandonment based on alleged statements by Sprint that it was going to shut down the iDEN network that the Nextel entities operated. Def. Br. at 13. The plaintiff in *Cumulus* defeated the abandonment defense for purposes of the preliminary injunction by pointing to a single sign, some promotional products, and its business cards. *Cumulus*, 304 F.3d at 1169. Here, Sprint provided testimony regarding current use and examples of product boxes and an instruction manual, which defeats the abandonment defense for purposes of the preliminary injunction. *See, e.g.*, Sp. Br. at 3, 11-13.

Defendants' attempt to avoid the impact of *Cumulus* simply by trying to distinguish a few facts is insufficient. The R&R erred by failing to apply the legal framework *Cumulus* requires, which is that Defendants bear the strict, heavy burden of establishing a prima facie case and the burden of persuasion, while Sprint bears only the burden of production. Forcing Sprint to produce financial data on top of product boxes/instruction manual and testimony regarding sales as recent as December 2017 (i.e., well within the three years needed to get a presumption of abandonment)

8

places on Sprint the burden of persuasion that *Defendants* bear. *Cumulus*, 304 F.3d at 1175-78. That is the main reason why *Cumulus* precludes the Court from adopting the R&R. The analogous facts are just additional support.

Moreover, Defendants cannot 'defeat' Sprint's evidence of continued use through conspiracies based on dates of photographs or copyrights or claims based on conversations with Sonim. Ms. Jobe testified under penalty of perjury that Sprint is using the NEXTEL Mark, that it has had sales of the Sonim XP Strike IS—which is the product sold in the box bearing the NEXTEL Mark—as recently as December 2017, and that she was providing an example the use on the Sonim XP Strike IS box to the Court through a photograph submitted in connection with her declaration as well as a physical specimen during the evidentiary portion of the hearing.[3] Sp. Br. at 3. Nothing prohibits a company from selling products with copyrighted text from years before. Nothing prohibits a company from using an older photograph to represent current use as along as it provides testimony to verify that use is current. And nothing prevents a company from amassing inventory to allow it to continue selling devices long after the manufacturer purportedly ceases making them.[4] Defendants therefore provided nothing to counter Sprint's documentary and testimonial evidence of continued use or to overcome Sprint's objection that the R&R erred in finding Defendants were likely to succeed on abandonment. Sprint requests the Court sustain its objection and find that the abandonment defense does not preclude a preliminary injunction.

---

[3] Defendants again complain of purported rule violations by Sprint. These objections are meritless. [ECF No. 46].

[4] With the amount of ink they have spilled accusing Sprint of rule violations, it is beyond ironic that Defendants attempt to introduce new evidence at this stage from a purported conversation with Sonim for which they provide no evidence other than an unsupported line in their brief. Def. Br. at 15. Sprint will refrain, however, from inundating the Court with additional briefing as this 'evidence' has no effect on Sprint's entitlement to a preliminary injunction.

9

## V. SPRINT SHOWED A LIKELIHOOD OF CONFUSION

Sprint provided the Court with case law and pin cites to the record to show why the R&R's balancing of the confusion factors should not be adopted. Sp. Br. at 14-18. Defendants respond by ignoring or misconstruing the record citations to claim that Sprint did not provide evidence on certain factors and arguing without authority that they can adopt *the exact NEXTEL Mark in connection with the exact same goods and services* without there being a likelihood of confusion. Def. Br. at 18-20. Because Sprint's opening brief already demonstrates that Defendants arguments fail, Sprint will only make two additional points in response to Defendants' brief. First, Defendants claim that the intent to adopt a famous mark and profit from its goodwill is done in 'good faith' if they have some belief of abandonment. *Id.* at 19. However, that belief does not change that intent is always evidence of a likelihood of confusion when the defendant is hoping to profit off consumer recognition of the mark. *See, e.g.*, *Babbit Electronics, Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1179 (11th Cir. 1994).

Second, Defendants misrepresent Sprint's actual confusion evidence. Def. Br. at 19-20. As detailed in Sprint's opening papers, there have been multiple instances in which end-users (consumers) as well as Defendants' potential or actual dealers and distributors have stated that they thought Defendants were Sprint, were authorized to use NEXTEL by Sprint, or had bought the genuine NEXTEL brand from Sprint. Mancuso Decl. ¶¶ 16-17; Jobe Decl. ¶ 30. The out of circuit case law Defendants rely upon is easily distinguishable.

## VI. CONCLUSION

WHEREFORE, for at least the reasons set forth in its opening brief and above, Sprint Communications respectfully requests the Court decline to adopt the July 5, 2018 Report and Recommendation and instead, after a *de novo* review, grant the Motion and enter a preliminary injunction against Defendants.

Dated:  August 9, 2018   **MCGUIREWOODS LLP**

*/s/ Sara F. Holladay-Tobias*
Sara F. Holladay-Tobias
Fla. Bar No. 26225
Emily Y. Rottmann
Fla. Bar No. 93154
stobias@mcguirewoods.com
erottmann@mcguirewoods.com
flservice@mcguirewoods.com
50 North Laura Street, Suite 3300
Jacksonville, Florida  32202
Tel:   (904) 798-3200
Fax:   (904) 798-3207

Brad R. Newberg (admitted *pro hac vice*)
bnewberg@mcguirewoods.com
1750 Tysons Boulevard
Suite 1800
Tysons, Virginia 22102
Tel:  (703) 712-5000
Fax:  (703) 712-5050

Lucy Jewett Wheatley (admitted *pro hac vice*)
Amanda L. DeFord (admitted *pro hac vice*)
lwheatley@mcguirewoods.com
adeford@mcguirewoods.com
Gateway Plaza
800 East Canal Street
Richmond, Virginia 23219
Tel:  (804) 775-1000
Fax:  (804) 775-1061

*Attorneys and Trial Counsel for Plaintiff Sprint Communications, Inc.*

11

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 9, 2018, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will cause the foregoing document to be electronically served on all counsel of record.

*/s/ Sara F. Holladay-Tobias*
Attorney

**SERVICE LIST**
**Case No. 0:18-cv-60788-JEM**

Ury Fischer, Esq.
LOTT & FISCHER PL
255 Aragon Avenue, Third Floor
Coral Gables, FL 33134
ufischer@lottfischer.com


Benjamin Ashurov, Esq.
Neil A. Smith, Esq.
KB ASH LAW GROUP PC
7011 Koll Center Parkway, Suite 160
Pleasanton, CA 94566
bashurov@kb-ash.com
nsmith@kb-ash.com


James J. Kernell, Esq.
ERICKSON KERNELL IP
8900 State Line Road, Suite 500
Leawood, KS 66206
jjk@kcpatentlaw.com

*Counsel for Defendants*