# EXHIBIT A

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF FLORIDA
### FT. LAUDERDALE DIVISION

Case No. 0:18-cv-60788-MARTINEZ/SNOW

SPRINT COMMUNICATIONS, INC.,

      Plaintiff and Counterclaim-Defendant,

v.

STEPHEN CALABRESE, as an individual,                     Jury Trial Demanded
NEXTEL, INC. d/b/a NEXTEL WORLDWIDE,
RETROBRANDS USA LLC, and JEFFREY
KAPLAN, as an individual,

      Defendants and Counterclaimants.

_____

### PLAINTIFF'S FIRST SET OF REQUESTS FOR
### PRODUCTION OF DOCUMENTS AND THINGS

      Plaintiff Sprint Communications, Inc. ("Sprint"), by counsel, pursuant to Rules 26 and 34

of the Federal Rules of Civil Procedure (collectively, the "Rules"), requests that Defendants

Stephen Calabrese, Nextel, Inc. d/b/a Nextel Worldwide, Retrobrands USA LLC, and Jeffrey

Kaplan (collectively, "Defendants"), respond to the following requests for the production of

documents and things and produce the documents requested within thirty (30) days of the date of

service.

### DEFINITIONS AND INSTRUCTIONS

      1.     Each document request seeks production of all documents described herein in the

possession, custody, or control of Defendants, their principals, agents, employees, or

representatives.

      2.     Where a claim of attorney-client privilege, work product doctrine, or other privilege

is asserted with respect to the subject matter of any discovery request, provide the following:

    a.   the nature of the privilege that is being claimed;

    b.   the name(s) of the author(s), sender(s), recipient(s) of the document;

    c.   the name(s) of the person(s) to whom copies were sent;

    d.   the date of the document;

    e.   the type of document; and

    f.   the general subject matter of the document, described in sufficient detail so as to permit Sprint to assess the claim of privilege.

3.    Each paragraph herein shall be construed independently of and without reference to any other paragraph for the purpose of limitation.

4.    Each request and interrogatory shall be responded to completely, separately, and fully in writing.

5.    If documents produced in response to a request are normally kept in a file or other folder, then also produce that file or folder with any labels attached thereto.

6.    In making documents available, all documents that are physically attached to each other in files shall be made available in that form, including all attachments, cover letters, facsimile transmittal sheets, memoranda, and appendices.

7.    The meaning of the term "document" shall be construed in the most comprehensive and inclusive sense permitted by the Rules for the terms "documents" and "electronically stored information," including but not limited to, all advertisements, promotional materials, marketing materials, publications, pamphlets, circulars, press releases, plans, contracts, agreements, drafts, correspondence, electronic mail, voice mail, memoranda, notes, resolutions, articles, bylaws, amendments, filings, invoices, data compilations, telegrams, telexes, faxes, or sound recordings of any type of personal or telephone conversations or of meetings or conferences, and minutes,

studies, analyses, reports, records, and project files, or reports similar to any of the foregoing, however denominated.

8.      The term "person" shall mean any natural person or any business, legal or governmental entity or association.

9.      The term "concern," including its various forms such as "concerning," shall mean relating to, referring to, describing, evidencing or constituting, reflecting on, arising out of, or being in any way or manner legally, factually, or logically connected with the matter discussed.

10.      The phrase "relate to," including its various forms such as "relating to," shall meant relate to, consist of, constitute, refer to, reflect upon or be in any way logically or factually connected with the matter discussed.

11.      The term "communication" shall mean the transmittal or recording of information (in the form of facts, ideas, inquiries or otherwise), and includes, without limitation, correspondence, notes, texts, letters or other mail (including faxes and email), telephone calls, and face-to-face meetings.

12.      The terms "all," "any" and "each" shall be construed as encompassing any and all.

13.      The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside the scope.

14.      The singular shall be construed to include the plural, and vice versa, to make the discovery request inclusive rather than exclusive.

15.      The past tense shall be construed to include the present tense, and vice versa, to make the discovery requests inclusive rather than exclusive.

16.     With respect to a person, the phrase to "identify" shall mean to state: (a) the person's name; (b) whether the person is an individual or a business entity; (c) the address, or last known address, of that person; (c) the address, or last known address, of that person; (d) if the person is an individual, the business position or positions held by the individual at the time or times for which identification is requested; and (e) if that person is an entity or organization, the names and positions or the individual or individuals connected with such entity or organization who have knowledge of the information requested, or with whom communications have been had related to the matter involved.  Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to the subsequent discovery requesting the identification of that person.

