**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 0:18-cv-60788-MARTINEZ/SNOW

SPRINT COMMUNICATIONS, INC.,

    Plaintiff/Counterclaim Defendants,

v.

STEPHEN CALABRESE, NEXTEL, INC.
d/b/a NEXTEL WORLDWIDE,
RETROBRANDS USA LLC
JEFFREY KAPLAN and NEXTEL
MOBILE WORLDWIDE, INC.,

    Defendants/Counterclaim Plaintiffs.
_____/

**DEFENDANTS/COUNTERCLAIM PLAINTIFFS' RESPONSE IN OPPOSITION TO SPRINT COMMUNICATIONS, INC.'S MOTION IN LIMINE TO EXCLUDE DEFENDANTS' LATE DISCLOSED AND SPECULATIVE DAMAGES**

Defendants/Counterclaim Plaintiffs Stephen Calabrese, Nextel, Inc. d/b/a Nextel Worldwide, Retrobrands USA LLC, Jeffrey Kaplan and Nextel Mobile Worldwide, Inc. ("Defendants"), by their undersigned counsel, hereby submit their Response in Opposition to the Motion in Limine to Exclude Defendants' Late Disclosed and Speculative Damages [ECF No. 152] filed by Sprint Communications, Inc. ("Plaintiff" and/or "Sprint") wherein Sprint seeks to exclude Defendants' damage calculations.

**ARGUMENT**

**I.**   **Legal Standard**

"Motions In Limine are disfavored" and "admissibility questions should be ruled upon as they arise at trial." *Stewart v. Hooters of Am., Inc.*, No. 8:04-CV-40-T-17-MAP, 2007 WL 1752843, at *1 (M.D. Fla. June 18, 2007). "A court has the power to exclude

evidence in limine only when evidence is clearly inadmissible on all potential grounds." *Id.* (citing *Luce v. United States*, 469 U.S. 38, 41 (1984)). "The movant has the burden of demonstrating that the evidence is inadmissible on any relevant ground." *Am. K-9 Detection Servs., Inc. v. Rutherfoord Int'l, Inc.*, No. 6:14-CV-1988-ORL-37TBS, 2016 WL 7183365, at *3 (M.D. Fla. May 16, 2016). Therefore, unless the evidence is clearly inadmissible, "evidentiary rulings should be deferred until trial so that questions of foundation, relevancy, and potential prejudice may be resolved in proper context." *Id.* at *3.

Because Defendants have not—and cannot—establish that the evidence they seek to exclude is "clearly inadmissible" on any basis, Plaintiff's motion must be denied, and any evidentiary rulings should be deferred until trial.

Plaintiff's Motion in Limine is nothing more than a belated motion for summary judgment on Defendants' tortious interference claims. The entire premise for Plaintiff's motion in limine to exclude Defendants' damage calculations is based on false information, and misrepresentations to the Court. Plaintiff repeatedly claims that Defendants' damage calculations are "unsupported and speculative" and "not supported by any evidence or documentation."[1] This is simply false. Defendants produced contracts for dealers who were sent cease and desist letters from Plaintiff on September 7, 2018.[2] In each of the cease and desist letters sent by Plaintiff referred to the "equipment and services using the NEXTEL brand," which is expressly describing the equipment and services the dealers were purchasing from Defendant Nextel Worldwide.[3] The express causal relationship is obvious, each and every one of these dealers ceased doing business with Defendant Nextel Worldwide after receiving the

---

[1] *See* ECF 152, pp. 2, 4, 7, 8, 9, 10, 15.
[2] Attached as Exhibit A.
[3] See ECF 6-18.

cease and desist letter from Plaintiff, which is more than a "reasonable certainty." Further, Plaintiff's Motion in Limine is based on the false premise that "Defendants do not establish a factual link whatsoever between Sprint's actions and their claimed damages, and thus cannot establish causation with reasonable certainty." Essentially, Plaintiff is moving for summary judgment on Defendants' tortious interference claims well after the date for filing dispositive motions.

