```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF FLORIDA
                           MIAMI DIVISION
                     CASE NO.  18-cv-60788-JEM


    SPRINT COMMUNICATIONS, INC.,

                  Plaintiff,

         vs.
                                           Miami, Florida
                                           May 27, 2020
    STEPHEN CALABRESE, et al.,             Pages 1-14
                                           1:32 - 1:56 p.m.
                  Defendants.
    _____

              TRANSCRIPT OF TELEPHONIC STATUS CONFERENCE
                 BEFORE THE HONORABLE JOSE E. MARTINEZ
                    UNITED STATES DISTRICT JUDGE

    APPEARANCES:

    FOR THE PLAINTIFF:
                         McGuireWoods, LLP
                         BY:  LUCY J. WHEATLEY, ESQ.
                         BY:  AMANDA L. DeFORD, ESQ.
                         800 East Canal Street
                         Richmond, Virginia 23219

    FOR THE DEFENDANTS:
                         Erickson Kernell IP
                         BY:  JAMES J. KERNELL, ESQ.
                         8900 State Line Road
                         Suite 500
                         Leawood, Kansas 66206

                         Lee & Amtzis, PL
                         BY:  WAYNE SCHWARTZ, ESQ.
                         5550 Glades Road
                         Boca Raton, Florida 33431

    REPORTED BY:         DAWN M. SAVINO, R.P.R., C.R.R.
                         Official Federal Court Stenographer
                         400 N. Miami Avenue, 10S03
                         Miami, Florida  33128
                         Telephone:  305-523-5598
```

PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
TRANSCRIPT PRODUCED BY COMPUTER

```
13:32:27   1                        P-R-O-C-E-E-D-I-N-G-S
13:33:31   2               (Court called to order)
13:34:12   3               COURTROOM DEPUTY:  Hi, I'm going to transfer you now.
13:34:19   4               THE COURT:  Good afternoon.  Are we ready to begin?
13:34:19   5               MR. KERNELL:  Yes, Your Honor.
13:34:21   6               MS. WHEATLEY:  Yes, Your Honor.
13:34:25   7               THE COURT:  Okay.  Let's have appearances, starting
13:34:31   8     with the Plaintiff so that my court reporter can log it all in.
13:34:34   9               MS. WHEATLEY:  Yes.  This is Lucy Wheatley for the
13:34:37  10     Plaintiff Sprint Communications, Inc.  I'm from the firm
13:34:41  11     McGuireWoods, LLP.
13:34:44  12               MS. DeFORD:  And Your Honor -- I apologize.  This is
13:34:49  13     Amanda DeFord from McGuireWoods, LLP, also on behalf of
13:34:51  14     Plaintiff Sprint Communications, Inc.
13:34:51  15               THE COURT:  Good afternoon.
13:34:53  16               Defense?
13:34:56  17               MR. SCHWARTZ:  Yes, Your Honor.  Wayne Swartz, Lee and
13:35:02  18     Amtzis, one of the defense counsel.
13:35:05  19               Mr. KERNELL:  And Jim Kernell with Erickson Kernell
13:35:07  20     also representing the defense.
13:35:10  21               THE COURT:  All right.  Since this is the Defendants'
13:35:12  22     motion for status conference, do you want to start or do you
13:35:15  23     want to let the Plaintiff start?  I don't really much care, but
13:35:21  24     I do want to get an idea of what's going on and what happens
13:35:22  25     next.
```

13:35:26  1          MR. KERNELL: Yes, Your Honor. This is Jim Kernell on
13:35:29  2    behalf of the Defendants. We wanted to -- we asked for this
13:35:33  3    status conference to bring some, I guess, milestones if you
13:35:39  4    will, to the attention of the Court and ask for the Court's
13:35:47  5    direction. On April 1st of this year, 2020, T-Mobile completed
13:35:53  6    acquisition of Sprint Communications, Inc. and on April 13th
13:35:59  7    then following the acquisition by T-Mobile, Sprint terminated
13:36:07  8    its registration with the SEC. As part of the acquisition,
13:36:13  9    Sprint did not transfer any of the Nextel marks, the trademarks
13:36:19 10    or the found mark, the three trademarks that are at issue in
13:36:21 11    this case, they didn't transfer any of those marks to T-Mobile.
