UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

**Case Number: 18-60788-CIV-MARTINEZ-OTAZO-REYES**

SPRINT COMMUNICATIONS, INC.,

      Plaintiff,

vs.

STEPHEN CALABRESE, et al.,

      Defendants.

_____/

## OMNIBUS ORDER

THIS CAUSE is before the Court upon the parties' cross motions for summary judgment, [ECF Nos. 120, 122]. Also before the Court is Defendants' Supplemental Motion for Summary Judgment, [ECF No. 211], as well as Plaintiff's Motion to Strike said Supplemental Motion, [ECF No. 218]. The Court has considered the motions, the entire record, and is otherwise duly advised in the premises. After careful consideration, the Court finds as follows.

**I.**    **Background**

Use it or lose it. This case arises from a trademark dispute between Plaintiff, Sprint Communications, Inc. ("Sprint"), and Defendants, Stephen Calabrese, Nextel, Inc., Retrobrands USA LLC, Jeffrey Kaplan, and Nextel Mobile Worldwide, Inc. ("Defendants"). Specifically, this case centers around whether Sprint has abandoned its use of certain NEXTEL trademarks.

The Court presumes the parties are aware of the factual history of this case given the extensive ongoing litigation. As such, the Court will offer only a brief background of the facts at issue.

In 2005, Sprint purchased the telecommunications service provider formerly known as

Nextel. The two companies merged and became what was known as the Sprint Nextel Corporation. Nextel phones were popular for their push-to-talk "walkie-talkie" features made especially recognizable by the devices' chirp sound. Sprint owns two incontestable federal registrations for NEXTEL and NEXTEL Mark, and a federal registration for the Nextel "chirp" sound, known as the "Sprint Chirp Mark," as a sound mark.

These devices were initially supported by the iDEN network, which was shut down by Sprint on June 30, 2013. Sprint encouraged Nextel subscribers using the iDEN network to switch to Sprint's "Direct Connect" network. Sprint then removed Nextel from its corporate name. Sprint allegedly shutdown the Nextel website at www.nextel.com. Sprint has also either abandoned or cancelled approximately fifty-three registered or pending Nextel trademarks from 2005 to the time of filing. Additionally, Sprint's annual Form 10-K reports filed with the Securities Exchange Commission in 2014–2017 stopped identifying Nextel as a Sprint brand, and stopped identifying Nextel as a patent, trademark, or license in the report. Sprint correctly asserts that it is not required to in fact list every trademark it owns. Accordingly, Sprint asserts that this is not an indication that it has in fact abandoned the Nextel marks.

Indeed, according to Sprint, it still actively uses the Nextel trademark on certain other push-to-talk devices, including the Sonim XP Strike IS rugged, where the term "NEXTEL® inspired" can be seen in the fine print on the back of certain boxes and on certain user guides. Sprint asserts that it primarily focuses its advertising for these push-to-talk services on the "Business Market" as opposed to the retail market. The Business Market consists of businesses, first responders, and other government agencies. As such, Sprint contends it has used the Nextel mark at certain trade shows, such as the International Communications Wireless Expo ("ICWE"), and during customer sales presentations verbally and in PowerPoint.

Defendant Stephen Calabrese is an inventor, who apparently co-invented ROPIC technology, which is the foundational technology underlying the original Nextel products. Under the apparent impression that Sprint abandoned the Nextel brand, Mr. Calabrese founded Nextel, Inc., which is doing business as Nextel Worldwide (together, "NW Entity"). In the fall of 2016, the NW Entity filed an application with the United States Patent and Trademark Office seeking to register the NEXTEL Mark in connection with telecommunication access services, telecommunication gateway services, and transfer of data by telecommunication. The NW Entity also registered its tradename, Nextel, Inc. d/b/a Nextel Worldwide with the Florida Division of Corporations, as well as the domain name <nextelworldwide.com>. The Entity then began promoting, advertising, and soliciting third-party retailers and distributors to sell their product with the Nextel Mark, which was still owned by Sprint.

Then came Retrobrands, which is operated by Mr. Kaplan. Retrobrands' business model is to "revive" older, famous brands that have fallen out of popularity or have otherwise been discontinued. Retrobrands and the NW Entity created a joint plan to "relaunch" the Nextel brand. This "relaunch," according to Sprint, however, was not a relaunch, but rather a plan to counterfeit the already-owned Nextel brand and profit off of the goodwill Sprint spent years creating in the Marks.

