1
2
3          UNITED STATES DISTRICT COURT
           SOUTHERN DISTRICT OF FLORIDA
                 MIAMI DIVISION
           CASE NO.  18-cv-60788-JEM

4   SPRINT COMMUNICATIONS, INC.,

5        Plaintiff/Counterclaim Defendant,

6        vs.

7                                           Miami, Florida
                                            April 8, 2022
8   STEPHEN CALABRESE, as an individual,    Pages 1-26
    NEXTEL, INC., d/b/a NEXTEL WORLDWIDE,    2:04 p.m. - 2:42 p.m.
9   RETROBRANDS USA LLC,
    JEFFREY KAPLAN, as an individual, and
10  NEXTEL WORLDWIDE MOBILE, INC.,

11       Defendants/Counterclaimants.
    _____

12
                 TRANSCRIPT CALENDAR CALL
13         BEFORE THE HONORABLE JOSE E. MARTINEZ
                UNITED STATES DISTRICT JUDGE

14
    APPEARANCES:

15
    FOR THE PLAINTIFF/COUNTERCLAIM DEFENDANT:
16                       *Shook, Hardy & Bacon, LLP*
                         BY:  DANIEL B. ROGERS, ESQ.
17                       Citigroup Center, Suite 3200
                         201 South Biscayne Boulevard
18                       Miami, Florida 33131

19                       *McGuireWoods, LLP*
                         BY:  BRIAN C. RIOPELLE, ESQ.
20                       BY:  LUCY J. WHEATLEY, ESQ.
                         BY:  AMANDA L. DeFORD, ESQ.
21                       800 East Canal Street
                         Richmond, Virginia 23219

22
    FOR THE DEFENDANTS/COUNTERCLAIMANTS:
23                       *Erickson Kernell IP*
                         BY:  JAMES J. KERNELL, ESQ.
24                       8900 State Line Road
                         Suite 500
25                       Leawood, Kansas 66206

           PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
              TRANSCRIPT PRODUCED BY COMPUTER

2

```
 1                     Lee & Amtzis, PL
                       BY:  WAYNE SCHWARTZ, ESQ.
 2                     5550 Glades Road
                       Boca Raton, Florida 33431
 3
       REPORTED BY:    DAWN M. SAVINO, R.P.R., C.R.R.
 4                     Official Federal Court Stenographer
                       400 N. Miami Avenue, 10S03
 5                     Miami, Florida  33128
                       Telephone:  305-523-5598
 6     _____

 7                  (Court called to order)

 8                  COURTROOM DEPUTY:  Case number 21 -- I'm sorry.  Case

 9     number 18-60788-civil-Martinez, Sprint Communications,

10     Incorporated versus Calabrese, et al.

11                  Counsel, please state your name for the record starting

12     with the Plaintiffs.

13                  MR. RIOPELLE:  Your Honor, Brian Riopelle of

14     McGuireWoods for Sprint.  With me at counsel's table is Lucy

15     Wheatley, Amanda DeFord, and Dan Rogers of Shook Hardy, also for

16     Sprint.

17                  THE COURT:  Good afternoon.

18                  MR. SCHWARTZ:  Good afternoon, Your Honor.  It's Wayne

19     Schwartz on behalf of the Defendants.  With me is James Kernell,

20     Dory Solomon to my right.

21                  THE COURT:  Good afternoon.  All right.

22                  We're here today on the calendar call for the Sprint

23     Communication versus Calabrese case.  Specially set for trial

24     for the trial period of April 11th.  We'll start Monday, but I

25     can't tell you right now what time because the jury room has
```

The timestamps in the left margin are:
- 2:04:23 (line 8)
- 2:04:31 (line 9)
- 2:04:33 (line 10)
- 2:04:35 (line 11)
- 2:04:38 (line 12)
- 2:04:41 (line 13)
- 2:04:46 (line 14)
- 2:04:51 (line 15)
- 2:04:52 (line 16)
- 2:04:53 (line 17)
- 2:04:56 (line 18)
- 2:04:59 (line 19)
- 2:05:02 (line 20)
- 2:05:03 (line 21)
- 2:05:08 (line 22)
- 2:05:12 (line 23)
- 2:05:17 (line 24)
- 2:05:20 (line 25)

3

| | |
|---|---|
| 2:05:25 | 1 |
| 2:05:37 | 2 |
| 2:05:42 | 3 |
| 2:05:46 | 4 |
| 2:05:51 | 5 |
| 2:05:55 | 6 |
| 2:05:58 | 7 |
| 2:06:03 | 8 |
| 2:06:06 | 9 |
| 2:06:10 | 10 |
| 2:06:14 | 11 |
| 2:06:16 | 12 |
| 2:06:21 | 13 |
| 2:06:25 | 14 |
| 2:06:29 | 15 |
| 2:06:34 | 16 |
| 2:06:39 | 17 |
| 2:06:43 | 18 |
| 2:06:47 | 19 |
| 2:06:49 | 20 |
| 2:06:53 | 21 |
| 2:06:58 | 22 |
| 2:07:05 | 23 |
| 2:07:11 | 24 |
| 2:07:14 | 25 |

been a little difficult about how many people they can bring in
at one time.  We're going to try to pick nine jurors, that way
if we have a little bit of a fall-out, you know, they're not
alternates in civil cases here, they'll all serve and sit.  We
can sit actually more than nine, we can actually sit -- I think
maybe nine is all we can sit.  Yeah.  We can only sit nine in
the jury box.  We have these extra seats out here that we use in
criminal cases but it makes it very, very problematic.  There's
no monitors for them to look at the evidence, and we have to set
up a screen in the front and it just complicates the whole
thing.  It's like an obstacle course getting witnesses to the
witness box.

        I do require people to wear masks in the courtroom
unless you are speaking at the lectern.  If you're speaking at
the lectern, I have a pretty good confidence that unless you're
screaming at me, which I'm not real fond of, you won't be
spewing enough particles to affect me.  Besides, I've got these
shields and I have living filters in front of me, and court
reporter and law clerks that filter out all bad particles before
they get to me.

        We try to be as good as we can about the COVID
situation.  You can see the precautions we have taken.  We've
got screens in front of the jurors.  I'm not real crazy about
lawyers emulating cafe singers and leaning over the jury box
railing to schmooze with jurors.

