# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### FT. LAUDERDALE DIVISION

SPRINT COMMUNICATIONS, LLC,

      Plaintiff/Counterclaim Defendant,

v.

STEPHEN CALABRESE, as an individual,
NEXTEL, INC. d/b/a NEXTEL
WORLDWIDE, RETROBRANDS USA
LLC, JEFFREY KAPLAN, as an individual,
and NEXTEL MOBILE WORLDWIDE
INC,

      Defendants/Counterclaimants.

Case No. 0:18-cv-60788-JEM-LSS

Jury Trial Demanded

_____

## SPRINT'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR JNOV; MOTION TO AMEND THE JUDGMENT; AND MOTION FOR A NEW TRIAL

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. iii

A.  The Judgment Should Not be Amended to Say that Defendants "Prevailed" on
    Claims Regarding the NEXTEL Services Registration (1,637,139). .............................. 1

B.  Sprint Is Entitled to Recover $4,500,000 in Damages. .................................................. 3

    1.  Sprint Is Entitled to Recover Statutory Damages. ................................................. 3
    2.  The Record Supports the Jury's Finding that Defendants Earned $400,000
        in Profits. .................................................................................................................. 4
    3.  Defendants Are Jointly and Severally Liable for the Damages Here. ................... 6

C.  The Jury's Findings on Abandonment, Fame of the NEXTEL Mark, and
    Cybersquatting Are Supported By the Evidence. ............................................................ 7

    1.  Abandonment of NEXTEL .................................................................................... 7
    2.  Cybersquatting Claims .......................................................................................... 9
    3.  Fame of NEXTEL Mark ...................................................................................... 10

D.  The Court's Evidentiary Rulings Do Not Warrant a New Trial. ................................... 11

    1.  The Court Properly Instructed the Jury on Mr. Calabrese's Felony
        Conviction. ............................................................................................................ 12
    2.  The Court Did Not Err in Denying Defendants' Request for Jose Rivera to
        Testify. .................................................................................................................. 13

E.  The Court Did Not Clearly Err in Granting Judgment to Sprint on the Tort
    Counterclaims (Counts V and VI). ................................................................................ 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Arthur v. King*,
  500 F.3d 1335 (11th Cir. 2007) ...............................................................................1

*Beckwith v. City of Daytona Beach Shores*,
  58 F.3d 1554 (11th Cir. 1995) ...............................................................................7

*Bonner v. City of Prichard*,
  661 F.2d 1206 (11th Cir. 1981) (*en banc*) .........................................................11

*Chanel, Inc. v. Italian Activewear of Fla., Inc.*,
  931 F.2d 1472 (11th Cir. 1991) ..............................................................................6

*City of Carlsbad v. Shah*,
  850 F. Supp. 2d 1087 (S.D. Cal. 2012) ...................................................................1

*Del Rio Dist. v. Adolph Coors Co.*,
  589 F.2d 176 (5th Cir. 1979) ................................................................................11

*Effs v. Sony Pictures Home Ent., Inc.*,
  No. 13-22843-CIV, 2015 WL 11201190 (S.D. Fla. Mar. 24, 2015) ........................1

*Feltner v. Columbia Pictures Television, Inc.*,
  523 U.S. 340 (1998)................................................................................................4

*Fronto King, LLC v. Five A Trading, Inc.*,
  No. 1:15-CV-1668-TCB, 2017 WL 11633801 (N.D. Ga. Nov. 2, 2017) .................5

*FSC Franchise Co., LLC v. Express Corp. Apparel, LLC*,
  No. 8:09-CV-454-T-23TGW, 2011 WL 1226002 (M.D. Fla. Feb. 28, 2011).........6

*Hurry Family Revocable Trust v. Frankel*,
  No. 8:18-CV-2869-CEH-CPT, 2022 WL 874687 (M.D. Fla. Mar. 24, 2022) .........3

*Jackson v. Grupo Indus. Hotelero, S.A.*,
  No. 07-22046-CIV, 2009 WL 8634834 (S.D. Fla. Apr. 29, 2009)...........................6

*Johansen v. Combustion Eng'g, Inc.*,
  170 F.3d 1320 (11th Cir.1999) ...............................................................................3

*Knight through Kerr v. Miami-Dade County*,
  856 F.3d 795 (11th Cir. 2017) ..............................................................................12

*Lawson v. Plantation Gen. Hosp., L.P.*,
    No. 08-61826-CIV, 2010 WL 11504835 (S.D. Fla. May 3, 2010)........................................14

*Lipphardt v. Durango Steakhouse of Brandon, Inc.*,
    267 F.3d 1183 (11th Cir. 2001) ....................................................................................7, 11

*Monsanto Co. v. Campuzano*,
    206 F. Supp. 2d 1239 (S.D. Fla. 2002) ................................................................................7

*Munoz v. Oceanside Resorts, Inc.*,
    223 F.3d 1340 (11th Cir. 2000) ..........................................................................................11

*Outside the Box Innovs., LLC v. Travel Caddy, Inc.*,
    695 F.3d 1285 (11th Cir. 2012) ..........................................................................................16

*Redd v. City of Phenix City, Ala.*,
    934 F.2d 1211 (11th Cir. 1991) ............................................................................................3

*Roof & Rack Prod., Inc. v. GYB Invs., LLC*,
    No. 13-80575-CV, 2014 WL 12452453 (S.D. Fla. June 3, 2014) ..........................................2

*Rosenberg v. Am. Bowling Cong.*,
    589 F. Supp. 547 (M.D. Fla. 1984)......................................................................................16

*Rosenfield v. Wellington Leisure Prods., Inc.*,
    827 F.2d 1493 (11th Cir. 1987) ............................................................................................3

*Shannon v. Bellsouth Telecomms., Inc.*,
    292 F.3d 712 (11th Cir. 2002) ..........................................................................................7, 9

*Simon v. Shearson Lehman Bros., Inc.*,
    895 F.2d 1304 (11th Cir. 1990) ............................................................................................3

*Tally-Ho, Inc. v. Coast Cmty. College Dist.*,
    889 F.2d 1018 (11th Cir. 1989) ............................................................................................9

*Tana v. Dantanna's*,
    611 F.3d 767 (11th Cir. 2010) ..............................................................................................1