17.     When referring to documents, "to identify" shall mean to give, to the extent known, the (a) type of document; (b) title of the document; (c) general subject matter of the document; (d) date shown on the document; (e) its date of preparation; (f) its date(s) and manner of distribution and publication, if any; (g) location of each copy and identity of present custodian; (h) identity of person(s) who can identify the document; and (i) the author(s), addressee(s), and recipient(s) of the document.  When referring to printed material, additionally state its publication date(s), the name of the item or publication in which the document was or is published (if any), the volume, and relevant page numbers.

18.     "Identify," or the "identity of," when used with respect to any communication other than a document, shall mean to state the date or dates when the occurred, the person initiating the communication, each other person who participated in the communication, the subject matter of the communication and the nature of the communication (e.g., meeting, telephone call, etc.); and to identify each other person who observed or has knowledge of the communication, the person

from whom or the manner in which you learned of the communication, the date you learned of the communication, and each document which concerns, reflects, refers to or in any way relates to such communication.

19.     When referring to subject matter other than persons, documents, or communications, "identify" shall mean to describe, in detail sufficient to communicate the information given, the facts and information known to you concerning the subject matter of the discovery requests.

20.     "NW Entity" shall mean and refer to Defendant Stephen Calabrese and Defendant Nextel, Inc. d/b/a Nextel Worldwide and shall encompass: (i) present or former directors, officers, employees, agents, representatives, accountants, investigators, consultants, attorneys, and predecessors or successors in interest and any parent, subsidiary, or affiliated entities that were in existence during the applicable time period covered by these requests; (ii) any other person or entity acting on your behalf; and (iii) any other person or entity otherwise subject to your control (either directly or indirectly), or which controls you (either directly or indirectly).

21.     "Retrobrands" shall mean and refer to Defendant Jeffrey Kaplan and Defendant Retrobrands USA LLC and shall encompass: (i) present or former directors, officers, employees, agents, representatives, accountants, investigators, consultants, attorneys, and predecessors or successors in interest and any parent, subsidiary, or affiliated entities that were in existence during the applicable time period covered by these requests; (ii) any other person or entity acting on your behalf; and (iii) any other person or entity otherwise subject to your control (either directly or indirectly), or which controls you (either directly or indirectly).

22.     "Defendants" shall mean and refer to NW Entity and Retrobrands, as those terms are defined above.

23.     "Counterfeit NEXTEL Mark" shall mean and refer to any NEXTEL Mark, or mark bearing the term Nextel in any form, which Defendants are using, have used, or intend to use in connection with any goods or services, including but not limited to the following stylized mark:

**NEXTEL** .

24.     "NEXTEL Mark" shall mean and refer to Plaintiff Sprint Communications, Inc.'s famous NEXTEL Mark, as embodied in U.S. Reg. Nos. l,637,139 and 1,884,244.

25.     "Sprint" shall mean and refer to Plaintiff Sprint Communications, Inc.; Sprint's predecessors-in-interest in the NEXTEL Mark, including but not limited to Nextel Communications, Inc.; Sprint's current and former licensees of the NEXTEL Mark; and all known employees, agents, representatives, subcontractors, officers, directors, agents, and affiliated companies thereof.

26.     "NEXTEL Branding" shall mean and refer to the stylized depiction of NEXTEL where NEXTEL is in all-caps, black letters set against a yellow background with the 'X' and 'T' run together.

27.     "Complaint" shall mean and refer to the Complaint Sprint filed on April 11, 2018, in the above-referenced action.

28.     "Answer" shall mean and refer to the Answer to the Complaint filed by Defendants on May 18, 2018, in the above-referenced action.

29.     "Counterclaims" shall mean and refer to the Counterclaims filed by Defendants on May 18, 2018, in the above-referenced action.

30.     "Lawsuit" means the above-captioned proceeding in the U.S. District Court for the Southern District of Florida, Case No. 0:18-cv-60788-MARTINEZ/SNOW.

31.     Pursuant to the Federal Rules of Civil Procedure, these discovery requests are continuing in nature and require supplemental responses if and when additional documents responsive to any of the requests herein are obtained, discovered, or located between the time of responding to these request and the final disposition of this action.