Kaplan and Calabrese each testified at length regarding Plaintiff's interference with Defendants' business and the damage caused.[4] Calabrese offered to provide specific calculations based on the documents produced at his deposition, but counsel for Plaintiff declined.[5] The supplemental damage calculations[6] were timely provided to Plaintiff, as agreed by Plaintiff's counsel.[7] The supplemental damage calculations were also provided by the close of discovery pursuant to the Scheduling Order.[8] Defendants offered to keep discovery open until March 15, 2019 "in case other names come up in depositions or to close any open loops."[9] Counsel for Plaintiff declined stating that she did "not see a need to extend the discovery deadline."[10] Further, while Plaintiff complains that Defendants' supplemental damage calculations were provided at the close of discovery, Plaintiff served its First Supplemental Initial Disclosures only a week before the close of discovery significantly changing and supplementing its damages.[11]

---

[4] Exhibit B, excerpts from Kaplan deposition, pp. 192:16-195:24; 197:7-202:19; 204:6-205:25; Exhibit C, excerpts from Calabrese deposition, pp. 260:17-279:16.
[5] Exhibit C, pp. 266:17 – 269:6.
[6] Exhibit D.
[7] Exhibit C, pp. 267:23-269:6.
[8] ECF 54, p. 5.
[9] Exhibit E, January 9, 2019 email from James Kernell to Lucy Wheatley, p. 2.
[10] *Id.* at p. 1.
[11] Exhibit F.

Plaintiff claims, without any support, that Defendants proffered three different and inconsistent theories of damages. Defendants' damage calculations are clearly set forth below:[12]

### C. A Computation of Each Category of Damages Pursuant to Rule 26(a)(1)(A)(iii).

Defendants identify the following categories of damages:

1. Actual damages to Defendant Nextel resulting from Sprint's interference with Defendants' economic and contractual relationships in the amount of $4,299,520 and $429,952 damages to Retrobrands. This includes $1,264,000 in lost profits from hardware purchase contracts that were terminated due to Sprint's interference and this lawsuit, it also includes $3,035,520 in lost profit from subscribers not activating phones and not paying for service due to Sprint's interference and this lawsuit. Defendants had a reasonable and conservative expectation of adding an additional 2 to 6 distributors for additional damages of between $1,844,608 and $5,533,824, for a total loss of between $6,144,128 and $9,833,344 to Nextel, and between $614,413 and $983,334 to Retrobrands.

Calculations supporting actual damages are as follows:

**Losses on Hardware Sales to Distributors**

Distributor Name:

A.) Chicago Equipment Corp. (DBA NEXTEL or ILLINOIS) Mr. Jim Watson.

400 units quarterly inventory, 2-yr. agreement.

    1.) 100 qty i300 - Our cost $58 each; Distributor purchase price $136.60 each.

---

[12] Exhibit D, pp. 7-12.

Profit: $78.60 each x 100 = $7,860.00; Profit lost 1st quarter x 8 quarters $62,880; lost 2-yr agreement.

2.) 100 qty i400 - Our cost $62 each; Distributor purchase price $156.60 each.

Profit: $94.60 each x 100 = $9,460.00; Profit lost 1st quarter x 8 quarters $75,680; lost 2-yr. agreement.

3.) 100 qty i500 - Our cost $83 each; Distributor purchase price $176.60 each.

Profit $93.60 each x 100 = $9,360.00; Profit lost 1st quarter x 8 quarters $74,880; lost 2-yr. agreement.

4.) 100 qty m370 - Our cost $87 each. Distributor purchase price $156.60 each.

Profit $69.60 each x 100 = $6,960.00; Profit lost 1st quarter x 8 quarters $55,680; lost 2-yr agreement.

**Total hardware profit loss over 2 years on 2-yr. agreement signed $269,120.00.**

B.) Fulfillment Center Name: Flipco Inc. (DBA NEXTEL of MIDWEST) Mr. Phil Froemming.

400 units quarterly inventory, 2-yr. agreement.

1.) 100 qty i300 - Our cost $58 each; Fulfillment Center purchase price $125.60 each.