13:36:31 12    And at this point now neither Sprint nor T-Mobile own, operate
13:36:35 13    or license any cellular frequencies, which are subject to one of
13:36:41 14    the marks, so they can't be using, you know, the Nextel mark for
13:36:44 15    telecommunications services.
13:36:50 16          The second thing is that neither Sprint nor Nextel now
13:36:59 17    offer any devices with Nextel on them. And so again, you know,
13:37:05 18    that they can't be using that Nextel mark, you know, in commerce
13:37:07 19    for the devices, you know, as set forth.
13:37:14 20          And the last thing is that T-Mobile has announced that
13:37:22 21    it will be discontinuing the Sprint brand in its entirety as of
13:37:25 22    August 1st.
13:37:29 23          So we're in a situation where, you know, our motion for
13:37:33 24    summary judgment and this whole lawsuit was about Sprint
13:37:38 25    abandoning the Nextel marks. With this acquisition, this was

```
13:37:43   1   the final -- you know, basically the final straw.  You know,
13:37:46   2   none of the marks that are issue in this case have been
13:37:49   3   transferred or going to be transferred.
13:37:57   4             In addition, there was a Nextel Direct Connect mark
13:38:03   5   that went abandoned back in September now of last year.  So, you
13:38:09   6   know, the whole abandonment, the intent to abandon, all of that
13:38:15   7   has happened and in fact, you know, the Plaintiff is no longer
13:38:20   8   really a viable entity anymore; it's been absorbed or merged
13:38:21   9   into T-Mobile.
13:38:27  10             So we're looking at either substituting T-Mobile on
13:38:35  11   behalf of Sprint Communications, Inc. or, you know, some
13:38:37  12   termination of this case.
13:38:40  13             THE COURT:  Okay.  Sounds like something needs to be
13:38:45  14   done.  Let's hear from Ms. Wheatley or Ms. DeFord.
13:38:48  15             MS. WHEATLEY:  Your Honor, this is Lucy Wheatley for
13:38:54  16   the Plaintiff.  What Mr. Kernell says is simply incorrect.  The
13:38:57  17   Nextel marks are still very much live, they are registered.
13:39:02  18   There is one registration for Nextel Direct Connect which Sprint
13:39:07  19   has opted not to renew, but that was never a part of this case.
13:39:10  20   But the suggestion that Sprint is no longer selling devices or
13:39:16  21   operating in a wireless space as part of T-Mobile is simply
13:39:22  22   wrong.  It very much is.  I assure you I am still being paid and
13:39:24  23   the company still --
13:39:27  24             THE COURT:  That's good news.  So some good news came
13:39:28  25   out of it anyway.
```

13:39:29 1          MS. WHEATLEY: Yes. So the suggestion that there is no
13:39:33 2   company there or that there is no case is simply nonsense,
13:39:34 3   frankly.
13:39:40 4          Furthermore, even if every single thing Mr. Kernell
13:39:44 5   just said was true, which it is not, this case is still an
13:39:48 6   infringement lawsuit which would still go to Defendant's actions
13:39:53 7   prior to when the lawsuit began and during the lawsuit, so
13:39:57 8   there's still very much an infringement case. The case is not
13:40:01 9   about abandonment. The Defendants would like to make it about
13:40:04 10  abandonment, but it's about the fact that they are
13:40:08 11  counterfeiting the Nextel brand and trying to convince the
13:40:10 12  public that they are Nextel when they are not.
13:40:16 13         So our position would be nothing has changed and this
13:40:20 14  litigation is very much live and we intend to carry it through
13:40:23 15  to its conclusion.
13:40:29 16         THE COURT: Okay. Defense, what is your position on
13:40:31 17  that?
13:40:32 18         MR. KERNELL: Yes, Your Honor, this is Jim Kernell.