Sprint brought the instant action, bringing claims for counterfeiting in violation of 15 U.S.C. §§ 1114, 1116 (Count I); federal trademark infringement in violation of 15 U.S.C. § 1114 (Count II); federal unfair competition and false designation of origin (Count III); federal trademark dilution in violation of 15 U.S.C. § 1125(c) (Count IV); cybersquatting in violation of 15 U.S.C. § 1125(d) (Count V); violations of Florida's Deceptive and Unfair Trade Practices Act (Count VI); common law false designation of origin and unfair competition (Count VII); counterfeiting of the

3

Sprint Chirp Mark in violation of 15 U.S.C. §§ 1114, 1116 (Count VIII); federal trademark infringement of the Sprint Chirp Mark in violation of 15 U.S.C. § 1114 (Count IX); and cybersquatting in violation of 15 U.S.C. § 1125 (Count X).

Defendants counterclaimed, alleging that Plaintiff's abandoned the marks, and therefore, they were the rightful owners of the subject marks. As such, Defendants brought claims for a declaratory judgment of trademark unenforceability due to abandonment (Count I); declaratory judgment of trademark non-infringement (Count II); declaratory judgment ordering the cancellation of Sprint's remaining trademark registrations for NEXTEL (Count III); fraud on the United States Patent and Trademark Office (Count IV); common law tortious interference with contractual business relationships (Count V); common law tortious interference with advantageous business relationships (Count VI); common law defamation (Count VII); declaratory judgment order the cancellation of Sprint's trademark registration for the NEXTEL Sound Mark (Count VIII); common law unfair competition (Count IX); and reverse domain name hijacking (Count X).

Both parties have moved for summary judgment as to all counts of each of their claims.

## II.   <u>Legal Standard</u>

Under Federal Rule of Civil Procedure 56, a court shall grant summary judgment if "the depositions, documents, electronically stored information, affidavits or declarations, stipulations…, or other materials…show [] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). Rule 56 requires entry of summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant's initial burden on a motion for summary judgment "consists of a responsibility to inform the court of the basis for its motion and to identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993) (alterations and internal quotation marks omitted). Once the moving party has shouldered its initial burden, the burden shifts to the non-moving party to "'set forth specific facts showing that there is a genuine issue for trial,' not just to 'rest upon the mere allegations or denials of the adverse party's pleading.'" *United States v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001) (quoting *Resolution Trust Corp. v. Camp*, 965 F.2d 25, 29 (5th Cir. 1992)). When a moving party has carried its burden, the party opposing summary judgment must do more than show that there is "metaphysical doubt" as to any material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). When the record taken as a whole could not lead a rational trier of fact to find for the nonmovant, there is no genuine issue. See id. at 587.

At summary judgment, courts are required to view the evidence in the light most favorable to the nonmovant. *See Chapman v. Am. Cyanamid Co.*, 861 F.2d 1515, 1518 (11th Cir. 1988). "All reasonable inferences arising from the undisputed facts should be made in favor of the nonmovant. However, an inference based on speculation and conjecture is not reasonable." *Id.* "Speculation does not create a genuine issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005).

Additionally, "cross motions for summary judgment may be probative of the nonexistence of a factual dispute, but this procedural posture does not automatically empower the court to dispense with the determination whether questions of material fact exist." *Ga. State Conf. of*

*NAACP v. Fayette Cty. Bd. of Comm'rs*, 775 F.3d 1336, 1345-46 (11th Cir. 2015). When the parties file cross-motions for summary judgment, the standard of review "does not differ from the standard applied when one party files a motion, but simply requires a determination of whether either of the parties deserves judgment as a matter of law on the facts that are not disputed." *GEBAM, Inc. v. Inv. Realty Series I, LLC*, 15 F. Supp. 3d 1311, 1315–16 (N.D. Ga. 2013) (citing *Am. Bankers Ins. Grp. v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005)); *see also United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984) ("Cross-motions…will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." (alteration added; citation omitted)).

## III.   Analysis

### A.   The Supplemental Motion for Summary Judgment

As an initial matter, the Court must determine whether—and to what extent—it should consider Defendants' Supplemental Motion for Summary Judgment. Defendants filed the Motion and incorporated supplemental statement of material facts to assert that Sprint's merger with T-Mobile indicates clear abandonment by Sprint of not only the Nextel marks, but also of the Sprint brand. Defs.' Supp. Mot. for Summ. J. 2, ECF No. 211.