2:07:19   1          We do not permit voir dire questions by the parties.  I

2:07:24   2   will incorporate those questions of yours that I do not believe

2:07:28   3   are covered by my standard questions, although I think frankly

2:07:31   4   most of them are.

2:07:35   5          Let's see.  I understand there are two pending motions.

2:07:38   6   Defendants' motion to compel the Plaintiff to produce key

2:07:45   7   witnesses at trial and Defendant' sealed motion to permit the

2:07:50   8   Defendant Stephen Calabrese to testify via video conference.

2:07:53   9   These two motions will be dealt with today.

2:07:56  10          I'll also be issuing an order on the parties' joint

2:08:00  11   deposition designations.  I've finished with the longer of the

2:08:05  12   two.  I have to tell you, reading depositions to a jury, I'm

2:08:08  13   sure that you're experienced lawyers and you know that's death.

2:08:14  14   But I'm just suggesting to you that -- I talk to jurors after

2:08:19  15   cases and they really hate to be sitting there while people are

2:08:24  16   reading depositions.  It drives them crazy.  So I urge you to

2:08:28  17   minimize that, but it's your case.  Do what you want.  But I

2:08:32  18   will say that if I am taken to the emergency room and told that

2:08:35  19   I have an hour to live, I'm going to tell them to call these

2:08:39  20   guys because they made me read that damned deposition, and I'm

2:08:44  21   pretty sure they owe me at least ten hours.  And if we're going

2:08:46  22   to sit in the courtroom and listen to them, it might be a total

2:08:52  23   of 12 to 15 hours that I have gained by already being in hell.

2:08:58  24          Anyway, are there any matters aside from what we've

2:09:04  25   talked about already that need to be resolved before trial?

2:09:07  1          MR. RIOPELLE:  Nothing -- Brian Riopelle, Your Honor,

2:09:11  2   nothing that needs to be resolved.  After we do this, there are

2:09:15  3   just some housekeeping things I would like to go over.

2:09:17  4          THE COURT:  We can deal with that.  How many days do

2:09:19  5   you believe this case will go, start with the Plaintiff.

2:09:21  6          MR. RIOPELLE:  We think it should go about four days.

2:09:23  7          THE COURT:  Okay.  Defense, do you concur?

2:09:27  8          MR. SCHWARTZ:  I would agree four, add in the extra day

2:09:28  9   for good measure.

2:09:29 10          THE COURT:  One problem we have next week, and it

2:09:34 11   depends on the jury after they're selected.  We should be able

2:09:42 12   to select a civil jury in late morning, early afternoon

2:09:46 13   depending on when we get them.  In other words, I'm going to get

2:09:51 14   -- I get 30 or 35 jurors.  How many did I ask for, Diane?  30.

2:09:57 15   We should be able to get through those late morning, perhaps

2:10:00 16   early afternoon.  So we'll probably have opening statements.

2:10:02 17          How long do you think you'll need for opening

2:10:05 18   statements, Plaintiff?  What do you think?

2:10:07 19          MR. RIOPELLE:  I haven't timed it yet, Your Honor, but

2:10:10 20   I would suspect it would be 40 minutes.

2:10:12 21          THE COURT:  Do you think that's about right?

2:10:12 22          MR. SCHWARTZ:  I do.

2:10:15 23          THE COURT:  All right.  In an abundance of caution I'll

2:10:20 24   give each of you 45, which means you'll have an hour an a half

2:10:23 25   total.  So we'll at least do that on Monday, and I would suspect

| | | |
|---|---|---|
| 2:10:27 | 1 | that we will have the opportunity to call one or two witnesses |
| 2:10:32 | 2 | or start boring them to death by reading parts of any |
| 2:10:36 | 3 | depositions that you really want to do.  In any event, we'll try |
| 2:10:38 | 4 | to do some evidentiary matters on Monday. |
| 2:10:43 | 5 | Defendant's motion to compel the Plaintiff to produce |
| 2:10:49 | 6 | key witnesses at trial.  Federal Rule of Civil Procedure 45 |
| 2:10:57 | 7 | (c)(1), plain language controls.  Subpoena may command a person |
| 2:11:01 | 8 | to attend a trial, hearing or deposition only if they're within |
| 2:11:05 | 9 | 100 miles within the state, if the person is a party or a |
| 2:11:06 | 10 | party's officers. |
| 2:11:09 | 11 | Doesn't that resolve both of these, that motion?  Is |
| 2:11:15 | 12 | there anybody that is not really covered by that Rule that I |
| 2:11:21 | 13 | need to rule on specifically? |
| 2:11:23 | 14 | MR. RIOPELLE:  No, Your Honor.  Rule 45 covers both of |
| 2:11:24 | 15 | them. |
| 2:11:29 | 16 | THE COURT:  All right.  Defense, do you agree? |
| 2:11:44 | 17 | MR. SCHWARTZ:  Our only position, Your Honor, is that |
| 2:11:47 | 18 | that's a key witness who was produced by the Plaintiff |
| 2:11:54 | 19 | throughout this case, and there are cases that talk about the |
| 2:11:58 | 20 | procurement of certain witnesses, and just -- |
| 2:12:03 | 21 | THE COURT:  I'm not going to require them to attend |
| 2:12:12 | 22 | unless the Rule says that they need to be, so I will -- well, |
| 2:12:16 | 23 | the officer, I think that we can require whether he lives here |
| 2:12:18 | 24 | or not.  What's the story on that? |
| 2:12:21 | 25 | MR. RIOPELLE:  Neither of them are officers of Sprint. |