*Tiramisu Int'l LLC v. Clever Imports LLC*,
    741 F. Supp. 2d 1279 (S.D. Fla. 2010) .................................................................................6

*TracFone Wireless, Inc. v. SND Cellular, Inc.*,
    715 F. Supp. 2d 1246 (S.D. Fla. 2010) .................................................................................6

*United States v. Burston*,
    159 F.3d 1328 (11th Cir. 1998) ..........................................................................................12

*United States v. Horton*,
   622 F.2d 144 (5th Cir. 1980) ...................................................................................16

*Webb-Edwards v. Orange Cnty. Sheriff's Off.*,
   525 F.3d 1013 (11th Cir. 2008) ...............................................................................15

*WMS Gaming, Inc. v. WPC Prods. Ltd.*,
   542 F.3d 601 (7th Cir. 2008) .....................................................................................6

*Z Productions, Inc. v. SNR Productions, Inc.*,
   No. 8:10-cv-966-T-23MAP, 2011 WL 3754693 (M.D. Fla. Aug. 18, 2011) .........15

**Statutes**

15 U.S.C. § 1117(a) ............................................................................................................5

15 U.S.C. § 1125(d) ............................................................................................................9

15 U.S.C. § 1127 .................................................................................................................8

Fla. Stat. § 501.204 ............................................................................................................1

**Rules**

Fed. R. Civ. P. 50(a)(1) ......................................................................................................7

Fed. R. Civ. P. 50(a)(2) ..................................................................................................7, 15

Fed. R. Civ. P. 59(a)(1)(A) ..............................................................................................11

Federal Rule of Evidence 609 ..........................................................................................12

Rule 41(a)(2) ..................................................................................................................2, 3

Rule 50 ................................................................................................................................9

Rule 50(a) ......................................................................................................................2, 15

Rule 50(b) ...................................................................................................................7, 9, 11

Rule 59(a) ..........................................................................................................................11

Rule 59(e) ............................................................................................................................1

The issues in this motion (ECF No. 327) are not new to the Court.  Defendants, unhappy with the result of the five-day trial wherein the jury returned a verdict entirely in Sprint's favor, now put forth various arguments asking the Court for another chance at their case.  They request a new trial on damages, judgment notwithstanding the verdict on a number of claims and issues decided by the jury, and challenge other trial rulings.

Defendants' arguments are almost entirely without merit.  Sprint recognizes and concedes that the $9.7 million jury verdict must be reduced under the Lanham Act, as explained below.  The other arguments raised by Defendants here should be rejected and the motion denied.

## A.    The Judgment Should Not be Amended to Say that Defendants "Prevailed" on Claims Regarding the NEXTEL Services Registration (1,637,139).

Because Sprint's U.S. Registration No. 1,627,139 for the NEXTEL mark for telecommunication services ("'139 registration") was not active at the time this case went to trial, Sprint chose not to pursue its claims based on the '139 registration.  *See* Trial Tr. vol. 3 (ECF No. 321) at 73-74 (Apr. 13, 2022).  Following the jury's verdict, the Court issued the final judgment, which was silent with respect to the '139 registration.  *See* Final Judgment (ECF No. 310). Defendants argue that the Court's final judgment must be amended under Rule 59(e) to state that Defendants "prevailed on all claims for Federal trademark counterfeiting, Federal trademark infringement, Federal unfair competition and false designation of origin, Federal trademark dilution, cybersquatting, Florida Deceptive and Unfair Trade Practices Act, and common law false designation and unfair competition asserted against them with respect to [the '139 registration]."  (Defendants' Brief (ECF No. 327) ("Br.") at 9.)  But a judgment may only be amended under Rule 59(e) to account for newly discovered evidence or to correct manifest errors of law or fact.  *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007).  Defendants do not meet this standard here.

Sprint's claims for federal and common law unfair competition and false designation of origin (Counts III and VII), federal trademark dilution (Count IV), cybersquatting (Count V), and state deceptive and unfair trade practices (Count VI) were based on Sprint's common law rights, not on the '139 registration.  These claims do not require that the plaintiff own a federal registration.  *See Tana v. Dantanna's*, 611 F.3d 767, 773 (11th Cir. 2010) (unfair competition claims can be based on common law rights); *Effs v. Sony Pictures Home Ent., Inc.*, No. 13-22843-CIV, 2015 WL 11201190, at *3 (S.D. Fla. Mar. 24, 2015) (dilution claim may be based on common law trademark rights); *City of Carlsbad v. Shah*, 850 F. Supp. 2d 1087, 1103 (S.D. Cal. 2012) (highlighting that a federal cybersquatting claim can be based on an unregistered mark); Fla. Stat.

§ 501.204 (statutory provision applicable to Sprint's state deceptive and unfair trade practices claim does not require a trademark registration).  Sprint has consistently maintained that it owns common law rights to NEXTEL in connection with telecommunication services, and Sprint introduced evidence that proved those rights at trial.  *See* Amended Complaint (ECF No. 80) at 32-33 (operative amended complaint, claiming common law unfair competition based on Defendants' use of NEXTEL with both goods and services); Trial Tr. vol. 2 (ECF No. 298) at 111:15-17, 119:9-25, 124:8-23 (Apr. 12, 2022) (S. Wiley testifying as to Sprint's use of NEXTEL in connection with telecommunications services).  Therefore, Sprint's decision not to argue the '139 registration to the jury has no bearing on the jury's finding that Defendants were liable for Sprint's claims of federal and common law unfair competition and false designation of origin (Counts III and VII), federal trademark dilution (Counts IV), cybersquatting (Count V), and state deceptive and unfair trade practices (Count VI).  Indeed, Defendants did not prevail on these claims.

Nor did Defendants prevail on Sprint's counterfeiting (Count I) and federal trademark infringement (Count II) claims based on the '139 registration.  Critically, Sprint chose not to present the '139 registration to the jury.  In addressing Defendants' Rule 50(a) motion, the Court confirmed that Sprint "is dropping their claim[s]" specifically related to the '139 registration and ruled only that Defendants "won to the extent that [']139 will not be argued to the jury." Trial Tr. vol. 3 (ECF No. 321) at 73-74 (Apr. 13, 2022).  The merits of the claims concerning the '139 registration were never reached, and Defendants should not receive a judgment incorrectly stating that they prevailed on the merits of these claims or that any judicial determination or findings have been made regarding the '139 registration.  *See Roof & Rack Prod., Inc. v. GYB Invs., LLC*, No. 13-80575-CV, 2014 WL 12452453, at *2 (S.D. Fla. June 3, 2014), report and recommendation adopted, No. 13-80575-CV, 2014 WL 12452454 (S.D. Fla. June 24, 2014) (stating that where a party voluntarily dismisses a claim, "there is neither a ruling on the merits nor a change in the legal relationship between the parties").