## REQUESTS FOR PRODUCTION

Please produce the following at the Richmond, Virginia office of the undersigned counsel:

1.     Documents and things sufficient to show NW Entity's current organizational structure, including, without limitation, (i) documents sufficient to identify any parent, subsidiary, or other related companies, and (ii) documents sufficient to identify and describe NW Entity's officers, directors, and managerial employees and their respective duties.

2.     Documents and things sufficient to show Retrobrands' current organizational structure, including, without limitation, (i) documents sufficient to identify any parent, subsidiary, or other related companies, and (ii) documents sufficient to identify and describe Retrobrands' officers, directors, and managerial employees and their respective duties.

3.     All documents relating to or reflecting any agreements or relationship between Retrobrands and NW Entity.

4.     All license agreements between Retrobrands and NW Entity related to the Counterfeit NEXTEL Mark, regardless of whether executed.

5.     All documents related to any negotiations, discussions, or drafts of any license agreement between Retrobrands and NW Entity related to the Counterfeit NEXTEL Mark.

6.     All documents concerning NW Entity's conceptualization, design, and adoption of the Counterfeit NEXTEL Mark and/or the NEXTEL Branding.

7

7.     All documents concerning NW Entity's decision to use the Counterfeit NEXTEL Mark and/or the NEXTEL Branding.

8.     All documents concerning Retrobrands' conceptualization, design, and adoption of the Counterfeit NEXTEL Mark and/or the NEXTEL Branding.

9.     All documents concerning Retrobrands' decision to use the Counterfeit NEXTEL Mark and/or the NEXTEL Branding

10.     Documents sufficient to identify any meaning of the Counterfeit NEXTEL Mark and the message(s) that each of the Defendants intend to convey to consumers with respect to said marks.

11.     All communications, whether internal to NW Entity or between NW Entity and any third-party marketing or advertising companies, referring to or concerning the message(s) NW Entity intends to convey to consumers through use of the Counterfeit NEXTEL Mark and/or the NEXTEL Branding.

12.     All communications, whether internal to Retrobrands or between Retrobrands and any third-party marketing or advertising companies, referring to or concerning the message(s) Retrobrands intends to convey to consumers through use of the Counterfeit NEXTEL Mark and/or the NEXTEL Branding.

13.     All searches, investigations, reports, or analyses completed by or on behalf any of the Defendants to analyze, assess, and determine whether the Counterfeit NEXTEL Mark is or has been available for use by Defendants in the United States.

14.     Documents sufficient to identify all goods and/or services on which or in connection with which any of the Defendants use, have used, or intend to use the Counterfeit NEXTEL Mark since each Defendant began using said mark and continuing through the present,

8

including documents sufficient to identify the periods of time for which each Defendant has used the Counterfeit NEXTEL Mark in connection with each such good or service.

15.     Documents sufficient to demonstrate the price points of goods and/or services on which or in connection with which Defendants use, or intend to use, the Counterfeit NEXTEL Mark.

16.     All documents concerning the design and development of each Defendants' advertising, marketing, or promotional materials, including any signage, bearing the Counterfeit NEXTEL Mark.

17.     All documents concerning Defendants' sales, advertising, marketing, or promotional strategy for goods and services under or in connection with the Counterfeit NEXTEL Mark.

18.     Documents sufficient to show all monies spent, or intended to be spent, by Defendants on advertising, marketing, or promoting Defendants' goods or services sold in connection with the Counterfeit NEXTEL Mark.

19.     Representative examples of all advertising, marketing, or promotional materials bearing the Counterfeit NEXTEL Mark, including but not limited to all containers, stickers, brochures, press releases, website screen printouts, magazine or newspaper advertisements, and/or other means by which Defendants have applied or used, or plan to apply or use, the Counterfeit NEXTEL Mark.

20.     Representative examples of all the stylizations other than the NEXTEL Branding with which each Defendant has used the Counterfeit NEXTEL Mark.

21.     Documents sufficient to identify the first use of the Counterfeit NEXTEL Mark for each geographic region in which Defendants have advertised, marketed, or sold goods and services under or in connection with the Counterfeit NEXTEL Mark.

22.     Documents sufficient to identify the full extent of Defendants' past and current use of the Counterfeit NEXTEL Mark.