Profit $67.60 each x 100 = $6,760.00; Profit lost 1st quarter x 8 quarters $54,080; lost 2-yr. agreement.

2.) 100 qty i400 - Our cost $62 each; Fulfilment Center purchase price: $136.60 each.

Profit $74.60 each x 100 = $7,460.00; Profit lost 1st quarter x 8 quarters $59,680; lost 2-yr. agreement.

3.) 100 qty i500 - Our cost $83 each; Fulfillment Center purchase price $156.60 each.

Profit $73.60 each x 100 = $7,360.00; Profit lost 1st quarter x 8 quarters $58,880; lost 2-yr. agreement.

4.) 100 qty m370 - Our cost $87 each; Distributor purchase price $156.60 each.

Profit $69.60 each x 100 = $6,960.00; Profit lost 1st quarter x 8 quarters $55,680; lost 2-yr. agreement.

**Total Hardware Profit Loss on Contract over 2 yrs. agreed:  $228,320.**

C.) Fulfillment Center Name:  Comtech/American Radio (DBA NEXTEL of Northeast) Mr. Joe Marletta.

400 units quarterly inventory, 2-yr. agreement.

1.) 100 qty i300 - Our cost $58 each; Fulfillment Center purchase price $125.60 each.

Profit: $67.60 each x 100 = $6,760.00; Profit lost 1st quarter x 8 quarters $54,080; lost 2-yr. agreement.

2.) 100 qty i400 - Our cost $62 each; Fulfilment Center purchase price $136.60 each.

Profit $74.60 each x 100 = $7,460.00; Profit lost 1st quarter x 8 quarters $59,680; lost 2-yr. agreement

3.) 100 qty i500 - Our cost $83 each.  Fulfillment Center purchase price $156.60 each.

Profit $73.60 each x 100 = $7,360.00; Profit lost 1st quarter x 8 quarters $58,880; lost 2-yr. agreement

4.) 100 qty m370 - Our cost $87each.  Distributor purchase price $156.60 each.

Profit $69.60 each x 100 = $696; Profit lost 1st quarter x 8 quarters $55,680; lost

2-yr. agreement

**Total Hardware Profit Loss on Contract over 2 years agreed: $228,320.**

D.) Distributor Name:

Advanced Paging & Communications (APC) DBA-NEXTEL OF PAC

NORTHWEST – Mr. Del Blaine

400 units quarterly inventory, 2-yr. agreement.

1.) 100 qty i300 - Our cost $58 each; Distributor purchase price $136.60 each.

Profit: $78.60 each x 100 = $7,860.00; Profit lost 1st quarter x 8 quarters $62,880;

lost 2-yr. agreement.

2.) 100 qty i400 - Our cost $62 each.  Distributor purchase price $156.60 each.

Profit $94.60 each x 100 = $9,460.00; Profit lost 1st quarter x 8 quarters $75,680; lost

2-yr. agreement.

3.) 100 qty i500 - Our cost $83 each.  Distributor purchase price $176.60 each.

Profit $93.60 each x 100 = $9,360.00; Profit lost 1st quarter x 8 quarters $74,880; lost

2-yr. agreement.

4.) 100 qty m370 - Our cost $87 each.  Distributor purchase price $156.60 each.

Profit $69.60 each x 100 = $6,960.00; Profit lost 1st quarter x 8 quarters $55,680; lost

2-yr. agreement.

**Total hardware profit loss over 2 years on 2-yr. agreement signed $269,120.00.**

E.) Distributor Name:

FLEETCONNECT – DBA NEXTEL of the CAROLINAS

400 units quarterly inventory, 2-yr. agreement.

1.) 100 qty i300 - Our cost $58 each.  Distributor purchase price $136.60 each.

Profit: $78.60 each x 100 = $7,860.00; Profit lost 1st quarter x 8 quarters $62,880; lost 2-yr. agreement.

2.) 100 qty i400 - Our cost $62 each.  Distributor purchase price $156.60 each.