13:40:37 19  What Ms. Wheatley said, I think, is -- the key there is what she
13:40:42 20  didn't say. She said that Sprint is operating in the wireless
13:40:47 21  space. Yes, Sprint is under T-Mobile. Nextel, the mark Nextel,
13:40:55 22  is not. And again, Sprint is going away August 1st. The brand
13:41:00 23  itself, T-Mobile is not going to -- all the stores are changing.
13:41:04 24  Sprint's not going to be around anymore. And T-Mobile has
13:41:10 25  publicly said that, that Sprint, that brand, they are not going

```
13:41:13   1    to use it, it's going to be abandoned going forward.
13:41:17   2              What she also did not address whatsoever is Nextel.
13:41:22   3    There's not a single Nextel device that you can buy from a
13:41:26   4    Sprint store or a T-Mobile store on the market today, and it
13:41:31   5    hasn't been for some time.  This is an abandonment case because
13:41:35   6    they haven't, for a number of years, sold any Nextel devices.
13:41:41   7    You cannot buy Nextel service which is the basis of another one
13:41:47   8    of the claims.  And so everything that I said, that T-Mobile
13:41:55   9    completed the acquisition on Sprint on April 1, 2020, that is,
13:42:03  10    in fact, true and Plaintiff cannot dispute that.  I mean, that's
13:42:08  11    filed with the FCC and the SEC.
13:42:16  12              As far as the FCC, with the -- with all the lines, the
13:42:21  13    frequencies used by Sprint, all of those have been transferred
13:42:25  14    to T-Mobile.  So in fact, if you go to a Sprint store and you
13:42:30  15    set up a Sprint wireless plan, it is not on any Sprint line, it
13:42:35  16    is actually on T-Mobile lines that they have licensed through
13:42:37  17    the FCC.
13:42:44  18              So again, not a single one of the Nextel marks are
13:42:47  19    being used.  They haven't been transferred, they're not part of
13:42:51  20    the transfer, they were not part of the acquisition from
13:42:56  21    T-Mobile to Sprint or Sprint to T-Mobile because T-Mobile has
13:43:01  22    said they're not using those marks.  They haven't been used for
13:43:06  23    years.  So I'm not sure -- you know, again, if Ms. Wheatley
13:43:14  24    would address the Nextel marks directly rather than take the
13:43:18  25    sidestep to Sprint, I think that would be helpful as to where we
```

```
13:43:20   1    are.
13:43:27   2              Also, the fact, you know, that Sprint terminated its
13:43:32   3    registration with the SEC, it's no longer a publicly traded
13:43:36   4    company and yet I'm sure Ms. Wheatley is being paid by Sprint,
13:43:41   5    but that's always -- in winding up business, that may go on.
13:43:45   6    But it doesn't address the fact that those marks, the Nextel
13:43:49   7    marks that are at issue in this case, are not being used and
13:43:55   8    they have been finally explicitly abandoned through this
13:43:56   9    acquisition.
13:43:59  10              THE COURT:  Let me ask Ms. Wheatley, how does this
13:44:04  11    affect the summary judgment motions?  Doesn't the changed
13:44:09  12    status, do they just -- is it your position they just get
13:44:13  13    substituted in for Sprint if we deny the motion for summary
13:44:18  14    judgment, and do we need to have additional briefing or some
13:44:22  15    additional argument on the MSJ?
13:44:23  16              MS. WHEATLEY:  Your Honor, it is our position that this
13:44:27  17    does not affect the summary judgment motion and I'll explain
13:44:31  18    why, and I want to address Mr. Kernell's suggestion that we're
13:44:35  19    trying to sidestep anything.  I will say it explicitly.  Nextel
13:44:39  20    is still very much being used in commerce and Mr. Kernell's
13:44:43  21    suggestion that nothing is being sold with the Nextel brand is
13:44:50  22    simply false.  And in fact, Your Honor just denied a PI motion
13:44:54  23    filed by Defendants which they claimed had to be filed because
13:44:58  24    Sprint was using the Nextel brand on devices that were being
13:45:03  25    sold.  Those devices are still very much being sold.  So the
```

```
13:45:07  1    suggestion that Sprint has not -- it is not still using Nextel
13:45:14  2    is ludicrous, otherwise Mr. Kernell would not have filed for
13:45:18  3    preliminary injunction trying to get Sprint to stop using
13:45:22  4    Nextel.  So I want to make that very clear.  Nextel is in use in
13:45:24  5    commerce, that has not changed, that has never changed, it is
13:45:27  6    not going to change.