First, this argument was already heard and rendered inapposite by the Court. *See* Tr. May 27, 2020 Status Conf., ECF No. 217 at 13. At the status conference, the Court heard argument on the effect of the merger and whether it warranted any additional discovery or briefing. The Court concluded it did not. At no point during the conference did Defendants seek leave to file a supplement to its pending motion for summary judgment.

In this same vein, the supplemental filings will be stricken[1] for failure to seek leave or

---

[1] "Whether the Court 'strikes' the argument or merely ignores it is a distinction without a practical difference for the purpose of resolving the underlying [motion]." *Boring v. Pattillo Indus. Real Estate*, 426

otherwise comply with the Court's Scheduling Order or the Local Rules for the Southern District of Florida. Local Rule 7.1(c) provides that once a motion is fully briefed, "[n]o further or additional memoranda of law shall be filed and served without prior leave of Court." S.D. Fla. L.R. 7.1(c); *see also Leatherwood v. Anna's Linens, Co.*, 384 F. App'x 853, 857 (11th Cir. 2010) (affirming district court's refusal to consider supplemental briefing where local rules only permitted supplemental filings with the court's permission). Accordingly, Plaintiff's Motion to Strike the Supplemental Motion for Summary Judgment, (ECF No. 218), is granted. The Court will not consider the filings in ruling on the pending cross-motions.

B. Motions for Summary Judgment

The centrifugal issue around which all the parties' claims and defenses revolve is abandonment. Specifically, for either side to succeed on their respective motions for summary judgment, the Court must find, as a matter of law, that Sprint either did—or did not—abandon the subject trademarks. As such, the Court will address this issue first.

1. Abandonment of NEXTEL marks

To bring an infringement claim under the Lanham Act, a plaintiff must hold a valid trademark. *Natural Answers, Inc. v. SmithKline Beecham Corp.*, 529 F.3d 1325, 1329 (11th Cir. 2008). Under the statute, a trademark is deemed abandoned, and thus no longer valid, "[w]hen its use has been discontinued with intent not to resume such use." 15 U.S.C. § 1127;[2] *see Cumulus*

---

F. Supp. 3d 1341, 1349 (N.D. Ga. 2019).

[2] The definition of abandonment given in full in § 1127 reads in full:

A mark shall be deemed to be "abandoned" if either of the following occurs:

(1) When its use has been discontinued with intent not to resume such use. Intent not to resume may be inferred from the circumstances. Nonuse for 3 consecutive years shall be prima facie evidence of abandonment. "Use" of a mark means the bona fide use of such mark made in the ordinary course of trade, and not made merely to reserve a right in a mark.

*Media, Inc. v. Clear Channel Commc'ns, Inc.*, 304 F.3d 1167, 1173 (11th Cir. 2002) ("[A] defendant who successfully shows that a trademark plaintiff has abandoned a mark is free to use the mark without liability to the plaintiff."). As such, a putative trademark infringer must prove two separate elements to interpose the defense of abandonment successfully: "that the plaintiff has ceased using the mark in dispute, and that he has done so with an intent not to resume its use." *Cumulus Media*, 304 F.3d at 1174; *see also Citibank, N.A. v. Citibanc Grp., Inc.*, 724 F.2d 1540, 1545 (11th Cir. 1984).

"Abandonment is trademark law's way of recognizing that trademark rights flow from use." *Cumulus Media*, 304 F.3d at 1174. For purposes of abandonment, the Lanham Act defines "use" as "the bona fide use of such mark made in the ordinary course of trade, and not made merely to reserve a right in a mark." 15 U.S.C. § 1127. Indeed, "[t]rademark ownership is always appurtenant to commercial activity. Thus, actual and continuous use is required to acquire and retain a protectible interest in a mark." *Tally-Ho, Inc. v. Coast Cmty. Coll. Dist.*, 889 F.2d 1018, 1022–23 (11th Cir. 1989). Accordingly, "neither promotional use of the mark on goods in a different course of trade nor mere token use constitute 'use' under the Lanham Act." *Emergency One, Inc. v. Am. FireEagle, Ltd.*, 228 F.3d 531, 536 (4th Cir. 2000) (citing *Imperial Tobacco, Ltd. v. Phillip Morris, Inc.*, 899 F.2d 1575, 1592–93 (Fed. Cir. 1990)); *see Superior Consulting Servs., Inc. v. Shaklee Corp.*, No. 6:16-cv-2001-Orl-31GJK, 2017 WL 2834783, at *4 (M.D. Fla. June 30, 2017). Where the use of a mark does not "reflect a continual effort to create a viable business in

---

(2) When any course of conduct of the owner, including acts of omission as well as commission, causes the mark to become the generic name for the goods or services on or in connection with which it is used or otherwise to lose its significance as a mark. Purchaser motivation shall not be a test for determining abandonment under this paragraph.