| | | |
|---|---|---|
| 2:12:23 | 1 | THE COURT:  Isn't one of them an employee though?  Is |
| 2:12:24 | 2 | it a former employee? |
| 2:12:28 | 3 | MR. RIOPELLE:  Oh, Mr. Mancuso is a former employee and |
| 2:12:32 | 4 | Ms. Jobe is a current employee, but she's not an officer of |
| 2:12:35 | 5 | Sprint. |
| 2:12:36 | 6 | MR. SCHWARTZ:  Your Honor, we understood Ms. Jobe to be |
| 2:12:40 | 7 | some sort of -- you know, the machinations of the corporation |
| 2:12:43 | 8 | have changed over time, but she was identified as a senior |
| 2:12:49 | 9 | director of Sprint, and she was in charge of the trademarks for |
| 2:12:53 | 10 | the entire time. |
| 2:12:55 | 11 | THE COURT:  I've read her entire deposition, I did not |
| 2:13:05 | 12 | see that she qualifies -- well, she may be, but she's -- isn't |
| 2:13:12 | 13 | that party -- if within the state and they are a party or an |
| 2:13:15 | 14 | officer, then that's fine.  But she's not in the state, is she? |
| 2:13:18 | 15 | MR. RIOPELLE:  She's not in the state, and Rule 45, as |
| 2:13:25 | 16 | amended in 2013, actually applies to officers in the sense that |
| 2:13:29 | 17 | they are also covered by the within the state of the 100 miles. |
| 2:13:32 | 18 | So she's not an officer, but whether she was an officer or not |
| 2:13:33 | 19 | it wouldn't matter. |
| 2:13:36 | 20 | THE COURT:  Well, I don't think they're within my |
| 2:13:39 | 21 | subpoena power, therefore the motion to compel is denied. |
| 2:13:46 | 22 | Going to the second, Defendants' sealed motion to |
| 2:13:51 | 23 | permit the Defendant Stephen Calabrese to testify.  Let me hear |
| 2:13:58 | 24 | argument on that.  Defendant, why do you want to do that and -- |
| 2:14:03 | 25 | I mean, this is a public record.  I don't know why it needs to |

PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
TRANSCRIPT PRODUCED BY COMPUTER

| | | |
|---|---|---|
| 2:14:06 | 1 | be sealed.  It's not sealed as far as I'm concerned. |
| 2:14:08 | 2 | MR. SCHWARTZ:  Well, the reason being, Your Honor, I |
| 2:14:12 | 3 | took that direction from Mr. Calabrese himself who was concerned |
| 2:14:17 | 4 | about his mental health and his privacy in terms of his -- he |
| 2:14:22 | 5 | had privacy rights because that's the nature of the reason for |
| 2:14:27 | 6 | his unwillingness to come into this particular courtroom |
| 2:14:30 | 7 | setting.  He's just having basically a mental breakdown.  He's |
| 2:14:35 | 8 | checked himself into a facility, I understand, in Boston.  So |
| 2:14:42 | 9 | it's just the stress of this whole matter, and we've articulated |
| 2:14:46 | 10 | the reason and the basis.  There's case law that supports it. |
| 2:14:52 | 11 | The Court controls its -- if he were to be called, you know, we |
| 2:14:56 | 12 | now have moved into the realm of video and Zoom and technology |
| 2:15:04 | 13 | and this courtroom can facilitate any type of testimony, whether |
| 2:15:10 | 14 | it's remote or live.  And so for those particular reasons -- |
| 2:15:12 | 15 | THE COURT:  All right.  Let me ask the Plaintiff, why |
| 2:15:15 | 16 | should Mr. Calabrese not be allowed to testify via video |
| 2:15:20 | 17 | conference?  He's making himself available by that.  I don't |
| 2:15:26 | 18 | know.  It seems a little bit unusual that we're saying no, you |
| 2:15:31 | 19 | got to be here when one of your people isn't going to be here. |
| 2:15:39 | 20 | I don't know.  I just -- I think it's discretionary with me, and |
| 2:15:43 | 21 | I'm wondering why I shouldn't grant -- use my discretion to |
| 2:15:47 | 22 | permit him to testify by video conference, which is only the |
| 2:15:52 | 23 | second-most boring thing in the history of the world.  This |
| 2:15:56 | 24 | trial is really -- |
| 2:15:58 | 25 | MR. RIOPELLE:  It's got your interest really piqued, |

PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
TRANSCRIPT PRODUCED BY COMPUTER

2:15:59  1    doesn't it?

2:16:01  2            THE COURT:  It's looming to be even more interesting

2:16:04  3    than this last witness I had here.  Not the last one, the next

2:16:07  4    the penultimate one.

2:16:09  5            Go ahead.  Tell me why.

2:16:11  6            MR. RIOPELLE:  First of all, the primary reason is he

2:16:15  7    is a party, he's an individually-named Defendant, and he has

2:16:20  8    brought a counterclaim, and so he's within the subpoena power

2:16:22  9    and that's why he should be in this courtroom.

2:16:25  10           Now specifically as to his condition, we've not seen

2:16:29  11   the report, I don't believe you've seen the report.  I

2:16:32  12   understand that he was assessed by a psychiatrist at the time he

2:16:39  13   was convicted or after he had been convicted for his -- and was

2:16:46  14   assessed for purposes of sentencing.  Everything, it looked to

2:16:53  15   me, like he was diagnosed with, whether it was ADHD or OCD or

2:16:56  16   something, are things that are treatable and that members of the

2:17:00  17   public have.  It is evident though, from the last few days about

2:17:06  18   what's been going on, that there's some major issue going on

2:17:13  19   with him that he has said he does not want to come.  And, I

2:17:17  20   mean, he has been a convicted felon, he is not known to be that

2:17:23  21   stable, and what I'm concerned about is that if we try to do him

2:17:28  22   by video we don't have anybody that's going to be there to be

2:17:31  23   controlling it, we don't know if he'll just walk out, we don't

2:17:35  24   know if he'll be reading stuff off the thing, it's going to be

2:17:41  25   difficult to get him exhibits beforehand.  Ordinarily I wouldn't

2:17:44  1    have to show him the exhibits that I want to use on

2:17:47  2    cross-examining him, but I'm going to have to probably send them

2:17:51  3    to him ahead of time.  I just don't think this is right.  He

2:17:54  4    should have to come to this court, especially if he's asserting

2:17:56  5    a counterclaim.

2:17:59  6            THE COURT:  Well, let me ask you, it's also troubling

2:18:03  7    that he wants to represent himself pro se.  That's kind of hard

2:18:07  8    to do over Zoom.  And I do understand that I've denied his

2:18:14  9    motion, or the lawyer's motion, to withdraw, but I think he

2:18:21  10   still has the responsibility to be available to assist his

2:18:25  11   counsel.  This is a very complicated.  I don't understand.  Tell

2:18:30  12   me why -- you know, tell me what's going on as much as you can.

2:18:31  13           MR. SCHWARTZ:  As much as I can Your Honor, on the

2:18:36  14   issue that you just raised, he's asked us to continue on on his

2:18:39  15   behalf, so the issue about the withdrawal is moot now --

2:18:39  16           THE COURT:  Okay.