Given Sprint's statements at trial that it was not taking its claims related to the '139 registration to the jury, this Court should properly construe this as a request to dismiss the aspects of Sprint's claims for counterfeiting (Count I) and federal trademark infringement (Count II) based on the '139 registration.  If the Court is inclined to add specificity to the record regarding the status of those claims, the Court should enter an order dismissing those claims pursuant to Rule 41(a)(2).

*See Hurry Family Revocable Trust v. Frankel*, No. 8:18-CV-2869-CEH-CPT, 2022 WL 874687, at *1 (M.D. Fla. Mar. 24, 2022) (where defendant at trial represented to the court that it would not pursue counterclaim to the jury and no prejudice was caused to plaintiff, court ruled that the counterclaim was dismissed pursuant to Rule 41(a)(2)).

**B.      Sprint Is Entitled to Recover $4,500,000 in Damages.**

The jury awarded Sprint damages on all claims, totaling $9,700,000.  *See* Jury Verdict (ECF No. 309); Final Judgment (ECF No. 310).  Defendants argue that this damage award must be reduced down to $38,758.75, on the grounds that the jury could only reasonably find $38,758.75 in disgorgement damages, and that Sprint may not recover statutory damages.  They further argue that Defendants should not be jointly liable for the damages award.

Defendants' request for a new trial on damages rests within the discretion of the Court, which must determine whether the award is excessive and shocking to the conscience.  *See Simon v. Shearson Lehman Bros., Inc.*, 895 F.2d 1304, 1310 (11th Cir. 1990).  If the Court believes the jury's verdict is excessive, it may order a new trial unless the plaintiff agrees to remit a portion of the jury's award.  *Johansen v. Combustion Eng'g, Inc.*, 170 F.3d 1320, 1328 (11th Cir.1999).  However, "[t]he district judge should not substitute his own credibility choices and inferences for the reasonable credibility choices and inferences made by the jury."  *Redd v. City of Phenix City, Ala.*, 934 F.2d 1211, 1215 (11th Cir. 1991) (citing *Rosenfield v. Wellington Leisure Prods., Inc.*, 827 F.2d 1493, 1498 (11th Cir. 1987)).  "When there is some support for a jury's verdict, it is irrelevant what … the district judge would have concluded."  *Id.*

As an initial matter, Sprint agrees that the Lanham Act does not permit a plaintiff to recover duplicative damages awards, and that Sprint must select between recovering statutory damages on its counterfeiting and cybersquatting claims, or recovering disgorgement of Defendants' profits on Sprint's infringement, unfair competition, and dilution claims.  Sprint, however, is entitled to choose which of the possible damages awards it will elect and chooses the award of statutory damages.  Consequently, and applying the proper standards here, the evidence at trial supports that the Defendants should be jointly and severally liable for an award of $4,500,000 to Sprint.

1.      *Sprint Is Entitled to Recover Statutory Damages.*

Defendants argue that Sprint cannot recover the $4,500,000 in statutory damages that the jury collectively awarded for Sprint's counterfeiting and cybersquatting claims because Sprint argued for both actual and statutory damages at trial.  (Br. at 12-13.)  This is incorrect.  Here,

Sprint has properly elected statutory damages.[1]  As Defendants acknowledge in their brief, Sprint included a request for statutory damages in its pleadings for these claims.  *See* Amended Complaint (ECF No. 80) at 45, ¶ E.  At trial, Sprint argued for both statutory damages and disgorged profits because the jury was deciding both liability and damages during the same deliberations.  As such, Sprint could not know whether it would only prevail on one or more of its counterfeiting and cybersquatting claims, which would give rise to statutory damages, or whether it would only prevail on one or more of its claims for infringement, unfair competition, and dilution, which would give rise to disgorged profits.  Hence, Sprint's request at trial for statutory damages and disgorgement on the respective claims did not preclude Sprint's post-trial election of the statutory damages remedy.  *See, e.g.*, *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 347 n.5 (1998) (construing identical language in Copyright Act concerning election of damages and stating that a plaintiff may receive a jury verdict containing both actual and statutory damages, and then subsequently elect which to recover).

2.  *The Record Supports the Jury's Finding that Defendants Earned $400,000 in Profits*.[2]

Defendants first argue that the jury's findings as to their profits are not supported by the record, asking the Court to modify the judgment.  The jury's verdict awarded Sprint the Defendants' profits on multiple of the claims in this case:  the responses to Questions 4, 6, 8, 14, and 16 each contain damages awards based on Defendants' profits.  *See* Verdict Form (ECF No. 309); *see also* Jury Instructions (ECF No. 307) at 16-17, 22-23 (instructions on damages possible for trademark infringement, unfair competition, false designation of origin, and dilution claims).

---

[1] The Court should summarily reject Defendants' flawed argument that Sprint "is not entitled to statutory damages" because it did not elect statutory damages "before the Court entered its final judgment." (Br. at 14.)  The case they cite does not support the proposition that a court's entry of a final judgment before a plaintiff has made its election of remedies invalidates a jury verdict awarding such remedies and waives the plaintiff's right to make its election.  Sprint never waived its right to elect its remedy and has properly elected its remedy of statutory damages.  Regardless, any claim that Sprint has failed to elect its remedy is mooted by Sprint's response agreeing to remittitur of the award of profits.

[2] As explained above, Sprint agrees that it may not recover both statutory damages for counterfeiting and disgorgement of Defendants' profits.  Because Sprint is electing to recover statutory damages, Sprint agrees that the final judgment should not include an award of disgorged profits.  Sprint is nevertheless responding to Defendants' arguments about the calculation of Defendants' profits because Defendants are also arguing that Sprint cannot recover statutory damages.

Finding Defendants liable on all claims, the jury also entered monetary amounts of $400,000 and $2,000,000 in response to Questions 4, 6, 8, 14, 16.  Defendants maintain that the jury's calculation of their profits—the amount to be disgorged—is contrary to the weight of the evidence and ask the Court to modify the judgment.  (Br. at 10-12.)