23.     Documents sufficient to demonstrate the full geographic scope of Defendants' use of the Counterfeit NEXTEL Mark, including but not limited to the location of all stores, whether Defendants' stores or third-party retail stores, and the geographic scope of all advertising and promotion using the Counterfeit NEXTEL Mark, since each Defendant began using said mark and continuing through the present.

24.     Documents sufficient to identify the full geographic scope of Defendants' sales of goods and services using the Counterfeit NEXTEL Mark and/or the NEXTEL Branding.

25.     Documents sufficient to identify all manners in which each Defendant has used the NEXTEL Branding in connection with the goods and/or services with which each Defendant currently uses, has used, or intends to use said branding.

26.     Documents sufficient to identify all manners in which each Defendant has used the Counterfeit NEXTEL Mark in connection with the goods and/or services with which each Defendant currently uses, has used, or intends to use said mark.

27.     All documents relating to Defendants' past, present, and future marketing plans and methods for goods or services sold, marketed, advertised, and/or promoted using the Counterfeit NEXTEL Mark.

28.     All documents relating to Defendants' trade channels for and distribution of the goods and/or services sold, marketed, advertised, and/or promoted using the Counterfeit NEXTEL

Mark, including but not limited to retailers, wholesalers, trade shows, online sales, mail-order, and brick and mortar stores.

29.     Documents sufficient to identify all trade shows or other industry events at which Defendants have used, or intend to use, the Counterfeit NEXTEL Mark.

30.     All communications between each Defendant and any third party, including consumers, concerning the Counterfeit NEXTEL Mark, and all documents related to those communications.

31.     All communications, whether internal or between any Defendant and any third party, including consumers or potential consumers, mentioning the NEXTEL Mark, and all documents related to those communications.

32.     All communications, whether internal or between any Defendant and any third party, including consumers or potential consumers, referring in any way to Sprint, and all documents related to those communications.

33.     All communications between any Defendant and any distributor, dealer, retailer, potential distributor, potential dealer, or potential retailer referring in any way to Sprint, the NEXTEL Mark, or the Counterfeit NEXTEL Mark, and all documents related to those communications.

34.     All documents relating to expenses for advertisements or promotion of the Counterfeit NEXTEL Mark, including all documents that summarize or tabulate existing or projected advertising expenditures and expenses associated with Defendants' use of the Counterfeit NEXTEL Mark.

35.     All documents related to any attempt or effort made by any Defendant to tell the public that Sprint no longer owns and/or has abandoned the NEXTEL Mark, NEXTEL name,

and/or NEXTEL brand, including but not limited to e-mails, press releases, interviews, websites, and letters.

36.     Documents sufficient to identify the annual sales, if any, in units sold and in revenues, from sales of goods and/or services by Defendants under the Counterfeit NEXTEL Mark.

37.     Documents sufficient to identify the annual and total expenses directly related to the sales of goods and/or services by Defendants under the Counterfeit NEXTEL Mark.

38.     Documents sufficient to identify the annual and total profits Defendants received from sales of goods and/or services by Defendants under the Counterfeit NEXTEL Mark.

39.     All documents relating to the NEXTEL Mark, including but not limited to all documents and things relating to any search, inquiry, investigation, marketing survey that has been, or will be conducted, relating to the NEXTEL Mark.

40.     All documents referring or relating to any judicial or administrative proceeding other than this Lawsuit that involves or involved a situation where any Defendant adopted a third-party's mark based on that third-party's alleged abandonment of that mark but where it turned out that the third party had not abandoned that mark.

41.     All documents and things relating to any possibility of confusion, mistake, or deception as to the source of original or sponsorship of any good or service arising out of Defendants' use of the Counterfeit NEXTEL Mark.

42.     All documents relating to any likelihood of confusion, deception, or mistake between the Counterfeit NEXTEL Mark, on the one hand, and the NEXTEL Mark, on the other hand.

43.     All documents referring or relating to the similarity between the Counterfeit NEXTEL Mark, on the one hand, and the NEXTEL Mark, on the other hand.

44.     All documents referring or relating to the similarity between goods and services marketed and/or sold by Defendants under the Counterfeit NEXTEL Mark, on the one hand, and the goods and services marketed and/or sold by Sprint under the NEXTEL Mark, on the other hand.