Profit $94.60 each x 100 = $9,460.00; Profit lost 1st quarter x 8 quarters $75,680; lost 2-yr. agreement.

3.) 100 qty i500 - Our cost $83 each.  Distributor purchase price $176.60 each.

Profit $93.60 each x 100 = $9,360.00; Profit lost 1st quarter x 8 quarters $74,880; lost 2-yr. agreement.

4.) 100 qty m370 - Our cost $87 each.  Distributor purchase price $156.60 each.

Profit $69.60 each x 100 = $6,960.00; Profit lost 1st quarter x 8 quarters $55,680; lost 2-yr. agreement.

**Total hardware profit loss over 2 years on 2-yr. agreement signed $269,120.00.**

**TOTAL LOSSES FROM ALL FULFILMENT & DISTRIBUTOR CONTRACTS**

$1,264,000.00

**SUBSCRIBER AIRTIME LOSSES CALCULATION:**

1.) DISTRIBUTOR SUBSCRIBER ACTIVATIONS:

3200 units each distributor x 3 distributors = 9600 subscribers

Our cost per subscriber $3.33 per month – sold to distributor at $9 avg ($8 $10 avgd)

Total profit per subscriber per month $5.67 x 9600 subscribers = $54,432/mo lost

Subscriber agreement term length = 36 mo ($54,432.00 x 36 mo) = $1,959,552.00

**Total Loss of subscriber recurring revenue--non activation of 36-month contracts $1,959,552.**

2.) FULFILLMENT CENTER SUBSCRIBER ACTIVATIONS:

3200 units each fulfillment center x 2 = 6400 subscribers

Our cost per subscriber $3.33 per month – sold to fulfillment center at avg $8 ($7-$9)

Total profit per subscriber per month $4.67 x 6400 subscribers = $29,888/mo lost

Subscriber agreement term length = 36 mo ($29,888.00 x 36 mo = $1,075,968

**Total Loss of subscriber recurring revenue-–non-activation of 36-month contracts $1,075,968**

**TOTAL DAMAGES OF KNOWN QUANTIFIABLE CONTRACT BUSINESS LOST: $4,299,520**

**Damages based on lost opportunities:**

Based on the overwhelming response to our relaunch of the NEXTEL brand at the IWCE tradeshows and discussions with our dealers and distributors, Nextel had reasonable and very conservative expectation of a continued growth and expansion of our dealer/distributor network in the range of 50 to 200% growth per year.

This would have resulted in revenues of $269,120.120 hardware profit loss over 2 years on 2-yr. agreement per distributor for a total of between $538,240 (for 2 additional distributors) and $1,614,720 (for 6 additional distributors).

The lost air time profit per subscriber per month of $5.67 is between $36,288 per month (for 3200 activations each distributor x 2 distributors) and $108,864 per month (for 3200 activations each distributor x 6 distributors) for a total of between $1,306,368 for 36 months and $3,919,104 for 36 months.

**This results in additional total damages of between $1,844,608 and $5,533,824.**

  2. Actual damages to Defendants' reputational harm resulting from Sprint's actions in the amount of $7,278,432. Sprint wrote cease and desist letters to 21 other companies that had expressed an interest in becoming a dealer or distributor further damaging Defendants' reputation. Assuming that the conservative expected growth came for the 21 other companies threatened by Sprint, then the reputational harm is measured by the 15 companies that would have done business with Defendants had Sprint not threatened them. If only half of these companies became dealers then Nextel's lost profit due to reputational harm is $922,304 times 8 lost dealers = $7,278,432. Retrobrand's loss is $727,843.

  3. Defendants' attorneys' fees and costs incurred in this action, which are in excess of approximately $200,000 at this point in the case and will increase as the case proceeds.