13:45:29  7          Now, if we're getting to summary judgment, we don't see
13:45:35  8    the need for any further briefing or any change.  Again,
13:45:39  9    regardless of what has happened with the merger, it does not
13:45:42  10   change the fact of Defendants' infringement.  Defendants are not
13:45:46  11   the Plaintiff here, we are, we sued them for infringing the
13:45:52  12   Nextel brand and frankly, no matter what has happened with the
13:45:56  13   merger now, it does not change whether or not they infringed
13:46:00  14   previously and it especially doesn't --
13:46:03  15         THE COURT:  The parties remain the same?  In other
13:46:07  16   words, you are still talking about Sprint being the Plaintiff in
13:46:10  17   the case?
13:46:13  18         MS. WHEATLEY:  Yes.  Sprint is still the owner of
13:46:20  19   record for the relevant trademark registrations so unless that
13:46:23  20   changes, Sprint needs to be the party in the case.
13:46:23  21         THE COURT:  Right.
13:46:25  22         MS. WHEATLEY:  If it needs to change, we're happy to
13:46:30  23   substitute in the party name, but there has been no sort of
13:46:35  24   cessation of Nextel or any material change in the use in
13:46:37  25   commerce which is what is relevant for this litigation.
```

```
13:46:41   1    Mr. Kernell is talking about changes in corporate structure
13:46:44   2    which are irrelevant when it comes to whether or not the brand
13:46:48   3    is being used and whether or not they're still infringing.
13:46:51   4              THE COURT:  I don't much care about that.  It does not
13:46:54   5    seem to me that that's particularly relevant either.
13:46:59   6              All right.  Well, what else do we need to know?  I'm
13:47:04   7    not sure that this is the proper vehicle to say 'fess up, tell
13:47:08   8    me this, tell me that but for purposes of the status, are we
13:47:14   9    clear on the different position?  You may not agree with it
13:47:17   10   factually but you understand their position.  Is there anything
13:47:21   11   that we need -- is there anything to be gained by continuing and
13:47:29   12   having this discussion rather than wait until in my
13:47:33   13   lackadaisical, slow way I get around to handling all of the
13:47:37   14   pending motions.  And I do apologize for some delay, but I've
13:47:42   15   had three major surgeries in the last year and I missed a lot of
13:47:46   16   work.  But I'm over it, so I'm back and I am working and working
13:47:51   17   hard to try to get everything that is overdue done.  And I
13:47:55   18   apologize for any delay that has come up but stuff happens.
13:47:59   19   When your warranty expires as you know on your car, everything
13:48:06   20   starts to break and my warranty done expired.  So I very
13:48:09   21   cleverly fell downstairs at the University of Miami Law School
13:48:14   22   while I was teaching a class and severed my quadriceps in my
13:48:18   23   left leg, and then had that operation in February and then a
13:48:21   24   second operation in December because apparently I tore it again
13:48:24   25   slipping, and then a third operation in February or January
```

```
13:48:32   1    30th.  So I'm back, and I -- periodically the judges get a two
13:48:36   2    or three month sabbatical where we do not get new cases and mine
13:48:39   3    is coming up at the beginning of July I believe, and since we
13:48:44   4    will not be getting new cases and since everything has kind of
13:48:47   5    gone dead anyway because of the coronavirus, I should have
13:48:51   6    plenty of time to deal with all of the pending motions and I
13:48:51   7    will.
13:48:54   8              Is there anything further to be gained by talking about
13:48:59   9    this at this point?  Let me ask Mr. Kernell or Mr. Schwartz.