15 U.S.C. § 1127.

the goods so marked," such use does not rise to the level of "use" contemplated by the Lanham Act. *White v. Paramount Pictures Corp.*, 108 F.3d 1392, at *3 (Fed. Cir. Feb. 21, 1997); *but see Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1195–96 (11th Cir. 2001) ("Under the 'totality of the circumstances' analysis, a party may establish 'use in commerce' even in the absence of sales.").

Similarly, "not every transport of a good is sufficient to establish ownership rights in a mark." *Planetary Motion*, 261 F.3d at 1196. To warrant protection, use of a mark "need not have gained wide public recognition," but "[s]ecret, undisclosed internal shipments are generally inadequate." *Blue Bell, Inc. v. Farah Mfg. Co.*, 508 F.2d 1260, 1265 (5th Cir. 1975).[3]

Regarding abandonment's second element, proving the subjective intent of a trademark holder may prove burdensome for a defendant. Accordingly, the Lanham Act provides two aids to demonstrate intent not to resume use. First, it expressly provides that "[i]ntent not to resume may be inferred from the circumstances." 15 U.S.C. § 1127. Second, it provides a rebuttable presumption of intent not to resume use where an alleged infringer can show nonuse for three consecutive years. *Id.* The intent to resume use of a trademark, however, "cannot be far-flung or indefinite; rather, there must be an intent to resume use within the reasonably foreseeable future." *Natural Answers*, 529 F.3d at 1329.

The burden that a putative infringer bears on the affirmative defense of abandonment is strict. *See Conagra, Inc. v. Singleton*, 743 F.2d 1508, 1516 (11th Cir. 1984); *Citibank*, 724 F.2d at 1545; *Cumulus Media*, 304 F.3d at 1175. "Because a finding of abandonment works an involuntary forfeiture of rights, federal courts uniformly agree that the defendants asserting an abandonment

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decision handed down by the former Fifth Circuit prior to October 1, 1981.

defense face a 'stringent,' 'heavy,' or 'strict burden of proof.'" *Cumulus Media*, 304 F.3d at 1175.[4]

After a plenary review of the record, the Court finds that genuine issues of material fact exist as to whether Sprint was engaged in the bona fide use of the NEXTEL trademark and whether it had the intent to resume use in the future. "Evaluating whether a use is in 'the ordinary course of trade' is often an intensely factual undertaking." *Electro Source, LLC v. Brandess-Kalt-Aetna Grp., Inc.*, 458 F.3d 931, 936–37, 940 (finding clear error where district court weighed the evidence of abandonment on summary judgment); *see also On-Line Careline, Inc. v. America Online, Inc.*, 229 F.3d 1080, 1087 (Fed. Cir. 2000) ("Abandonment is a question of fact."); *Cumulus Media*, 304 F.3d at 1174–75 (same); *Rivard v. Linville*, 133 F.3d 1446, 1449 (Fed. Cir. 1998) (same).

Sprint points to certain evidence of use, including, among other things, packaging and user guides for Sonim XP Strike IS devices with NEXTEL in small print on the back of the box, point-of-sale advertisements at trade shows in 2017 and 2018, and slideshows and verbal presentations. *See, e.g.*, Jobe Decl. Ex. 3–4, ECF No. 122-3 at 45–54. It is true that the meaning of "bona fide use" is not limited to profit-making activity; however, courts have found that promotional materials alone are not always sufficient to establish use under the Lanham Act. *See Planetary Motion*, 261 F.3d at 1195–96 (collecting cases). "Courts have found promotional efforts sufficient under some circumstances, such as where promotional mailings are coupled with advertiser or distributor solicitations or where a title was announced to millions and promoted at an annual trade convention." *See id.* Nonetheless, use has been found insufficient where "only a few presentations [of the promotional materials] were made." *See id.* at 1196 (citing *WarnerVision Entm't Inc. v.*

---

[4] "Exactly what constitutes 'strict proof' is somewhat of an amorphous standard." *Nakava, LLC v. South Pacific Elixir Co.*, No. 19-cv-81128-SINGHAL, 2020 WL 4601641, at *6 (S.D. Fla. Aug. 10, 2020). In *Cumulus Media*, the Eleventh Circuit stopped short of providing a definition. *See* 304 F.3d at 1173–75.