2:18:44  17           MR. SCHWARTZ:  -- based upon conversations and your

2:18:49  18   direction.  He has basically told us he's not coming here.

2:18:54  19   We're trying to have an alternative that allows him to meet his

2:18:58  20   needs and the Court's needs and the parties needs, balance

2:19:04  21   everything to the extent we even decide to as far as our side

2:19:08  22   call him.  We don't know yet, based upon the presentation of the

2:19:13  23   Plaintiff's case.  And I don't have enough information yet about

2:19:17  24   where he is or the treatment he's seeking or -- I don't have

2:19:22  25   that yet.  So I've been dealing with this in real-time to just

PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
TRANSCRIPT PRODUCED BY COMPUTER

2:19:22   1    --

2:19:24   2            THE COURT:  I've been there, done that.  I understand.

2:19:29   3    It could be highly prejudicial to his case, I hope he

2:19:32   4    understands that.

2:19:34   5            MR. SCHWARTZ:  Without getting into any of the details

2:19:34   6    --

2:19:37   7            THE COURT:  If they comment on where he is to tell you

2:19:41   8    whatever the heck he says happened, it makes it very difficult.

2:19:45   9    I'm not sure I can stop them from doing that.  I'm not sure I

2:19:50  10    should.  The fact that he's not here is a fact.  The fact that

2:20:04  11    he's not here to support his position is very damaging, but then

2:20:07  12    again you know that.  I'm not telling you there's no Santa

2:20:14  13    Clause, you probably figured that out.  Well, do you need him

2:20:18  14    here for your case?

2:20:20  15            MR. RIOPELLE:  It would be our intent that we would

2:20:23  16    probably have to call him in our case.  We have to prove

2:20:28  17    infringement, and there is some of the infringing factors that I

2:20:35  18    have to get him to authenticate.  I have to avoid J-AL at the

2:20:38  19    end of our case, so I cannot tell you 100%, but I can tell you

2:20:42  20    that I'm more than 50% considering that I'm going to call him in

2:20:45  21    my case so that I can make sure I get the infringement evidence

2:20:46  22    in.

2:20:48  23            THE COURT:  Well, you better try to find a way of

2:20:51  24    getting infringement evidence in because even if I say that he

2:20:57  25    should come, I'm not prepared to send Orlando up to get him and

2:21:01   1   bring him back on *Con Air*.  You know, that might work in the

2:21:04   2   movies, but it doesn't work real well in civil cases.

2:21:06   3          MR. RIOPELLE:  And I will tell you, Your Honor, just so

2:21:12   4   you know that we have tried to serve him with a subpoena, it

2:21:17   5   appears to us that he's evading service.  We've asked defense

2:21:21   6   counsel for an address, we asked them if they would accept

2:21:21   7   service.

2:21:23   8          THE COURT:  They say they don't know where he is.

2:21:24   9          MR. RIOPELLE:  I don't know if they don't know where he

2:21:25   10  is.

2:21:27   11         MR. SCHWARTZ:  I do not know where Mr. Calabrese is.

2:21:29   12         THE COURT:  I thought that's what he said.

2:21:31   13         MR. RIOPELLE:  That's the first time they've told us

2:21:35   14  that.  We had asked them and they haven't told us so --

2:21:38   15         THE COURT:  Well, I wouldn't want to tell you either if

2:21:43   16  I didn't know where my client was.  I'm not sure I would want to

2:21:53   17  be bragging about it either, but okay.  I mean, he is within my

2:21:58   18  subpoena power, but somebody's got to subpoena him.  I'm not

2:22:04   19  going to worry about it until you call him, but when you call

2:22:07   20  him and he's not here, I don't know exactly what I'm going to

2:22:12   21  tell the jury, but I'm open to suggestions and I suspect that

2:22:17   22  the suggestions I'm going to get from both sides will be 180

2:22:25   23  degrees off, and I'm inclined to go with the Plaintiff's

2:22:34   24  suggestion because they didn't cause this.  So bear that in

2:22:38   25  mind, govern yourself accordingly.  I'm not sure there's a lot

13

| | | |
|---|---|---|
| 2:22:40 | 1 | that you can do about it, but you might start drafting an |
| 2:22:44 | 2 | instruction to the jury, both of you, as to -- you know, you |
| 2:22:49 | 3 | know that the defense called him and he's not here and therefore |
| 2:22:56 | 4 | whatever.  Okay?  I don't really know exactly how to deal with |
| 2:23:02 | 5 | it, but I'm not always sure but -- I'm not always right, but I'm |
| 2:23:04 | 6 | never in doubt.  You ask me to do something and I'll rule one |
| 2:23:06 | 7 | way or the other.  Okay? |
| 2:23:10 | 8 | MR. RIOPELLE:  Just so that -- playing completely |
| 2:23:13 | 9 | above-board, Your Honor, there would be three things that we |
| 2:23:17 | 10 | would ask for.  We would ask, as you just suggested, that if he |
| 2:23:20 | 11 | does not show, we would ask for an adverse instruction and we |
| 2:23:26 | 12 | will have an adverse instruction ready to go. |
| 2:23:31 | 13 | What I'd like to ask you is that the documents that I |
| 2:23:35 | 14 | was going to get him to authenticate, that you just go ahead and |
| 2:23:39 | 15 | admit them but I think that may be putting the Court too far out |
| 2:23:47 | 16 | on that.  So what I would like to ask in the alternative is that |
| 2:23:50 | 17 | at the time that we originally designated deposition testimony |
| 2:23:53 | 18 | from him, and I know you like -- |
| 2:23:54 | 19 | THE COURT:  Oh, I love deposition testimony. |
| 2:23:56 | 20 | MR. RIOPELLE:  I knew you would.  But I'm going to |
| 2:24:01 | 21 | need, at least for the record, to designate additional testimony |
| 2:24:05 | 22 | from his deposition so that I can authenticate the documents so |
| 2:24:06 | 23 | they can come in. |
| 2:24:09 | 24 | THE COURT:  I'm confident counsel is not going to roll |
| 2:24:12 | 25 | over, but they're not going to fight you on stuff that you could |

PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
TRANSCRIPT PRODUCED BY COMPUTER

|          |    |                                                                      |
|----------|----|----------------------------------------------------------------------|
| 2:24:16  | 1  | prove otherwise if he were here; is that correct?                    |
| 2:24:18  | 2  | MR. SCHWARTZ:  Your Honor, they are suing the                        |
| 2:24:25  | 3  | corporation NEXTEL, Inc.  They make it seem like that that           |
| 2:24:27  | 4  | company doesn't exist.  That company is going to be here with        |
| 2:24:29  | 5  | its corporate representative.  They have issues about                |
| 2:24:33  | 6  | infringement, that's the true nature of the Defendant in terms       |
| 2:24:36  | 7  | of what they claim that we did, not Mr. Calabrese who they've        |
| 2:24:41  | 8  | included in this lawsuit simply as a matter of exacting some         |
| 2:24:46  | 9  | leverage over him.  The company is the company.                      |
| 2:24:51  | 10 | And so they've made this to do about Mr. Calabrese, but              |
| 2:24:54  | 11 | they'll be able to do anything they want in terms of presenting      |
| 2:24:58  | 12 | their case being that they have the other corporate Defendant.       |
| 2:24:59  | 13 | THE COURT:  Well, you know, you should be able to prove              |
| 2:25:02  | 14 | a lot of the stuff up without him, but if you have a problem         |
| 2:25:07  | 15 | with something that is not -- and I'll consider what I should do     |
| 2:25:07  | 16 | about it.                                                            |
| 2:25:10  | 17 | MR. RIOPELLE:  Okay.  I just need to go on the record               |
| 2:25:15  | 18 | though and say that's -- we have a 180-degree oppose.                |
| 2:25:17  | 19 | The other corporate Defendant that he's saying,                      |
| 2:25:23  | 20 | Mr. Rivera, has not been deposed, he's not been on anybody's         |
| 2:25:27  | 21 | witness list, he's not been on initial disclosures, he's not         |
| 2:25:31  | 22 | testifying, and all the actions that we're going to do were          |
| 2:25:35  | 23 | taken by Mr. Calabrese and in Mr. Calabrese's name, so that's        |
| 2:25:39  | 24 | why he was named.  Not to get leverage over him, because he did      |
| 2:25:39  | 25 | it.                                                                  |

| | |
|---|---|
| 2:25:42 | 1 |
| 2:25:47 | 2 |
| 2:25:52 | 3 |
| 2:25:56 | 4 |
| 2:26:01 | 5 |
| 2:26:02 | 6 |
| 2:26:06 | 7 |
| 2:26:09 | 8 |
| 2:26:12 | 9 |
| 2:26:16 | 10 |
| 2:26:18 | 11 |
| 2:26:23 | 12 |
| 2:26:28 | 13 |
| 2:26:33 | 14 |
| 2:26:37 | 15 |
| 2:26:40 | 16 |
| 2:26:43 | 17 |
| 2:26:46 | 18 |
| 2:26:53 | 19 |
| 2:26:56 | 20 |
| 2:26:59 | 21 |
| 2:27:03 | 22 |
| 2:27:03 | 23 |
| 2:27:05 | 24 |
| 2:27:08 | 25 |

The last thing I would like to be able to -- just so it's on the record, Your Honor, you ruled in your in limine rulings that we could inform the Court that he is a convicted felon.  Taking into account the cautions you put in that if he doesn't show, I would still like to be able to inform the jury that he's a convicted felon.

THE COURT:  Well, if you introduce testimony of his, I think you're permitted to.  But I don't think that in the blank you'll be able to do it.  I don't think that if he doesn't testify, or if there isn't testimony of his for the jury to consider, whether it be true or not, you can introduce evidence of -- excuse me.  You can introduce testimony of his, and you can also argue that he lied during that testimony even if you introduce it, and so therefore I think that you can introduce, but you have to introduce testimony.  You can't just do it in blank and say by the way, this Defendant a bad guy because he's a convicted felon.

MR. RIOPELLE:  Let me ask the Court's preference on this then.  In opening statement if I have the intention of introducing testimony of his, may I refer to him as a convicted felon or do you want me to wait until such time --

THE COURT:  I want you to wait until you do it.

MR. RIOPELLE:  Thank you.

MR. SCHWARTZ:  I want to address a point about the corporate Defendant.  Mr. Rivera was disclosed in

2:27:14   1    Mr. Calabrese's deposition several weeks ago.  He was disclosed

2:27:17   2    specifically as the corporate rep of NEXTEL, Inc.

2:27:19   3         THE COURT:  As old as I am, I didn't even remember that

2:27:24   4    they had said that, so don't worry about it.  Not important.  My

2:27:27   5    mind is failing me as we speak.  After that last hearing, you

2:27:30   6    can well understand that.

2:27:37   7         MR. SCHWARTZ:  Your Honor, just to be clear, Your

2:27:40   8    Honor's ruling is that you're denying the motion?

2:27:46   9         THE COURT:  Yes, and that the felony conviction is only

2:27:48   10   admissible for purposes of impeachment, which means that there

2:27:59   11   has to be something to impeach.  Even if you introduce it, it

2:28:00   12   doesn't matter.

2:28:02   13        MR. RIOPELLE:  Right.

2:28:02   14        THE COURT:  Okay?

2:28:02   15        MR. RIOPELLE:  Understood?

2:28:04   16        THE COURT:  Anything else we need to talk about today?

2:28:06   17        MR. RIOPELLE:  Yes, Your Honor.  One follow-up on the

2:28:07   18   housekeeping, how does the judge like to do things.  On the

2:28:11   19   housekeeping, we have -- because of some communications in the

2:28:14   20   last few days, we have an e-mail address now for Mr. Calabrese.

2:28:18   21   May we have permission of the Court to serve the subpoena on him

2:28:20   22   via e-mail?

2:28:22   23        THE COURT:  What is the point if he says he's not

2:28:27   24   coming?  Am I supposed to send somebody up to get him?  What do

2:28:31   25   you propose to gain by that?  I don't want to push somebody over

the edge, and I don't know that I would be, but what is the
point?