As an initial matter, Sprint agrees that the record does not support the jury's verdict granting $2,000,000 awards in response to Questions 4 and 6.[3]  Those awards should each be reduced to $400,000, which is the amount of Defendants' profits that the jury found in response to Questions 8, 14, and 16, and which is supported by the evidence.

The evidence at trial supported the jury's finding that Defendants' profits amounted to $400,000.  Specifically, Mr. Kaplan testified that he received $40-$50,000 in royalty payments, and his royalty rate was 10% of the net revenue.  *See* Tr. Trans. vol. 5 (ECF No. 323) at 108 (Apr. 14, 2022).  The licensing agreement between Mr. Kaplan and Mr. Calabrese confirms this financial arrangement of Mr. Kaplan receiving 10% of the revenues as royalty payments.  *See* Joint Ex. 117 (ECF No. 314-39) at 4 (Defendants' licensing agreement setting out royalty payment structure wherein Kaplan would receive 10% of net revenues on NEXTEL goods and services).  Based on this evidence regarding the royalty arrangement and Mr. Kaplan's testimony that he has received $40-$50,000 in these payments, the jury had a reasonable basis to find that the total revenues Defendants earned were $400-$500,000.  That determination cannot be disturbed given that there is a reasonable basis for the jury's finding here.  *See Fronto King, LLC v. Five A Trading, Inc.*, No. 1:15-CV-1668-TCB, 2017 WL 11633801, at *3 (N.D. Ga. Nov. 2, 2017) ("Viewing the evidence in the light most favorable to Fronto King, as the Court must do at this stage, the Court concludes that there is a legally sufficient evidentiary basis for a reasonable jury to have awarded Fronto King $250,000 in profits[.]").

Defendants further complain that Sprint only presented evidence of Defendants' revenues and did not show the jury evidence of expenses that could be deducted in calculating profits.  The Lanham Act lays out a shifting burden of proof: the plaintiff bears the burden of proving revenue, while the *defendants* bear the burden of proving expenses.  15 U.S.C. § 1117(a) ("…In assessing

---

[3] Sprint believes that the jury erroneously entered those amounts and had intended to award multiple awards of statutory damages on Sprint's NEXTEL counterfeiting claim, as the record evidence supported multiple $2 million awards of statutory damages, as Defendants used the counterfeit NEXTEL on several different types of goods.

profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed. …").  The onus of proving expenses was on Defendants— not on Sprint.  Defendants did not present any evidence concerning expenses, and they cannot now complain after the trial that their failure to present evidence is somehow Sprint's fault or use this failure as grounds to obtain relief.  *See FSC Franchise Co., LLC v. Express Corp. Apparel, LLC*, No. 8:09-CV-454-T-23TGW, 2011 WL 1226002, at *7 (M.D. Fla. Feb. 28, 2011), report and recommendation adopted, No. 8:09-CV-454-T-23TGW, 2011 WL 1153840 (M.D. Fla. Mar. 29, 2011) ("When 'the infringer fails to carry its statutory burden to offer evidence of deductions, the plaintiff's entitlement to profits under the Lanham Act is equal to the infringer's gross sales.'" (quoting *WMS Gaming, Inc. v. WPC Prods. Ltd.*, 542 F.3d 601, 609 (7th Cir. 2008))); *Tiramisu Int'l LLC v. Clever Imports LLC*, 741 F. Supp. 2d 1279, 1290 (S.D. Fla. 2010) ("Because the Lanham Act squarely places the burden on the infringer to prove deductions, any doubts about the actual amount of gross sales or profits will be resolved against the infringing party." (internal quotation marks omitted)).

The jury's finding that Defendants' profits related to the conduct at issue in this case amounted to $400,000 therefore should not be disturbed.

3.  *Defendants Are Jointly and Severally Liable for the Damages Here.*

Finally, Defendants submit that they should not be jointly and severally liable for the damages awarded to Sprint.  (Br. at 12.)  They request that, instead, the damages be apportioned between the Defendants, with Mr. Calabrese and Nextel, Inc. responsible for a different (and higher) amount than Mr. Kaplan and his businesses Retrobrands and Nextel Mobile Worldwide. (*Id.*)

Joint and several liability applies in trademark cases.  *See, e.g.*, *TracFone Wireless, Inc. v. SND Cellular, Inc.*, 715 F. Supp. 2d 1246, 1253 (S.D. Fla. 2010) (finding defendants jointly and severally liable for damages on trademark and unfair competition claims); *Jackson v. Grupo Indus. Hotelero, S.A.*, No. 07-22046-CIV, 2009 WL 8634834, *10 (S.D. Fla. Apr. 29, 2009) ("Each of the Defendants is jointly and severally liable to the Plaintiff for the actual damages Plaintiff suffered due to the willful infringements by the Defendants.").  The Defendants here were working together on their NEXTEL-related ventures and, notably, the jury found each of the individual Defendants liable on all of Sprint's claims.  *See* Jury Verdict (ECF No. 309).  "If an individual actively and knowingly caused the trademark infringement, he is personally responsible."  *Chanel,*

*Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991).  Consequently, the Defendants share the responsibility for paying Sprint's judgment.  *Monsanto Co. v. Campuzano*, 206 F. Supp. 2d 1239, 1247 (S.D. Fla. 2002) ("Trademark infringement is a tort, and any member of the distribution chain is liable as a joint tort-feasor.").

**C.     The Jury's Findings on Abandonment, Fame of the NEXTEL Mark, and Cybersquatting Are Supported By the Evidence.**

Defendants renew their prior motions for judgment as a matter of law under Rule 50(b) on three grounds.  They assert that no reasonable jury could have found: (1) Sprint has not abandoned NEXTEL; (2) Defendants engaged in cybersquatting; and (3) NEXTEL is a famous trademark under the Lanham Act.  (Br. at 15-19.)  And based on those arguments, Defendants ask that the Court enter judgment in Defendants' favor on the corresponding claims.