45.     All studies, reports, surveys, or other documents or communications, whether internal to any Defendant or between any Defendant and any third party, or created by a third-party independently or on behalf of any Defendant, relating to the extent to which consumers do or do not associate the NEXTEL Mark with goods or services emanating or originating from Sprint.

46.     All studies, reports, surveys, or other documents or communications, whether internal to any Defendant or between any Defendant and any third party, or created by a third-party independently or on behalf of any Defendant, relating to the strength or lack of strength of the NEXTEL Mark or Counterfeit NEXTEL Mark or the impression the NEXTEL Mark or Counterfeit NEXTEL Mark creates upon consumers.

47.     Documents sufficient to show the companies whom each Defendant deems its main competitors.

48.     All documents and communications in which Defendants solicited, recruited, or otherwise communicated with any third party about becoming a dealer, distributor, or retailer for Defendants' Counterfeit NEXTEL goods and/or services.

49.     All documents referring or relating to any complaints any Defendants have received concerning Defendants' goods and services sold under or in connection with the Counterfeit NEXTEL Mark.

50.     All documents relating to any sales of goods or services sold under or in connection with the Counterfeit NEXTEL Mark and/or the NEXTEL Mark that have been diverted to Defendants from Sprint due to Defendants' use of the Counterfeit NEXTEL Mark.

51.     All documents relating to or concerning the sophistication or expertise of consumers of goods or services sold, marketed, advertised, or promoted under either the Counterfeit NEXTEL Mark or NEXTEL Mark, including but not limited to any documents relating to the amount of caution or degree of care exercised by those consumers.

52.     Documents sufficient to identify all individuals involved in each Defendant's decision to adopt and use the Counterfeit NEXTEL Mark.

53.     All documents regarding any periods of non-use of the Counterfeit NEXTEL Mark by Defendants between April 2017 and January 2018 as well as documents sufficient to show when that use resumed.

54.     All documents and communications related to NW Entity's October 2017 representation to Sprint that NW Entity would cease and had ceased all use of the Counterfeit NEXTEL Mark.

55.     All documents and communications related to NW Entity's February 2018 representation to Sprint that NW Entity would cease and had ceased all use of the Counterfeit NEXTEL Mark.

56.     All documents relating to any instances of actual confusion between the Counterfeit NEXTEL Mark, on the one hand, and the NEXTEL Mark, on the other hand, including but not limited to documents relating to misdirected mail, e-mail, or telephone calls.

57.     All documents indicating any person noted, identified, or recognized any perceived similarities or differences between the Counterfeit NEXTEL Mark, on the one hand, and the NEXTEL Mark, on the other hand, or that otherwise relate to or indicate an instance of perceived association between the respective marks.

58.     All documents indicating any person noted, identified, or recognized any perceived similarities or differences between Defendants' goods and services sold, offered for sale, advertised, and promoted under or in connection with the Counterfeit NEXTEL Mark, on the one hand, and Sprint or any goods or services advertised, promoted, sold, or offered for sale by Sprint, on the other hand, or that otherwise relate to or indicate an instance of perceived association between Defendants and/or their goods and services, on the one hand, and Sprint and/or Sprint's goods or services on the other hand.

59.     All communications between Defendants and Sprint or representatives of or agents of Defendants or Sprint.

60.     All documents or communications in which Defendants have referred to the brand recognition, nostalgia, goodwill, or other value in the NEXTEL Mark and/or Counterfeit NEXTEL Mark.

61.     All documents referring or relating to any objections Defendants have received concerning their use of the Counterfeit NEXTEL Mark.

62.     All documents relating to Defendants communications with third parties regarding the Lawsuit.

63.     To the extent not already covered by another request, all documents concerning or relating to Sprint.

64.     Documents sufficient to identify the class of persons or market segment to whom Defendants market, or plan to market, any goods or services under or in connection with the Counterfeit NEXTEL Mark, including but not limited to documents analyzing the demographics or other data related to visitors to any website displaying the Counterfeit NEXTEL Mark.

65.     All documents related to any efforts by any Defendant to register the Counterfeit NEXTEL Mark with the United States Patent and Trademark Office or any other governmental agency.

66.     All documents supporting Defendants' denials in the Answer to the Complaint.

67.     All documents whose content is contrary to Defendants' denials in the Answer to the Complaint.

68.     All documents relating to each expert witness Defendants have engaged in connection with this Lawsuit, including but not limited to, resumes, curriculum vitae, references, promotions, matters, opinions, reports, exhibits, and communications concerning any issue presented or considered in this Lawsuit.