  4. Punitive damages in the amount of $1,000,000 to discourage the sort of defamatory statements made by Plaintiff.

  5. Defendants further seek that their actual damages be trebled as allowed by statute.

As set forth above, Defendants' damages are not mere speculation or conjecture, but a reasonable degree of certainty. Defendants need not show that Plaintiff's tortious conduct was the sole cause of its lost profits. *See ICMfg & Associates, Inc. v. The Bare Board Group, Inc.*, --- B.R. ----, 2018 WL 1586274 at *4, 27 Fla. L. Weekly Fed. B 249. Defendants have proffered evidence of its contracts that were terminated based on Plaintiff's cease and desist letters. Defendants have identified witnesses that will testify at trial regarding their termination of the business relationship with Defendant Nextel Worldwide based on Plaintiff's cease and desist letters. In Defendants' initial disclosures and supplemental initial disclosures as well as their list of witnesses, Defendants identified a number of witnesses that will testify as to Sprint's

interference with its business.[13] Plaintiff declined to depose a single third-party witness identified by Defendants related to their tortious interference claims, or any claims for that matter. In 15 months since the Complaint was filed, Sprint has deposed only Calabrese and Kaplan, individually and as the corporate representatives of their respective corporations.

## CONCLUSION

Defendants have produced credible evidence which should be presented to the trier of fact of Plaintiff's tortious interference and other claims. Having produced documents, damage calculations, and identifying witnesses, Defendants have clearly established with reasonable certainty that Plaintiff's actions are causally related to its interference with Defendants' business. Accordingly, Defendants respectfully request that Sprint's Motion in Limine to Exclude Late Disclosed and Speculative Damages be denied in its entirety.

## **CERTIFICATE OF SERVICE**

I hereby certify that on this date, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

---

[13] *See* Exhibit D, pp. 3-4.

Dated: August 2, 2019    Respectfully submitted,

*/s/ Wayne H. Schwartz*
Wayne H. Schwartz, Bar No. 907390
LEE & AMTZIS, P.L.
5550 Glades Road, Suite 401
Boca Raton, Florida 33431
Telephone: 561-981-9988
Email: schwartz@leeamlaw.com

James J. Kernell (*pro hac vice*)
Kyle D. Donnelly (*pro hac vice*)
ERICKSON KERNELL IP, LLC
8900 State Line Road, Suite 500
Leawood, Kansas 66206
Telephone: 913-549-4700
Email: jjk@kcpatentlaw.com
       kdd@kcpatentlaw.com

*Attorneys for Defendants*
*Stephen Calabrese,*
*Nextel, Inc. d/b/a Nextel Worldwide,*
*Retrobrands USA LLC, Jeffrey Kaplan*
*and Nextel Mobile Worldwide Inc.*

## SERVICE LIST

*Attorneys for Plaintiff/Counterclaim Defendant*
<u>SPRINT COMMUNICATIONS, INC.</u>

McGuire Woods LLP
Sara F. Holladay-Tobias, Esq.
stobias@mcguirewoods.com
flservice@mcguirewoods.com
Emily Yandle Rottmann, Esq.
erottmann@mcguirewoods.com
50 North Laura Street, Suite 3300
Jacksonville, Florida 32202

McGuire Woods LLP
Amanda L. DeFord, Esq.
adeford@mcguirewoods.com
Lucy J. Wheatley, Esq.
lwheatley@mcguirewoods.com
Gateway Plaza
800 East Canal Street
Richmond, Virginia 23219

McGuire Woods LLP
Brad R. Newberg, Esq.
bnewberg@mcguirewoods.com
1750 Tysons Boulevard, Suite 1800
Tysons, Virginia 22101


*Co-Counsel for Defendants/Counterclaim Plaintiffs*
*STEPHEN CALABRESE, NEXTEL, INC. d/b/a*
*NEXTEL WORLDWIDE, RETROBRANDS USA LLC,*
<u>*JEFFREY KAPLAN and NEXTEL MOBILE WORLDWIDE, INC.*</u>

James J. Kernell (*pro hac vice*)
jjk@kcpatentlaw.com
Kyle D. Donnelly (*pro hac vice*)
kdd@kcpatentlaw.com
ERICKSON KERNELL IP, LLC
8900 State Line Road, Suite 500
Leawood, Kansas 66206