13:49:05  10    Did I say that right?  I'm trying to read somebody else's
13:49:06  11    writing.
13:49:08  12              MR. SCHWARTZ:  It's just Mr. Schwartz, Your Honor, and
13:49:11  13    I'm happy to hear that you're back on your feet.
13:49:16  14              THE COURT:  Kind of.  But anyway, I've got competent
13:49:22  15    law clerks.  I also had a law clerk die, which is a very unusual
13:49:25  16    circumstance.  You don't often lose somebody in the middle of
13:49:30  17    their tenure as a law clerk, but that kind of messed me up a
13:49:34  18    little bit, but nothing compared to the tragedy of his family.
13:49:36  19    But I've got excuses, a lot of them.  How many do you want?
13:49:38  20              The bottom line is what can we do now?  What do you
13:49:40  21    need from this status conference right now, Mr. Schwartz or
13:49:43  22    Mr. Kernell?
13:49:46  23              MR. KERNELL:  Your Honor, this is Jim Kernell.  One
13:49:50  24    thing I think would be helpful, and perhaps some additional
13:49:58  25    briefing on this, is to have additional discovery as to the
```

13:50:07  1    current sales and use of the Nextel mark because in spite of the
13:50:16  2    representations of Plaintiff, you cannot buy a Nextel line of
13:50:19  3    service today.  You haven't been able to do that for a number of
13:50:25  4    years.  So that mark is absolutely dead.  It's been abandoned.
13:50:30  5    And yes, those marks are still in force as they don't just go
13:50:35  6    abandoned on their own, you know, you have made the declarations
13:50:39  7    and such to the trademark office.  But the fact that they
13:50:43  8    haven't sold a line of service to Nextel for more than three
13:50:47  9    years, they have absolutely abandoned it, they have transferred
13:50:57 10    all those frequencies to T-Mobile, they're not offering
13:51:02 11    anything.  So that is pretty clear and we can show that with,
13:51:07 12    you know, documents from the FCC as to what frequencies are
13:51:14 13    assigned to what carriers.
13:51:20 14              As far as any devices that have Nextel on them, our
13:51:24 15    motion for an injunction was having to do with Sprint trying to
13:51:31 16    relabel some devices that they had just in the last -- well,
13:51:35 17    within the last year decided that they were going to try and
13:51:39 18    relabel some devices, and it was only with a sticker trying to
13:51:45 19    bolster their position that they are using Nextel.  However,
13:51:50 20    they have not -- not a single one of those devices are available
13:51:54 21    in a Sprint store that say Nextel on them.  And so I think it
13:51:58 22    would be -- I think it would be worthwhile to do an expedited
13:52:05 23    discovery for Sprint to provide sales and things -- and provide
13:52:10 24    actual devices that show the Nextel on them, on the device
13:52:17 25    itself or on a box that are current, not something from 2013 or

```
13:52:22   1    '15 or, you know, the ones that they produced in discovery that
13:52:27   2    were, you know, years and years out of date and hadn't been
13:52:31   3    used.  So, you know, from the Defendant's standpoint, I think it
13:52:36   4    would be helpful and provide the additional information to the
13:52:41   5    Court showing that those marks have in fact been abandoned.
13:52:44   6             MS. WHEATLEY:  Your Honor, this is Lucy Wheatley for
13:52:46   7    the Plaintiff.  May I respond to that?
13:52:48   8             THE COURT:  Yes.  Go ahead.