*Empire of Carolina Inc.*, 915 F. Supp. 639, 645–46 (S.D.N.Y. 1996), *vacated in part on other grounds*, 101 F.3d 259 (2d Cir. 1996)).

Additionally, Defendant not only points to evidence that calls into question the veracity of Sprint's Sonim XP Strike specimens, *see* Defs.' Reply in Support of Defs.' Mot. Summ. J. 5–6, ECF No. 142, but also points to other evidence indicating both non-use and an intent not to resume use in the future. *See, e.g.*, Defs.' Statement of Material Facts ¶¶ 10–13, 18, 23–32, 34.

To highlight why summary judgment is inappropriate based on the circumstances of this case, the Court underscores one example of inferences that could be drawn from the record evidence. On one hand, Sprint's undisputed cancellation or abandonment of the majority of its NEXTEL marks may indicate an intent to abandon the NEXTEL mark, especially in light of certain statements made to the media regarding Sprint's plans for the NEXTEL brand. On the other hand, it could also indicate that Sprint purposefully intended to in fact resume use of the specific marks at issue. This kind of inference drawing is for the jury.

In sum, neither party can show as a matter of law that abandonment has or has not occurred. While the record evidence does not seem to rise to the "strict proof" required to involuntarily deem the marks abandoned, it is enough to preclude Sprint's summary judgment. The Court finds that a triable issue of fact exists concerning whether Sprint's use of the marks has been a "bona fide use…made in the ordinary course of trade," rather than use "merely to reserve a right in a mark." *Cumulus Media*, 304 F.3d at 1174; *see also Nakava, LLC*, 2020 WL 4601641, at *6 (denying cross motions for summary judgment where disputed fact existed as to abandonment); *Invisasox, LLC v. Everything Legwear, LLC*, No. 8:18-cv-2639-T-60TGW, 2020 WL 6134336, at *3 (M.D. Fla. Oct. 16, 2020) (denying summary judgment where issue of disputed fact existed as to whether use was bona fide); *Health & Sun Research, Inc. v. Australian Gold, LLC*, No. 8:12-cv-2319-T-

33MAP, 2013 WL 6038748, at *6–7 (M.D. Fla. Nov. 14, 2013) (denying summary judgment where issue of material fact existed as to whether use was bona fide or token).

   2.   Genericness of Sprint Chirp Mark

      The Defendants also assert that they are entitled to summary judgment as to the Sprint Chirp Mark because the sound is generic. Specifically, Defendants claim that the "sound is used by many third parties, without license and unchallenged by Sprint," and has become "a ubiquitous feature of push-to-talk mobile phones." Defs.' Mot. Summ. J. 16, ECF No. 120.

      As an initial matter, Defendants have not pled genericness as either an affirmative defense or one of its many counterclaims. *See* Defs.' Answer to Am. Compl. And more importantly, Defendants have not produced sufficient evidence that the sound has in fact become generic. *See Breakers of Palm Beach v. Int'l Beach Hotel Dev.*, 824 F. Supp. 1576, 1583–84 (S.D. Fla. 1993) (finding twelve examples of other use insufficient because evidence must show third-party use "significantly" diminishes the mark). Second, Defendants have conceded that the sound mark is unique and capable of secondary meaning by applying for protection of the very same mark with the United States Patent and Trademark Office.

      Because Defendants have failed to show that the Sprint Chirp Mark is generic, Defendants' Motion for Summary Judgment as to its Counterclaims regarding the Sprint Chirp Mark is due to be denied.

## IV.   **Conclusion**

      Accordingly, after careful consideration, it is hereby **ORDERED AND ADJUDGED** that:

      1.      Sprint's Motion to Strike Defendants' Supplemental Motion for Summary Judgment, (ECF No. 218), is **GRANTED.**

      2.      Defendants' Supplemental Motion for Summary Judgment, (ECF No. 211), as well

as the Supplemental Statement of Material Facts, (ECF No. 212), are hereby **STRICKEN**.

   3. Sprint Communications, Inc.'s Motion for Summary Judgment, (ECF Nos. 122, 122-1), is **DENIED**.

   4. Defendants' Motion for Summary Judgment and Memorandum in Support, (ECF No. 120), is **DENIED**.

   5. The stay of this case is hereby **LIFTED**. This case will be set for trial by separate order.

   DONE AND ORDERED in Chambers at Miami, Florida, this 12th day of October 2021.

JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

Copies provided to:
All Counsel of Record
Magistrate Judge Snow