     MR. RIOPELLE:  I just know that in other federal courts
in which I've done cases that we're required to serve a
subpoena.  If somebody doesn't show or if there's some issue,
the court would only take action if we had served the subpoena.
If this Court is telling me you don't have to serve the subpoena
--

     THE COURT:  The lawyer says he's not coming.  His
lawyer told us he's not coming.  You don't think that's enough?
No, the question is is there -- I mean, I don't argue at the
Eleventh Circuit.  I don't get to go up there and take a
position.  If you go up, you're going to be the one arguing it.
If you need a subpoena, tell me you need a subpoena.  If you
don't, then, you know, it's really up to you.  You tell me what
you need, I will work with you on that but it doesn't seem to me
that you need it when his lawyer says he's not coming.  I take
his lawyer at his word, but you're the guy that has to defend
that position so if it's not that, then don't mess with it.

     MR. RIOPELLE:  Right.

     THE COURT:  Who needs to do this twice?

     oh, wait.  Let me just tell you one thing.  Next week
Friday is Good Friday.  Whether we work -- we're not going to
work all day on Good Friday for sure.  If we work at all on Good
Friday, it kind of depends on the jury.  I'm going to try to

2:30:06  1   feel them out about it and discuss it with them, but I'm not

2:30:10  2   going to force them to be here.  If somebody is really

2:30:13  3   religious, I'll let them off all day.  If somebody is

2:30:18  4   semi-religious, we'll stop at noon.  I don't usually work on

2:30:21  5   Good Friday, but this is an old case and I really want to get

2:30:27  6   over with.  It's not going to get any easier as we go along.

2:30:29  7             MR. RIOPELLE:  No.  No.

2:30:32  8             THE COURT:  All right?  I'm sorry to interrupt you, but

2:30:32  9   go ahead.

2:30:35  10            MR. RIOPELLE:  No, no, no, no.  I appreciate that very

2:30:36  11  much.

2:30:41  12            Here's an issue.  We have a witness that we are going

2:30:49  13  to put on the stand, his name is Brent Kohman.  Mr. Kohman has a

2:30:54  14  tremor, it's called a familial tremor, it causes him to -- when

2:30:57  15  he's concentrating, to shake his head.  We would just like the

2:31:02  16  Court's permission to be allowed to ask him that so he can tell

2:31:06  17  the jury that in the very beginning, because the only concern --

2:31:09  18  we're not looking for sympathy for him.  The concern is that

2:31:11  19  sometimes when you ask him a question --

2:31:14  20            THE COURT:  You might think he's saying no?

2:31:15  21            MR. RIOPELLE:  Exactly.

2:31:16  22            THE COURT:  Nodding or shaking his head no, but saying

2:31:17  23  yes.

2:31:18  24            MR. RIOPELLE:  Right.

2:31:20  25            THE COURT:  Yeah, I don't have a problem with that.  Do

| | | |
|---|---|---|
| 2:31:22 | 1 | you have a problem with that, Counsel? |
| 2:31:24 | 2 | MR. SCHWARTZ:  I don't necessarily have a problem, Your |
| 2:31:27 | 3 | Honor.  I just feel like there should be some sympathy to a |
| 2:31:31 | 4 | person on my side who is going through a mental breakdown, and I |
| 2:31:35 | 5 | don't seem to see that coming from the Plaintiff's side with |
| 2:31:38 | 6 | regard to -- I'm surprised that I'm hearing this for the first |
| 2:31:41 | 7 | time about a witness that they have a medical issue with. |
| 2:31:42 | 8 | That's all I'd have to say. |
| 2:31:43 | 9 | THE COURT:  Okay. |
| 2:31:44 | 10 | MR. RIOPELLE:  But, I mean, the difference is we're |
| 2:31:47 | 11 | bringing him and he'll be on the stand. |
| 2:31:49 | 12 | THE COURT:  Okay. |
| 2:31:52 | 13 | MR. RIOPELLE:  What is the Court's preference on how |
| 2:31:56 | 14 | exhibits are put in the record?  Do you want us to do it exhibit |
| 2:31:59 | 15 | by exhibit, or would you like us to wait until the end of the |
| 2:31:59 | 16 | day. |
| 2:32:01 | 17 | THE COURT:  I would like you to have shown counsel the |
| 2:32:05 | 18 | night before you intend to introduce.  The other thing that I've |
| 2:32:08 | 19 | learned from jurors is the one thing they really hate is having |
| 2:32:14 | 20 | the lawyer say I show counsel Exhibit 1, and then have the guy |
| 2:32:18 | 21 | pick it up and start reading it.  No.  Have it in their hands |
| 2:32:21 | 22 | beforehand so that they have read it and they can object or not |
| 2:32:26 | 23 | object at that time.  If you can agree to certain things, agree |
| 2:32:29 | 24 | to them and get them all in so that you can just start talking |
| 2:32:35 | 25 | about them.  If you can't agree, then bring it up, mention it to |

PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
TRANSCRIPT PRODUCED BY COMPUTER

```
2:32:39  1    him, have the witness do the foundation and then move on.  Move
2:32:42  2    it in.  If you get it in, you can talk about it.  If you don't,
2:32:43  3    then you can't.
2:32:48  4              MR. RIOPELLE:  So is it okay then if we have agreed,
2:32:50  5    either side we've agreed on something, we don't have to go
2:32:52  6    through the whole rigmarole --
2:32:55  7              THE COURT:  Just tell me pursuant to agreement, I offer
2:33:01  8    10, 12, 14, and I will let them all in at the same time.  I do
2:33:06  9    need an updated exhibit list every day because I know that
2:33:08  10   things change.  So I need to have one from the day before with
2:33:11  11   everything that's on it that's it in, and I'll keep track of
2:33:15  12   what comes in and what doesn't, but I have to have an accurate
2:33:17  13   exhibit list in order to do that.
2:33:18  14             MR. RIOPELLE:  Understood, Your Honor.
2:33:24  15             Normal court days.  When do you start, when do you take
2:33:24  16   --
2:33:27  17             THE COURT:  Normally we start at 9:30, break once
2:33:30  18   during the morning, break at lunch.  As you know, I have a lot
2:33:34  19   of other cases going on, so I almost always have little hearings
2:33:38  20   like the one that just ended, which almost always end up to be
2:33:44  21   medium-sized hearings.  And so if I have a long hearing, I'll
2:33:49  22   take a break at, you know, a little before noon and we'll break
2:33:53  23   until about 1:30.  I try to break for about 90 minutes so that
2:33:57  24   the jury can get out of this building and not have to eat on the
2:34:03  25   7th floor, and that 90 minutes can be from 12 to 1:30 or from
```