Federal Rule of Civil Procedure 50(a)(2) provides that a party may move for judgment as a matter of law "before the case is submitted to the jury."  Fed. R. Civ. P. 50(a)(2).  "The motion must specify the judgment sought and the law and facts that entitle the movant to the judgment." *Id.*  If that motion is denied, the movant may file "a renewed motion" under Rule 50(b) after trial.  Fed. R. Civ. P. 50(b).  The renewed motion may only seek relief on the grounds articulated in the preverdict motion.  *See* Fed. R. Civ. P. 50(b) advisory committee notes for 2006 amendment.  The question before a district court confronting a renewed Rule 50(b) motion is whether the evidence is "legally sufficient ... to find for the party on that issue."  Fed. R. Civ. P. 50(a)(1).  In evaluating the sufficiency of the evidence, "the court must evaluate all the evidence, together with any logical inferences, in the light most favorable to the non-moving party."  *Beckwith v. City of Daytona Beach Shores*, 58 F.3d 1554, 1560 (11th Cir. 1995).  Importantly, "[i]t is the jury's task—not [the court's]—to weigh conflicting evidence and inferences, and determine the credibility of witnesses."  *Shannon v. Bellsouth Telecomms., Inc.*, 292 F.3d 712, 715 (11th Cir. 2002) (quoting *Lipphardt v. Durango Steakhouse of Brandon, Inc.*, 267 F.3d 1183, 1186 (11th Cir. 2001)).

Applying this standard to Defendants' renewed motion for judgment as a matter of law here, this motion must be denied.

1.     *Abandonment of NEXTEL*

The jury found that Sprint has not abandoned its NEXTEL Mark.  *See* Jury Verdict (ECF No. 309) at 8 (response on verdict form to Question 17 finding specifically that Sprint has not abandoned NEXTEL).  Defendants argue that the Court must find that Sprint abandoned the NEXTEL Mark and dismiss Sprint's claims for infringement of that Mark.  (Br. at 17.)

Defendants' position here is that, from the evidence at trial, no reasonable jury could find that Sprint has not abandoned its rights in NEXTEL. (*Id.* at 15-17.)

The jury's verdict on abandonment should not be disturbed because the jury had more than sufficient grounds to find that Sprint has continuously used its NEXTEL Mark with both mobile devices and services, and therefore has not abandoned NEXTEL. Defendants push a narrow definition of what conduct constitutes "use" of a trademark, urging that Sprint could only have "used" NEXTEL if the mark was actually printed on the physical device. (Br. at 17.) But the Lanham Act specifically defines what constitutes "use in commerce" for goods and services. With goods, use occurs "when [a mark] is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto … ." 15 U.S.C. § 1127. With respect to services, a mark is used "when it is used or displayed in the sale or advertising of services." *Id.*

Defendants say that the only evidence at trial showing use of NEXTEL by Sprint were a Sonim box and two CAT phone boxes. (Br. at 17 (citing Trial Exs. 10, 38, 125, 126).) Defendants' theory at trial was that Sprint did not use NEXTEL after 2013 until just recently, when those CAT phones were introduced—that is, that there was a nearly ten-year gap in Sprint's use of NEXTEL. Trial Tr. vol. 8 (ECF No. 326) at 44-47 (Apr. 18, 2022) (Defendants' closing argument taking the position that Sprint did not use NEXTEL after 2013 until it introduced CAT phones recently). But a full view of the record shows that Sprint put on many pieces of evidence showing Sprint's continuous use of NEXTEL on goods and services, including:

- Testimony from Brent Kohman that Sprint continued using NEXTEL after network changes were made in 2013 (Trial Tr. vol. 2 (ECF No. 298) at 73-74 (Apr. 12, 2022));

- Testimony from Scott Wiley that he uses NEXTEL to sell Sprint's push-to-talk devices and services at trade shows and in business to business meetings (Trial Tr. vol. 2 (ECF No. 298) at 110-112; 119-120 (Apr. 12, 2022));

- Testimony from Tom Shaughnessy that Sprint has used NEXTEL continuously, including since 2013, and has never intended to stop using NEXTEL (Trial Tr. vol. 3 (ECF No. 321) at 31, 35-39 (Apr. 13, 2022));

- Marketing materials used by Sprint at the IWCE conventions in 2017, 2018, and 2019 where the NEXTEL mark was used in advertising Sprint's push to talk goods and services (Trial Exs. 30, 32, 33, 41A (ECF Nos. 314-6, 314-7, 314-8, 314-11)); and

- Examples of a sales presentation used by Sprint to market its NEXTEL goods and services to businesses (Trial Exs. 27, 52 (ECF Nos. 314-5, 314-14)).

From this evidence, the jury reasonably determined that Sprint had not abandoned the NEXTEL Mark.  Defendants' motion must be denied.  *See Shannon*, 292 F.3d at 715 (the jury, not the Court, weighs conflicting evidence and inferences, and the Court should not second-guess the jury on a Rule 50 motion "[i]f reasonable jurors could reach different results").

2. *Cybersquatting Claims*

Defendants argue that the jury had no basis to find Defendants liable for cybersquatting under 15 U.S.C. § 1125(d), relying again on their argument that Sprint abandoned NEXTEL.  (Br. at 12-13.)   Because Defendants' abandonment argument lacks merit, their argument on cybersquatting similarly fails.

Defendants further suggest that the cybersquatting verdict was contrary to law because Sprint did not prove that the URLs at issue "were identical or confusingly similar to the Nextel marks."  (*Id.* at 12.)  Initially, Defendants cannot properly assert this argument because they did not make this argument prior to the verdict.  *See* Fed. R. Civ. P. 50(b) advisory committee notes for 2006 amendment ("Because the Rule 50(b) motion is only a renewal of the preverdict motion, it can be granted only on grounds advanced in the preverdict motion.  The earlier motion informs the opposing party of the challenge to the sufficiency of the evidence and affords a clear opportunity to provide additional evidence that may be available.  The earlier motion also alerts the court to the opportunity to simplify the trial by resolving some issues, or even all issues, without submission to the jury.").