69.     Any written report, memorandum, opinion, or other written documents regarding either the Counterfeit NEXTEL Mark and/or the NEXTEL Mark that was prepared by any expert witnesses, regardless of whether Defendants intend to call such expert witness in this Lawsuit.

70.     Documents sufficient to show who registered and owns the domain name, <nextelworldwide.com> as well as when that domain name was registered.

16

71.     All documents and things evidencing or relating to any websites that display or will display the Counterfeit NEXTEL Mark, including without limitation any past, historical, or archival versions of such website(s).

72.     All documents or things constituting or relating to unpaid media coverage of Defendants' goods or services in connection with the Counterfeit NEXTEL Mark, including but not limited to newspaper or magazine articles, television or radio mentions, or consumer or industry reports or publications.

73.     Documents sufficient to identify Defendants' dealers, retailers, and distributors as well as any potential retailers, distributors, or dealers, who sell, promote, advertise, or offer for sale Defendants' goods or services under the Counterfeit NEXTEL Mark.

74.     Documents sufficient to the features that Defendants' emphasize when promoting, advertising, selling, or offering for sale goods and services under the Counterfeit NEXTEL Mark.

75.     Documents sufficient to identify the service plans or packages that Defendants' promote, offer, or advertise in connection with the Counterfeit NEXTEL Mark, including but not limited to documents sufficient to identify the third-party platform upon which those goods or services operate.

76.     All contracts or agreements between Defendants and any dealer, retailer, or distributor that Defendants contend Sprint "tortuously interfered with" and all documents relating to those contracts or agreements.

77.     All documents related to the manner in which Defendants first became aware of the NEXTEL Mark, including but not limited to the date of such awareness.

78.     All documents related to the manner in which Defendants first became aware of Sprint's position that it is still using the NEXTEL Mark, including but not limited to the date of such awareness.

79.     Documents sufficient to identify the manufacturer of the goods that Defendants sell, promote, advertise, and offer to sell under the Counterfeit NEXTEL Mark.

80.     All documents or things constituting or relating to any transfer, assignment, conveyance, or licensing of the Counterfeit NEXTEL Mark by any Defendant.

81.     All documents showing any use by any Defendant of the word "Nextel" without a disclaimer regarding any relationship, sponsorship, or other affiliation to Sprint.

82.     All documents showing all manners in which Defendants have told any third party that Defendants are not affiliated with Sprint and/or the genuine NEXTEL brand.

83.     All documents related to any testing performed on, or third-party certifications obtained by, any goods or services that Defendants advertise, promote, sell, or offer to sell in connection with the Counterfeit NEXTEL Mark.

84.     All documents related to the performance, durability, and/or quality of materials of the goods or services that Defendants advertise, promote, sell, or offer to sell in connection with the Counterfeit NEXTEL Mark.

85.     All documents relating to the strength or distinctiveness of the NEXTEL Mark.

86.     All documents related to Defendants' use of the ® with the Counterfeit NEXTEL Mark, including but not limited to documents related to the decision to use the ® and documents supporting or refuting Defendants' right to use that symbol.

87.     All documents supporting or refuting Defendants' claim that Sprint has suffered, or will suffer, no damages.

88.     All documents supporting or refuting Defendant's allegation that Sprint "cannot show it will suffer irreparable harm from Defendants' acts."

89.     All documents supporting or refuting Defendants' claims that, at all times material hereto, all of Defendants' actions were taken in good faith, are innocent, and are non-willful.

90.     All documents supporting or refuting Defendants' allegation that Sprint has stopped using the NEXTEL Mark and/or has no intent to resume use.

91.     All documents supporting or refuting Defendants' allegations that Sprint committed "fraud on the United States Patent and Trademark Office."

92.     All documents supporting or refuting Defendants' allegations that Sprint's "cited trademark registrations are invalid and therefore subject to cancellation."

93.     All documents supporting or refuting Defendants' allegation that Sprint is estopped from bringing the claims in the Complaint.

94.     All documents supporting or refuting Defendants' allegation that Sprint's claims are barred by the doctrine of laches.

95.     All documents supporting or refuting Defendants' allegations that Sprint's claims are barred by the doctrine of unclean hands.