13:52:52   9             MS. WHEATLEY:  So discovery has been closed for a very
13:52:58  10    long time and there's absolutely no basis to reopen it because
13:53:03  11    regardless what discovery right now could show, and it's going
13:53:07  12    to show the same thing it showed previously, it doesn't make any
13:53:12  13    difference for any of the claims in this case.  It doesn't make
13:53:15  14    any difference whatsoever.  It's not a moving target that
13:53:20  15    changes over time.  The question in this case is whether
13:53:26  16    Defendants infringed, and that infringement started back in
13:53:32  17    2016.  And so regardless of what Sprint does in the future,
13:53:36  18    nothing could change the fact that Defendants infringed back in
13:53:42  19    2016.  Sprint frankly could have abandoned Nextel in 2019.  It
13:53:45  20    still wouldn't change the fact that Defendants infringed, so it
13:53:50  21    wouldn't change the issues in this case.  So further discovery
13:53:53  22    here is going to be burdensome, it's going to delay everything,
13:53:59  23    there's no basis for it and it's just sort of a ploy because
13:54:02  24    Defendants have not come up with any evidence to support their
13:54:06  25    case so they're hoping if they keep pushing this out and keep
```

```
13:54:09   1    pushing this out eventually they'll come up with some evidence.
13:54:13   2    But that's really not fair to the Plaintiff and it's not the
13:54:17   3    law.  The clock started when we filed this complaint and it went
13:54:20   4    three years backwards from the filing of this complaint.  That's
13:54:25   5    the relevant abandonment period.  So we don't need any further
13:54:32   6    evidence, and we have fully briefed summary judgment motions
13:54:35   7    that are ready to be decided and that's the record and that's
13:54:39   8    what we should decide on.
13:54:44   9               THE COURT:  Well, obviously it seems to me that we need
13:54:48  10    to get moving on both of these motions.  I was thinking of just
13:54:51  11    lifting the stay, but I don't think I want to do that until I
13:55:02  12    have entered an order on all pending motions, and I will do my
13:55:07  13    very best to have that done in a very short period of time and
13:55:09  14    then we'll set it for trial and we'll see what happens.  I do
13:55:13  15    not think that we need to reopen discovery at this point.  What
13:55:18  16    we're talking about is something that is back from the time of
13:55:19  17    the filing of the complaint.
13:55:23  18               All right.  I'm going to maintain the status quo.  I
13:55:29  19    promise you that I will do my best to get an order out on all
13:55:35  20    pending motions, and then we will reset the case for trial.  And
13:55:40  21    since we are having tremendous difficulty in lining up criminal
13:55:45  22    cases which, as you know according to Congress takes precedence,
13:55:50  23    you guys kind of fall by the wayside.  But you try to get
13:55:53  24    somebody over here from Federal Detention Center which I can see
13:55:57  25    out my window, and each time they walk across the street to our
```

```
13:56:02   1    building they have to go into a two-week quarantine when they go
13:56:05   2    back, which makes it very difficult to justify calling them over
13:56:09   3    for any preliminary matters and even for taking a plea.  So
13:56:19   4    civil cases all of a sudden have gained tremendous benefit in
13:56:24   5    their ability to go to trial, and we're going to do our best to
13:56:28   6    try to keep clearing our docket with everything that we can.
13:56:31   7    I'll do my best.  I can't tell you exactly how long it will be,
13:56:35   8    but it will be the best I can do and it will -- it wouldn't be
13:56:36   9    forever.
13:56:39  10              Anything else we need to talk about today?
13:56:42  11              MS. WHEATLEY:  No, Your Honor, and thank you very much.
13:56:44  12              THE COURT:  Thank you.  And thank you Mr. Kernell and
13:56:47  13    Mr. Schwartz also.
13:56:47  14              MR. KERNELL:  Thank you, Your Honor.
13:56:48  15              MR. SCHWARTZ:  Thank you, Your Honor.
13:56:49  16              THE COURT:  We'll be talking again.  Thank you very
13:56:50  17    much.
13:56:52  18              MR. KERNELL:  Okay.  Thank you.
13:56:53  19              THE COURT:  Bye now.
13:56:54  20              MS. WHEATLEY:  Bye.
13:56:54  21              (PROCEEDINGS CONCLUDED)
13:56:54  22                         C E R T I F I C A T E
                I certify that the foregoing is a correct transcript from the
13:56:54  23    record of proceedings in the above-entitled matter.
                9/21/2020              /s/ Dawn M. Savino, R.P.R., C.R.R.
13:56:54  24    Date                      DAWN M. SAVINO, R.P.R., C.R.R.
13:56:54  25
```