| | | |
|---|---|---|
| 2:34:08 | 1 | 12:30 to 2, or I might go down to an hour if we're getting tight |
| 2:34:14 | 2 | for time, and if we're able to. But we try to break, and then |
| 2:34:18 | 3 | there will be a break in the afternoon and then we'll break for |
| 2:34:21 | 4 | the day at about quarter to 5, unless you have a witness that's |
| 2:34:24 | 5 | going out of town or going to be out of town, or we can finish |
| 2:34:28 | 6 | up and let them go away, in which case I might stretch it a |
| 2:34:31 | 7 | little bit beyond 5, but I don't want them down here too much |
| 2:34:34 | 8 | after 5. The people that live on the street start coming out |
| 2:34:37 | 9 | then. |
| 2:34:39 | 10 | MR. RIOPELLE: Now, that raises one concern with me, |
| 2:34:42 | 11 | Your Honor. I was planning on eating lunch on the 7th floor. |
| 2:34:44 | 12 | Are you not recommending that? |
| 2:34:46 | 13 | THE COURT: No, it's fine. They make four things. By |
| 2:34:51 | 14 | Thursday you will have eaten all of their stuff. It's not as |
| 2:34:55 | 15 | good as they used to be. They cut way back during COVID, and |
| 2:34:59 | 16 | they've never come back. But they're good to have if you have a |
| 2:35:03 | 17 | jury deliberating, because the jury will never want to take too |
| 2:35:11 | 18 | long. But again, Miami-Dade College is a block from here. |
| 2:35:14 | 19 | Where there's kids, there's food, so there's places all around |
| 2:35:15 | 20 | there. |
| 2:35:16 | 21 | MR. RIOPELLE: Good point. Good point. |
| 2:35:21 | 22 | I know that we have to, on Monday, deliver a joint |
| 2:35:25 | 23 | exhibit binder. Just one question, and this may be for somebody |
| 2:35:29 | 24 | else on your staff, we do have some electronic exhibits like |
| 2:35:34 | 25 | videos and the chirp sound. Would the Court like those |

| | |
|---|---|
| 2:35:39 | 1 |
| 2:35:41 | 2 |
| 2:35:48 | 3 |
| 2:35:55 | 4 |
| 2:35:58 | 5 |
| 2:36:00 | 6 |
| 2:36:02 | 7 |
| 2:36:07 | 8 |
| 2:36:15 | 9 |
| 2:36:22 | 10 |
| 2:36:27 | 11 |
| 2:36:29 | 12 |
| 2:36:30 | 13 |
| 2:36:36 | 14 |
| 2:36:39 | 15 |
| 2:36:44 | 16 |
| 2:36:47 | 17 |
| 2:36:50 | 18 |
| 2:36:54 | 19 |
| 2:36:55 | 20 |
| 2:36:57 | 21 |
| 2:36:58 | 22 |
| 2:37:01 | 23 |
| 2:37:01 | 24 |
| 2:37:02 | 25 |

submitted via flash drive or some other medium?

THE COURT:  I'll have to call my grandson to find out how I would like it, but who cares.  Diane, do you care?  Does the clerk's office care?  Jose, do you care?

LAW CLERK:  Flash drive is fine, Judge.

THE COURT:  Flash drive is fine, I've been informed.

MR. RIOPELLE:  Okay.  Then the last question, at least I have on my list Your Honor, is -- this kind of goes back to one of the issues, we may call one or both of the individual Defendants in our case.  Does the Court have a policy or a preference on exhausting witnesses so they don't get called back in, you know, in the defense case?

THE COURT:  I don't have a policy.  I don't have a problem with permitting the other side to use -- call them, and then that just means that there's going to be cross-examination after and then we'll work it out.  But if we can and they're not going to be here the whole time, if they're going to be here we might as well call them in turn.  I don't want to confuse the jury if I can avoid it.  You guys will do a good enough job of that.

MR. RIOPELLE:  We're going to try to put them to sleep by reading all those depositions.

THE COURT:  You will have succeeded, I'm sure.

MR. RIOPELLE:  Thank you, Your Honor.

THE COURT:  Thank you.

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

|          |    |                                                                  |
|----------|----|------------------------------------------------------------------|
| 2:37:08  | 1  | Defense you have some questions or comments?                     |
| 2:37:16  | 2  | MR. SCHWARTZ:  Just I think both sides are probably              |
| 2:37:19  | 3  | going to be moving in a lot of, you know, boxes and equipment    |
| 2:37:24  | 4  | and whatnot.  So for Monday, what's the earliest we can get into |
| 2:37:28  | 5  | the court to do all that kind of stuff?                          |
| 2:37:29  | 6  | THE COURT:  Can somebody tell me from the court                  |
| 2:37:33  | 7  | security?  Diane, do you know?                                   |
| 2:37:37  | 8  | COURTROOM DEPUTY:  Judge, normally around 8:30.                  |
| 2:37:40  | 9  | THE COURT:  About 8:30 you can do it, and there's two            |
| 2:37:44  | 10 | rooms out there, one for either side.  You can leave your stuff  |
| 2:37:47  | 11 | out there or you can leave it in here.  The only thing I ask is  |
| 2:37:51  | 12 | if I have a case involving a prisoner, they're brought in this   |
| 2:37:54  | 13 | door and they use this table, so you'd probably be smart not to  |
| 2:38:01  | 14 | leave your Cross pens and your Patek Philippe watches on the     |
| 2:38:04  | 15 | desk, because they're there for a reason in the jail.  So you    |
| 2:38:08  | 16 | can remove your stuff and actually put it on the side here, the  |
| 2:38:11  | 17 | papers and things.  Or you can put them back in the room, but    |
| 2:38:15  | 18 | just leave a clear work space.  Over here, US attorneys usually  |
| 2:38:20  | 19 | do not pilfer things.  So although I wouldn't leave anything     |
| 2:38:22  | 20 | really valuable on there, you can probably leave your papers and |
| 2:38:30  | 21 | just move them to give them a work space.  Okay?  But by 8:30,   |
| 2:38:34  | 22 | you should be able to get in.  Diane is in the chambers, so you  |
| 2:38:38  | 23 | can beep the chambers and find out from them.                    |
| 2:38:39  | 24 | MR. SCHWARTZ:  All right.  That's all, Your Honor.               |
| 2:38:41  | 25 | THE COURT:  Okay.  All right.                                    |

PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
TRANSCRIPT PRODUCED BY COMPUTER

| | | |
|---|---|---|
| 2:38:43 | 1 | MR. RIOPELLE:  You had said you might get the jury in |
| 2:38:47 | 2 | on Monday.  What time do you want us here on Monday? |
| 2:38:49 | 3 | THE COURT:  I'll let you know later today.  Can you |
| 2:38:53 | 4 | tell us, Diane, what time we're going to have the jury?  Or do |
| 2:38:55 | 5 | you know already? |
| 2:38:57 | 6 | COURTROOM DEPUTY:  I let Liz know, but she couldn't |
| 2:39:01 | 7 | tell me until they start coming in on Monday. |
| 2:39:03 | 8 | THE COURT:  I need them here -- |
| 2:39:07 | 9 | COURTROOM DEPUTY:  She has approximately 120 jurors |
| 2:39:14 | 10 | coming in and there's four judges who are picking trials.  You |
| 2:39:21 | 11 | know, for those jurors.  I'll text her right now. |
| 2:39:25 | 12 | THE COURT:  Text her right now, give her a time and |
| 2:39:27 | 13 | tell a time when they need to be here.  I would say probably |
| 2:39:32 | 14 | likely not before -- clearly not before 10:00.  Don't worry |
| 2:39:35 | 15 | about that.  It takes them that long to line them all up.  So |
| 2:39:39 | 16 | clearly you do not have to be here before 10 a.m.  It could be |
| 2:39:43 | 17 | it might be as late as 11 or so. |
| 2:39:44 | 18 | MR. RIOPELLE:  I'm fine to say, Your Honor, we'll be |
| 2:39:49 | 19 | here at 10 because we don't want to hold anything up. |
| 2:39:52 | 20 | THE COURT:  I do have physical therapy, don't I, Monday |
| 2:39:56 | 21 | Diane?  Okay.  Tuesday and Thursday of next week I have physical |
| 2:40:01 | 22 | therapy at 8 a.m.  I'm finished at 9 a.m., which means I should |
| 2:40:05 | 23 | be here by 9:30, but it's possible it might slide a few minutes. |
| 2:40:06 | 24 | MR. RIOPELLE:  And does physical therapy tend to make |
| 2:40:09 | 25 | you happier or grumpier. |

PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
TRANSCRIPT PRODUCED BY COMPUTER

| | | |
|---|---|---|
| 2:40:14 | 1 | THE COURT:  It makes me extremely grumpy.  No don't do |
| 2:40:17 | 2 | anything important.  No, she's a nice lady.  Makes me feel good |
| 2:40:19 | 3 | or I wouldn't go. |
| 2:40:23 | 4 | Thank you all very much.  Anything else?  Thank you. |
| 2:40:23 | 5 | MR. RIOPELLE:  Thank you, Your Honor. |
| 2:40:28 | 6 | THE COURT:  I'm looking forward to a nice trial. |
| 2:40:31 | 7 | COURT SECURITY OFFICER:  All rise. |
| 2:40:34 | 8 | THE COURT:  Where I learn all about push-to-talk. |
| 2:40:44 | 9 | Whatever that is.  We'll text you in a little while and tell you |
| 2:40:47 | 10 | a little more about when the jury will be here for sure, but |
| 2:40:50 | 11 | 10:00 will be fine. |
| 2:41:24 | 12 | Wait, one more thing.  Can I get everyone's attention |
| 2:41:27 | 13 | for a second?  One more thing.  If you're going to be reading |
| 2:41:31 | 14 | depositions into evidence, are you going to have somebody |
| 2:41:34 | 15 | sitting up here making believe they're the witness and somebody |
| 2:41:37 | 16 | there making believe they're a lawyer? |
| 2:41:37 | 17 | MR. RIOPELLE:  That was the plan. |
| 2:41:40 | 18 | THE COURT:  Okay.  The court reporter can do that, but |
| 2:41:44 | 19 | if you have a transcript of what you're going to read based on |
| 2:41:48 | 20 | our objections and things, it would be very useful if we could |
| 2:41:53 | 21 | use the transcript instead of the -- have her do that. |
| 2:41:53 | 22 | MR. RIOPELLE:  Sure. |
| 2:41:56 | 23 | THE COURT:  Her little fingers will get worn out, and I |
| 2:42:00 | 24 | love to take care of my court reporter because she's very good. |
| 2:42:03 | 25 | Okay?  So think about that.  If you have a transcript, it would |

| | | |
|---|---|---|
| 2:42:07 | 1 | be wonderful.  If you don't, we'll get by.  We'll just have her |
| 2:42:07 | 2 | -- |
| 2:42:10 | 3 | MR. RIOPELLE:  Oh, no.  We'll make sure.  And you said |
| 2:42:13 | 4 | you've gone through them.  Have you ruled? |
| 2:42:15 | 5 | THE COURT:  I've ruled on one of them.  I will get that |
| 2:42:18 | 6 | order out -- when can we get that out, this afternoon?  That |
| 2:42:21 | 7 | will be out this afternoon.  The other one, the shorter one, |
| 2:42:24 | 8 | will probably be Monday before I can get it out. |
| 2:42:27 | 9 | MR. RIOPELLE:  That's fine.  We'll be going first and |
| 2:42:30 | 10 | we don't plan on putting any deposition testimony on on Monday. |
| 2:42:32 | 11 | THE COURT:  Okay.  Well, we'll have it to you by Monday |
| 2:42:34 | 12 | by the time the jury is selected. |
| 2:42:35 | 13 | MR. RIOPELLE:  Thank you. |
| 2:42:38 | 14 | THE COURT:  We'll work on it over the weekend.  It was |
| 2:42:42 | 15 | so much fun last night.  My wife couldn't figure out why I |
| 2:42:45 | 16 | wasn't watching what she was watching. |
| 2:42:45 | 17 | (PROCEEDINGS CONCLUDED) |

**C E R T I F I C A T E**

I certify that the foregoing is a correct transcript from the
record of proceedings in the above-entitled matter.

4/8/2022                    /s/ Dawn M. Savino, R.P.R., C.R.R.
Date                            DAWN M. SAVINO, R.P.R., C.R.R.

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
TRANSCRIPT PRODUCED BY COMPUTER**