Even if Defendants could properly make this argument on a renewed motion for judgment as a matter of law, this argument fails.  First, it misstates the law because liability attaches if the domains are identical, confusingly similar, or *likely to dilute* Sprint's marks—and dilution does not require a likelihood of confusion.  *See* Jury Instructions (ECF No. 307) at 24; *Tally-Ho, Inc. v. Coast Cmty. College Dist.*, 889 F.2d 1018, 1024 (11th Cir. 1989) ("[D]ilution analysis is fundamentally different from infringement analysis.").  Defendants' argument lacks merit because it brushes by the dilution aspect.  Second, the jury was reasonable in finding that the five domains at issue were likely to cause confusion and were likely to dilute the NEXTEL Marks.  Each of the

domains at issue here[4] prominently uses NEXTEL, and the jury's findings on cybersquatting are consistent with its separate findings that Defendants' activities were likely to cause confusion and to dilute Sprint's NEXTEL Marks.  *See* Jury Verdict (ECF No. 308).  Defendants have no plausible basis (and offer none in their brief) that no reasonable jury could find Defendants liable for cybersquatting, and their motion should be denied.

>        3.    *Fame of NEXTEL Mark*

Defendants' final ground for their renewed motion for judgment as a matter of law attacks the jury's finding that the NEXTEL Mark is famous.  The jury ruled Defendants' actions were likely to dilute Sprint's NEXTEL Mark, which required the jury to first find that NEXTEL is famous under the Lanham Act.  *See* Jury Instructions (ECF No. 307) at 20 (claim for dilution requires proof that the subject mark is "famous"); Jury Verdict (ECF No. 309) (finding Defendants liable for dilution claim).  Defendants now argue that judgment should be entered in their favor on dilution because, they assert, "Sprint introduced absolutely no evidence that Nextel is a famous mark."  (Br. at 19.)

Defendants' sole argument that NEXTEL is not famous is that NEXTEL is a sub-brand within Sprint's business.  (*Id.* at 18-19.)  However, Defendants never articulate why a sub-brand cannot be famous.  The record clearly shows that the jury had a reasonable basis to find that NEXTEL is famous.  In fact, Mr. Kaplan and Mr. Calabrese (the named defendants and principals of the corporate defendants) *both* testified that NEXTEL is famous.[5]  Their licensing agreement

---

[4] The domain names at issue in the cybersquatting claim include:
- Nextelworldwide.com
- Nextelisback.com
- Nextelmobileworldwide.com
- Getnextel.com
- Nextelmobile.com

[5] Defendants introduced testimony from Mr. Calabrese through his deposition, where he testified as follows:

>        Q.    Would you consider Nextel a famous brand?
>        A.    What do you mean by famous?
>        Q.    Well-known?
>        A.    Yes.

Trial Tr. vol. 5 (ECF No. 323) at 35 (Apr. 14, 2022).

Mr. Kaplan testified during trial that NEXTEL is "famous and iconic" because Sprint and its predecessor Nextel Communications (not Defendants) had made that Mark famous and iconic by

related to NEXTEL refers to this Mark as a "famous and iconic trademark." *See* Trial Ex. 117 (ECF No. 314-39) at 17.  This evidence was echoed by other witnesses, such as Tom Shaughnessy, who testified about NEXTEL: "There's a long history of excellent service, and it's a famous mark. It's a well-known mark that we own and continue to use."  Trial Tr. vol. 5 (ECF No. 323) at 84-85 (Apr. 14, 2022).  From this, the jury had a more than reasonable basis to find that NEXTEL is a famous mark, and its verdict should not be disturbed.  *See Munoz v. Oceanside Resorts, Inc.*, 223 F.3d 1340, 1344-45 (11th Cir. 2000) (motion under Rule 50(b) must be denied if a reasonable jury could arrive at the verdict).

**D.      The Court's Evidentiary Rulings Do Not Warrant a New Trial.**

Defendants argue that the Court should order a new trial based on: (1) the jury hearing evidence that Mr. Calabrese is a convicted felon; and (2) the Court's ruling that Defendants could not call Jose Rivera as a witness in their case.

A court may grant a new trial pursuant to Rule 59(a) after a jury trial, "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A).  "Courts do not grant new trials unless it is reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done, and the burden of showing harmful error rests on the party seeking the new trial." *Del Rio Dist. v. Adolph Coors Co.*, 589 F.2d 176, 179 n.3 (5th Cir. 1979).[6]  When the grounds for a Rule 59(a) motion arise from evidentiary issues (as opposed to jury instructions), "[a] judge should grant a motion for a new trial when the verdict is against the clear weight of the evidence or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." *Lipphardt v. Durango Steakhouse of Brandon, Inc.*, 267 F.3d 1183, 1186 (11th Cir. 2001).  "Because it is critical that a judge does not merely substitute his judgment for that of the jury, new trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great-not merely the greater-weight of the evidence." *Id.*

Applying this standard here, Defendants have not shown grounds for a new trial.  The jury's verdict is supported by the weight of the evidence, meaning that Defendants should not be

---

spending hundreds of millions of dollars on that brand.  *See* Trial Tr. vol. 2 (ECF No. 298) at 28 (Apr. 12, 2022).
[6] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

granted a new trial.  Further, on the specific evidentiary issues raised, the motion should be denied because the Court's rulings were correct.

1.  *The Court Properly Instructed the Jury on Mr. Calabrese's Felony Conviction*.

Defendants argue that a new trial must be granted because the jury heard evidence that Mr. Calabrese is a convicted felon.  At trial, after Defendants offered testimony from Mr. Calabrese, the jury was informed that Mr. Calabrese "was convicted of a felony on June 28, 2016," and instructed that it "may consider that fact as one of the things … when you consider the believability of a witness."  Trial Tr. vol. 6 (ECF No. 324) at 48 (Apr. 14, 2022).  Defendants maintain that this was prejudicial error and warrants a new trial.

Defendants suggest that the information about Mr. Calabrese's felony conviction was improper rebuttal evidence.  (Br. at 19-20.)  They overlook, however, that by offering testimony from Mr. Calabrese, Defendants put his credibility at issue in this case, making the fact of his felony conviction admissible under Federal Rule of Evidence 609.[7]  The Eleventh Circuit has made clear that "'[t]he implicit assumption of Rule 609 is that prior felony convictions have probative value,'" and in "a civil case," such as this one, there is "less danger of unfair prejudice."  *Knight through Kerr v. Miami-Dade County*, 856 F.3d 795, 817 (11th Cir. 2017) (quoting *United States v. Burston*, 159 F.3d 1328, 1335 (11th Cir. 1998)).