96.     All documents supporting or refuting Defendants' allegation that Sprint has brought this Lawsuit "in order to harm [Defendants'] reputations and businesses."

97.     All documents supporting or refuting Defendants claim for tortious interference with a contractual business relationship, including but not limited to all communications, whether oral or written, upon which Defendants predicate this claim.

98.     All documents supporting or refuting Defendants claim for tortious interference with an advantageous business relationship, including but not limited to all communications, whether oral or written, upon which Defendants predicate this claim.

99.     All documents and communications upon which Defendants predicate their defamation claims.

100.    All documents supporting or refuting Defendants' claim that Sprint acted with "malicious intent."

101.    All documents supporting or refuting Defendants claim that any of Sprint's alleged conduct underlying the Counterclaims has caused and will continue to cause Defendants' irreparable harm.

102.    All documents used in preparing, or referenced in, Defendants Initial Disclosures.

103.    All documents referred to, or relied upon, in preparing the Answer or Counterclaims in this Lawsuit.

104.    All documents used in preparing, or referenced in, Defendants' responses to Sprint's First Set of Interrogatories.

105.    All documents Defendants plan or intend to rely on or use in connection with this Lawsuit.

106.    All documents concerning the damages that Defendants seek as a result of the matters set forth in the Counterclaims, including, without limitation, all documents that support or evidence the amount and/or calculation of damages claimed.

107.    All documents relating to efforts made by Defendants to mitigate or lessen its damages allegedly caused by the matters set forth in the Counterclaims.

108.    All documents that support or refute Defendants' request for punitive damages.

109.    All non-privileged internal communications of Defendants regarding the dispute that is the subject of the Lawsuit or the Lawsuit itself.

110.    All communications with any third party regarding the dispute that is the subject of the Lawsuit or the Lawsuit itself.

111.    Copies of each Defendant's policies concerning retention, storage, filing, and destruction of electronic documents and email.

Dated: July 27, 2018                          MCGUIREWOODS LLP

                                              /s/ Brad R. Newberg
                                              Sara F. Holladay-Tobias
                                              Fla. Bar No. 26225
                                              Emily Y. Rottmann
                                              Fla. Bar No. 93154
                                              stobias@mcguirewoods.com
                                              erottmann@mcguirewoods.com
                                              flservice@mcguirewoods.com
                                              50 North Laura Street, Suite 3300
                                              Jacksonville, Florida  32202
                                              Tel:   (904) 798-3200
                                              Fax:   (904) 798-3207

                                              Brad R. Newberg (admitted *pro hac vice*)
                                              bnewberg@mcguirewoods.com
                                              1750 Tysons Boulevard
                                              Suite 1800
                                              Tysons, Virginia 22102
                                              Tel:  (703) 712-5000
                                              Fax: (703) 712-5050

                                              Lucy Jewett Wheatley (admitted *pro hac vice*)
                                              Amanda L. DeFord (admitted *pro hac vice*)
                                              lwheatley@mcguirewoods.com
                                              adeford@mcguirewoods.com
                                              Gateway Plaza
                                              800 East Canal Street
                                              Richmond, Virginia 23219
                                              Tel:  (804) 775-1000
                                              Fax:  (804) 775-1061

                                              *Attorneys and Trial Counsel for Plaintiff Sprint*

21

*Communications, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, pursuant to the parties' agreement, on July 27, 2018, I served the

foregoing on the following counsel of record in this case via electronic mail:

Ury Fischer
Florida Bar No. 048534
**LOTT & FISCHER PL**
E-mail: ufischer@lottfischer.com
255 Aragon Avenue, Third Floor
Coral Gables, FL 33134
Telephone: (305) 448-7089
Facsimile: (305) 446-6191

Benjamin Ashurov
E-mail:  bashurov@kb-ash.com
Neil A. Smith
E-mail:  nsmith@kb-ash.com
**KB Ash Law Group PC**
7011 Koll Center Parkway, Suite 160
Pleasanton, CA  94566
Telephone: (415) 754-9345
Facsimile:  (415) 952-9325

James J. Kernell
Email:  jjk@kcpatentlaw.com
**Erickson Kernell IP**
8900 State Line Road, Suite 500
Leawood, KS 66206
Telephone: (913) 549-4700
Facsimile:  (913) 549-4646

*Attorneys for Defendants*

/s/ Amanda L. DeFord
Attorney

22