Defendants attempt to sidestep Rule 609 by arguing that the proper course here would have been for Sprint to designate and read into evidence the deposition testimony Mr. Calabrese gave regarding his criminal past.  (Br. at 20-21.)  This suggestion has no basis in law and is not well taken given that Mr. Calabrese's deposition misrepresents his criminal history and does not mention that he was convicted of a felony.  (*See id.* at 20 (excerpting portion of Calabrese deposition).)  The Court reviewed the deposition testimony and found Mr. Calabrese's statements to be "somewhat misleading" regarding prior criminal proceedings.  Trial Tr. vol. 5 (ECF No. 323) at 59-60 (Apr. 14, 2022).  Therefore, even if there was some basis for Defendants to argue that Sprint should have been required to present information about Mr. Calabrese's criminal history to the jury through deposition designations rather than a stipulation read by counsel (and there is no such basis), that argument lacks merit where the deposition testimony itself contains credibility issues.

---

[7] Defendants themselves attack the veracity of Mr. Calabrese's testimony in this very motion, stating that Mr. Calabrese "mischaracterize[ed]" Jose Rivera's role at Nextel Inc.  (Br. at 16.)

Finally, Defendants' motion should be denied because the short statement concerning Mr. Calabrese's felony conviction was not unduly prejudicial.  At the outset, Defendants characterize Sprint as engaging in "trial-by-ambush" because Sprint introduced the evidence about Mr. Calabrese's felony during Sprint's rebuttal case, which procedurally occurred at the close of the case and before closing arguments.  (Br. at 21.)  This argument is puzzling because Sprint's opportunity to present rebuttal evidence is during its rebuttal case.  That is, Sprint presented its rebuttal evidence at the appropriate stage, and Defendants cannot twist the timing of this into grounds for a new trial.  If a new trial was granted, Sprint would again submit rebuttal evidence during its rebuttal case.  Further, Defendants suggest that the information about Mr. Calabrese's felony conviction "was reflected in the runaway verdict," demonstrating prejudice.  (*Id.* at 21.) That suggestion is undermined by the jury finding all of the Defendants liable across the board. That is, the jury did not impose harsher verdicts on Mr. Calabrese than on any of the other Defendants, negating Defendants' theory that the felony conviction unfairly prejudiced the jury against Mr. Calabrese.

       2.    <u>*The Court Did Not Err in Denying Defendants' Request for Jose Rivera to Testify*</u>.

Defendants maintain that a new trial should be granted because the Court did not permit Jose Rivera to testify during their case on the grounds that Defendants had not disclosed Mr. Rivera as a trial witness.  They put forth two grounds, which are each unavailing.

First, Defendants accuse Sprint of misleading the Court regarding Mr. Rivera and imply that the Court consequently was unable to fairly and impartially decide this issue.  (Br. at 21-22.) Defendants paint an image that Sprint crafted lies about Mr. Rivera in order to keep him from testifying.  In fact, the information Sprint offered regarding Mr. Rivera consisted solely of deposition testimony from Defendant Stephen Calabrese.  *See* Trial Tr. vol. 4 (ECF No. 322) at 49-51 (Apr. 13, 2022).  Defendants' position that this testimony (of their own witness) was "false and misleading" is not well taken and does not support a new trial.  Further, Defendants were able to fully present their position on this issue to the Court. Indeed, Defendants admit that they explained to the Court "the extensive role of Mr. Rivera in Nextel, Inc." and "provided the full context of" that role.  (Br. at 22.)  That is, Defendants admit that they presented the Court with all of the evidence and arguments supporting their position.  The Court ruled in Sprint's favor on this issue, but an unfavorable ruling does not equate to prejudicial error warranting a new trial.

Second, Defendants argue that the Court erred by not allowing Defendants to call Mr. Rivera as a rebuttal witness to counter evidence put on by Ryan Rabenold during Sprint's case in chief.  (*Id.* at 22-23.)  Mr. Rabenold had testified regarding a video exhibit jointly offered by the parties that was made by one of Defendant Nextel Inc.'s dealers and shows the dealer using one of Defendants' devices.  Trial Tr. vol. 5 (ECF No. 323) at 123-124 (Apr. 14, 2022).  Mr. Rabenold had testified that this device played the Nextel Chirp owned by Sprint, and Defendants subsequently attempted to call Mr. Rivera as a rebuttal witness to offer evidence about whether the Chirp sound heard in the video was the Nextel Chirp.  *Id.* at 121.

The Court correctly denied this request because Defendants were not calling Mr. Rivera to offer proper rebuttal testimony.  Defendants proffered at trial (and reiterate in their brief) that they were calling Mr. Rivera in order to have him use one of Defendants' infringing phones in front of the jury and testify that the phone does not use the Nextel Chirp.  Trial Tr. vol. 5 (ECF No. 323) at 124 (Apr. 14, 2022); (Br. at 23.)  In this manner, Defendants sought to put on affirmative evidence regarding their devices and whether those devices use the Nextel Chirp.  That issue of whether Defendants are using the Nextel Chirp sound mark has long been an issue in this case and is the basis of several of Sprint's claims.  *See* Amended Complaint (ECF No. 80) (operative pleading stating claims for relief based on sound mark).  Defendants were anticipating that the question of whether their devices used the Nextel Chirp would be contested at trial.  *See* Joint Pretrial Statement (ECF No. 252) at 8 (Defendants' position of the case, contesting that Defendants have used the Nextel Chirp sound mark).  The evidence Defendants sought to enter through Mr. Rivera was affirmative evidence concerning what sounds Defendants' phones do and do not emit, which is squarely evidence that Defendants should have anticipated using at trial.  Defendants were not allowed to end-run the Rules on disclosing witnesses by labeling Mr. Rivera as a 'rebuttal' witness.  *See Lawson v. Plantation Gen. Hosp., L.P.*, No. 08-61826-CIV, 2010 WL 11504835, at *3 (S.D. Fla. May 3, 2010) (refusing 'rebuttal' testimony from undisclosed witness where testimony would be offered to rebut an anticipated issue).

Furthermore, even assuming *arguendo* that Mr. Rivera's 'rebuttal' testimony could have been proper, the Court did not commit prejudicial error in refusing this testimony.  The 'rebuttal' evidence that Mr. Rivera was purportedly being called to provide was simply whether the sound used in the video matched the sound mark owned by Sprint.  There were two pieces of audio— each in evidence—and the question is whether they were the same.  Defendants could have brought

out this evidence through another witness or played those audio clips during closing arguments to undermine Mr. Rabenold's testimony. Defendants did not need Mr. Rivera to testify on this question, and the Court's refusal to allow this 'rebuttal' testimony does not warrant a new trial.

**E.     The Court Did Not Clearly Err in Granting Judgment to Sprint on the Tort Counterclaims (Counts V and VI).**

Defendants' final argument is that the Court erred in granting Sprint's motion for judgment as a matter of law under Rule 50(a)(2) on Defendants' counterclaims for tortious interference with contractual business relationships (Count V) and advantageous business relationships (Count VI). *See* Trial Tr. vol. 6 (ECF No. 324) at 3-5 (Apr. 14, 2022). On this point, Defendants rely on the Court's summary judgment ruling on these claims (ECF No. 235) and argue that this ruling somehow obviated Defendants' burdens at trial to prove their counterclaims. (Br. at 24-25.) That is, Defendants' position is that they were not required to introduce evidence to the jury to prove the two tortious interference counterclaims. (*Id.* at 25.) They request that the Court vacate the judgment as a matter of law granted to Sprint on these claims and enter judgment for Defendants on these claims. (*Id.*) Failure to grant judgment to Defendants on these claims would, they maintain, constitute clear error and a manifest injustice, warranting a new trial. (*Id.*)

The Court did not clearly err in granting Sprint judgment on the tortious interference counterclaims. Defendants bore the burden of proving the elements of these counterclaims at trial. "To prevail on a claim for tortious interference, a [claimant] must prove: 1) the existence of a business relationship that affords the plaintiff legal rights; 2) knowledge of the relationship by the defendant; 3) an intentional and unjustified interference with the relationship by the defendant; and 4) damage to the plaintiff resulting from the breach of that relationship." *Z Productions, Inc. v. SNR Productions, Inc.*, No. 8:10-cv-966-T-23MAP, 2011 WL 3754693, at *8 (M.D. Fla. Aug. 18, 2011). Defendants did not introduce evidence to satisfy these elements. For example, Defendants did not introduce evidence of specific contracts or specific business relationships with which Sprint purportedly interfered. Nor did Defendants introduce evidence that would show that Sprint had intentionally interfered with those legal rights and caused harm. Defendants point to passing references in witnesses' testimony that Sprint had issued cease and desist letters to Nextel Inc.'s distributors. (Br. at 25 n.49.) But that evidence alone cannot create a prima facie case of tortious interference of contractual or advantageous business relationships. *Webb-Edwards v. Orange Cnty. Sheriff's Off.*, 525 F.3d 1013, 1029-33 (11th Cir. 2008) (affirming district court granting Rule 50(a) motion for judgment as a matter of law where plaintiff did not present evidence

to establish all elements of its claim).  Therefore, Defendants did not introduce evidence that would have allowed a jury to find Sprint liable on the tortious interference counterclaims, and judgment was properly granted to Sprint.

Defendants try to escape their failure to present evidence on these counterclaims at trial by arguing that, under the law of the case doctrine, the Court's summary judgment ruling alleviated Defendants' burden of proof.  This argument that the law of the case doctrine applies is simply incorrect.  Defendants maintain that the Court's rulings on the parties' cross motions for summary judgment created binding factual findings that applied at trial.  "As a general rule, the law of the case doctrine prohibits a court from revisiting an issue once it has been decided in pending litigation." *Outside the Box Innovs., LLC v. Travel Caddy, Inc.*, 695 F.3d 1285, 1301 (11th Cir. 2012) (internal quotation marks omitted).  This doctrine does not apply here because the Court's summary judgment order did not "decide" any issues in this case; it <u>denied</u> both parties' motions and did not grant judgment on any claims, in whole or in part.  *See* Order on Mot. For Reconsideration of Summ. Judgment (ECF No. 235) at 7.  *See also Rosenberg v. Am. Bowling Cong.*, 589 F. Supp. 547, 549 (M.D. Fla. 1984) ("Judge Black's order denying summary judgment was not 'the law of the case'").  By denying summary judgment, the Court determined that the tortious interference claims should go to trial, nothing more.  *See United States v. Horton*, 622 F.2d 144, 148 (5th Cir. 1980)[8] (discussing law of the case application at summary judgment stage and ruling that trial judge did not abuse its discretion even when the court reconsidered and altered an earlier summary judgment ruling after additional evidence was presented at trial).

This is not a situation where, for example, Defendants moved for and won partial summary judgment concerning certain elements of claims.  Here, Defendants did not receive summary judgment as to any portion or element of their tortious interference counterclaims, and they therefore were required to prove those claims at trial.  Their failure to put on evidence supporting their case does not warrant a new trial, and their motion must be denied.

*     *     *

For the foregoing reasons, Sprint agrees that the final judgment should be amended to award Sprint $4,500,000 in damages.  Defendants' motion should otherwise be denied.

---

[8] *See* note 6, *supra.*

<u>Statement on Defendants' Request for Oral Argument</u>

Sprint defers to the Court on whether oral argument would be helpful to resolving the present motion.

Dated:  June 2, 2022

Respectfully submitted,

/s/ Daniel B. Rogers

Daniel B. Rogers (FBN 195634)
E-Mail: drogers@shb.com
SHOOK, HARDY & BACON L.L.P.
Citigroup Center, Suite 3200
201 South Biscayne Boulevard
Miami, Florida 33131
Telephone: 305.358.5171

Sara F. Holladay (FBN 26225)
Emily Y. Rottmann (FBN 93154)
stobias@mcguirewoods.com
erottmann@mcguirewoods.com
flservice@mcguirewoods.com
clambert@mcguirewoods.com
McGuireWoods LLP
50 North Laura Street, Suite 3300
Jacksonville, Florida 32202
Tel: (904) 798-3200
Fax: (904) 798-3207

*— and —*

Brian C. Riopelle (*pro hac vice*)
Lucy Jewett Wheatley *(pro hac vice)*
Amanda L. DeFord *(pro hac vice)*
Claire Hagan Eller *(pro hac vice)*
briopelle@mcguirewoods.com
lwheatley@mcguirewoods.com
adeford@mcguirewoods.com
celler@mcguirewoods.com
McGuireWoods LLP
800 East Canal Street
Richmond, Virginia 23219
Tel: (804) 775-1000
Fax: (804) 775-1061

*Attorneys and Trial Counsel for Plaintiff Sprint Communications, LLC*