UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-CV-60788-MARTINEZ/VALLE

SPRINT COMMUNICATIONS, LLC,

     Plaintiff/Counterclaim Defendant,

v.

STEPHEN CALABRESE, NEXTEL, INC.
d/b/a NEXTEL WORLDWIDE,
RETROBRANDS USA LLC,
JEFFERY KAPLAN, and NEXTEL
MOBILE WORLDWIDE, INC.,

     Defendants/Counterclaimants.

_____/

## REPORT AND RECOMMENDATION TO DISTRICT JUDGE

THIS MATTER is before the Court upon Plaintiff Sprint Telecommunications, Inc.'s ("Sprint's"): (i) initial Motion for an Award of Nontaxable Costs and Attorneys' Fees (ECF No. 346); (ii) Renewed Motion for Taxable Costs Pursuant to 28 U.S.C. § 1920 (ECF No. 400) (the "Renewed Motion for Taxable Costs"); and (iii) Amended Motion for an Award of Attorneys' Fees and Nontaxable Costs (ECF Nos. 401, 405)[1] (the "Amended Motion for Attorneys' Fees and Nontaxable Costs") (collectively, the "Motions"). United States District Judge Jose E. Martinez has referred the Motions to the undersigned for a Report and Recommendation. (ECF No. 410).

Accordingly, having reviewed the Motions, Defendants Retrobrands USA LLC and Jeffrey Kaplans' Response (ECF No. 407), Sprint's Reply (ECF No. 409,), and  being otherwise duly

---

[1] ECF No. 401 is a redacted version of the motion filed at ECF No. 405-1.  Thus, ECF No. 401 should be **DENIED** as duplicative.  Further, for brevity and ease of reference, this Report and Recommendation ("R&R") will hereinafter cite to ECF No. 405-1.

advised in the matter, the undersigned respectfully recommends that Sprint's: (i) Renewed Motion for Taxable Costs be **GRANTED**; and (ii) Amended Motion for Attorneys' Fees and Nontaxable Costs be **GRANTED IN PART**.[2]  More specifically, Sprint should be awarded: (i) $2,388,881.40 in attorneys' fees against all Defendants for the proceedings before the District Court pursuant to § 1117(b) of the Lanham Act; (ii) $319,667.98 in attorneys' fees against the Retrobrands Defendants for the appellate proceedings before the Eleventh Circuit also pursuant to § 1117(b); (iii) $18,216.25 in taxable costs against all Defendants pursuant to 28 U.S.C. § 1920; and (iv) $22,381.71 in nontaxable costs against all Defendants pursuant to FDUTPA.

## I.  <u>BACKGROUND</u>

### A.  *The Underlying Trademark Litigation*

This trademark infringement case stems from Sprint's effort to enforce its trademark rights in the NEXTEL brand, including the word mark "NEXTEL" and the "chirp" Sound Mark.[3] Spanning almost seven years, the case commenced in April 2018, when Sprint filed an initial Complaint against Defendants Stephen Calabrese, Nextel, Inc. (d/b/a Nextel Worldwide), Retrobrands USA LLC, Jeffrey Kaplan, and Nextel Mobile Worldwide Inc. (collectively, "Defendants").  *See generally* (ECF No. 1).  In November 2018, Sprint filed a multi-count First Amended Complaint, alleging claims for counterfeiting (Counts 1 and 8), federal trademark infringement (Counts 2 and 9), federal and state unfair competition and false designation of origin (Counts 3 and 7), federal trademark dilution (Count 4), cybersquatting (Counts 5 and 10), and claims under Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") (Count 6).  *See*

---

[2] Plaintiff's initial Motion for an Award of Nontaxable Costs and Attorneys' Fees (ECF No. 346) should be **DENIED AS MOOT** because Plaintiff has incorporated its request for fees in the later-filed Amended Motion for Attorneys' Fees and Nontaxable Costs (ECF No. 405).

[3] Capitalized terms not defined in this R&R have the meaning set forth in the Amended Complaint (ECF No 80).

*generally* (ECF No. 80).  Sprint's First Amended Complaint also sought injunctive relief.  *Id.* at 43-45).

Defendants filed an Answer and Amended Counterclaims.  *See generally* (ECF No. 83). Defendants' counterclaims alleged counts for declaratory relief regarding the purported unenforceability of a trademark due to abandonment (Counterclaim 1), non-infringement (Counterclaim 2), cancellation of the NEXTEL registration and NEXTEL Sound Mark (Counterclaims 3 and 8), fraud on the United States Patent and Trademark Office ("USPTO") (Counterclaim 4), common law tortious interference with contractual business relationships and advantageous business relationships (Counterclaim 5 and 6), defamation (Counterclaim 7), unfair competition (Counterclaim 9), and reverse domain hijacking (Counterclaim 10).  *Id.*  Sprint subsequently filed its Answer to Defendants' Amended Counterclaims.  *See generally* (ECF No. 84).

The case proceeded through protracted litigation, including motion practice regarding injunctive relief, discovery, requests for sanctions, and summary judgment.  *See, e.g.*, (ECF No. 6) (Sprint's Motion for Preliminary Injunction); (ECF No. 70) (Sprint's Motion to Compel Discovery); (ECF No. 85) (Sprint's Motion for Rule 11 Sanctions); (ECF No. 103) (Defendants' Expedited Motion for Preliminary Injunction); (ECF No. 113) (Status Report on Pending Motions); (ECF Nos. 120, 121, 122) (parties' cross motions for summary judgment).  In January 2022, the District Court granted summary judgment to Sprint on Defendants' defamation counterclaim.  (ECF No. 235 at 8-10).  The case was ultimately tried before a jury from April 11 to April 28, 2022.  *See* (ECF Nos. 291, 296, 300, 303, 305-306).  Relevant to the Motions, at the close of Defendants' case, the Court granted judgment as a matter of law in Sprint's favor on Defendants': (i) claims and defenses that Sprint had abandoned the chirp Sound Mark; (ii) counterclaim for reverse domain hijacking; (iii) counterclaim for tortious interference;

3

(iv) counterclaim for unfair competition; and (v) counterclaim alleging that Sprint committed fraud with respect to its registration for the NEXTEL mark. *See* (Jury Trial 4/14/2022 Tr.) (ECF No. 324 at 2:16-3:15, 3:16-5:22, 5:24-7:4, 7:21-20:19, 20:21-22:10). After the District Court's rulings, the remaining claims were submitted to the jury. *See* (ECF No. 306) (minutes of proceedings, including closing argument and deliberations); (ECF No. 307) (Jury Instructions).

After deliberation, the jury returned verdict in favor of Sprint on all remaining claims and counterclaims and the Court entered a Final Judgment in favor of Sprint. *See* (ECF Nos. 309, 310). Upon Sprint's motion (ECF No. 313), the Court also entered a permanent injunction against Defendants that, among other things: (i) required Defendants to cease all acts of infringement, dilution, counterfeiting, unfair competition, and deceptive trade practices of Sprint's NEXTEL and chirp Sound Mark—including their own actions or actions through their connected network of dealers; (ii) prohibited Defendants from applying to register any trademarks that are the same as or are confusingly similar to those marks; (iii) required Defendants to deliver any infringing materials to Sprint; (iv) ordered that Defendants' infringing domains be transferred to Sprint; and (v) required Defendants to abandon any trademark applications that they owned with the USPTO for marks confusingly similar to the NEXTEL Mark or the "chirp" Sound Mark. *See generally* (ECF No. 356).

After post-trial motions, in July 2022, the District Court entered an Amended Final Judgment for $4.5 million in favor of Sprint and against Defendants. (ECF No. 353). Subsequently, Defendants Jeffrey Kaplan, Retrobrands USA LLC, and Nextel Mobile Worldwide, Inc. (hereinafter, the "Retrobrands Defendants") appealed the Amended Final Judgment and related trial orders to the Eleventh Circuit. *See* (ECF No. 354, 366, 367, 387, 388).

In May 2024, the Eleventh Circuit affirmed the Amended Final Judgment. (ECF No. 391). In affirming the District Court, the Eleventh Circuit summarized the litigation as follows:

4

> [Plaintiff] Sprint owns trademarks for a "Nextel" word mark when used with
> telecommunication equipment, and a sound mark for the Nextel "chirp" noise for
> use with telecommunication services. [Defendant] Stephen Calabrese began selling
> cell phones under the Nextel name and used the chirp sound. After receiving a
> cease-and-desist letter, Calabrese partnered with [Defendants] Jeffrey Kaplan and
> Retrobrands USA LLC to expand sales of his "Nextel" branded devices. Sprint
> brought a successful trademark infringement lawsuit regarding these two marks.

*Id.* at 5. The instant Motions followed.

### B. *Sprint's Motions for Fees and Costs for Trial and Appellate Proceedings*

Sprint has filed two motions seeking to recover its fees and costs as prevailing party on all claims and counterclaims at trial and on appeal to the Eleventh Circuit.[4] *See generally* (ECF Nos. 400, 405). First, in its Renewed Motion for Taxable Costs, Sprint seeks $18,216.25 in taxable costs against all Defendants under Federal Rule 54 and 28 U.S.C. § 1920 for the trial court proceedings. *See generally* (ECF No. 400). Defendants have not opposed Sprint's Renewed Motion for Taxable Costs. *See* (ECF No. 409 at 2 n.1). Therefore, as discussed more fully below, Sprint's request for taxable costs against all Defendants should be granted by default. *See infra* Section II.C.

Subsequently, in its Amended Motion for Attorneys' Fees and Nontaxable Costs, Sprint seeks $2,514,612.19 in attorneys' fees and $22,381.71 in nontaxable costs, from all Defendants for litigating the case at the trial court level. (ECF No. 405-1 at 6). Lastly, in the same motion, Sprint seeks an additional $319,667.98 in fees from the Retrobrands Defendants for the Eleventh Circuit appeal. *Id.* Sprint summarizes its request stating that:

> Sprint is entitled to recover its attorneys' fees and nontaxable costs incurred in this
> case for several independent reasons. First, Defendants willfully counterfeited
> Sprint's trademarks[.] The Lanham Act states that reasonable attorneys "shall" be
> awarded in such cases. 15 U.S.C. § 1117(b). Second, this trademark infringement
> suit is an "exceptional case" under 15 U.S.C. § 1117(a) for which attorneys' fees
> are appropriate. Third, Sprint's FDUTPA claims are coextensive with Sprint's

---

[4] As noted above, the initial motion seeking fees (ECF No. 346) should be denied as moot based on Sprint's amended motion. *See supra* p. 2 n.2.

Lanham Act claims.  Under the FDUTPA's relevant factors, Defendants' conduct justifies awarding Sprint's attorneys' fees.  Finally, Sprint is also entitled to recover its nontaxable costs because it is the prevailing party in this matter. 15 U.S.C. § 1117(a); Fla. Stat. § 501.2105 [FDUTPA].

*Id.* 405-1 at 8.

Although there is no opposition to Sprint's request for taxable costs, the Retrobrands Defendants oppose Sprint's Amended Motion for Attorneys' Fees and Nontaxable Costs.[5]  More specifically, the Retrobrands Defendants argue that: (i) Sprint has not complied with the conferral requirement of Local Rule 7.3; (ii) Sprint is not the prevailing party on all claims; (iii) this is not an "exceptional case" under the Lanham Act (15 U.S.C. § 1117(a)) so as to warrant attorneys' fees and costs; and (iv) Sprint's billing records include time for frivolous motions, block billing, and vague entries that do not support an award of fees.[6]  *See generally* (ECF No. 407).

## II.  <u>DISCUSSION</u>

### A.  *The American Rule and Entitlement to Fees*

Generally, under the "American Rule," each party must pay its own attorney's fees, unless a statute or contract provides otherwise.  *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 253 (2010) (citations omitted); *see also In re Martinez*, 416 F.3d 1286, 1288 (11th Cir. 2005) (prevailing litigants are generally not entitled to an award of attorneys' fees unless provided by

---

[5]  Defendants Calabrese, Nextel Inc. and Nextel Worldwide have not responded to the Motions.

[6]  Two of the four arguments by the Retrobrands Defendants are meritless.  *See* (ECF No. 407 at 1-6).  First, any arguments regarding whether the parties conferred as to the initial request for fees filed in 2022 are moot.  Here, the Retrobrands Defendants concede that counsel for the parties discussed the instant Motions when refiled in 2024.  *Id.* at 3.  As to the second argument, the District Court found that the "Court cannot agree with Defendants that they 'prevailed' as to any claims related to NEXTEL Trademark No. 1.627,139 as no determination on the merits was made as to those claims[.] Plaintiff withdrew [the claims] voluntarily without argument as to the merits from either party, and the jury never considered any evidence related to NEXTEL Trademark No. 1,627,139 claims."  (ECF No. 352 at 2).  Accordingly, the undersigned rejects these two arguments.

statute or contract). Here, Sprint argues that, as the prevailing party, it is entitled to attorneys' fees pursuant to three statutory provisions. *See generally* (ECF No. 405-1). First, Sprint alleges that it is entitled to mandatory attorneys' fees because Defendants were found willfully liable for counterfeiting pursuant to 15 U.S.C. § 1117(b). *Id.* at 9-11. Next, Sprint argues that it is also entitled to attorneys' fees pursuant to 15 U.S.C. § 1117(a) because this is an "exceptional case" under the Lanham Act. *Id.* at 11-17. Alternatively, Sprint argues that it is entitled to recover its fees under FDUTPA because Sprint's FDUTPA claim coexists with its Lanham Act claims and the Court has discretion to award a prevailing plaintiff reasonable attorneys' fees. *Id.* at 17-19.

In response, the Retrobrands Defendants challenge Sprint's entitlement to fees pursuant to § 1117(a), arguing that this is not an "exceptional case." *See* (ECF No. 407 at 6-10). The Retrobrands Defendants, however, do not address Sprint's alternative argument that it is also entitled to: (a) mandatory fees under § 1117(b)(1) for prevailing on its claims that Defendants engaged in willful counterfeiting; and (b) fees and costs after prevailing on its FDUTPA claim. *See* (ECF No. 409 at 5); *see also generally* (ECF No. 407).

In relevant part, § 1117(b) of the Lanham Act provides that for any violation of § 1114(a)(1) (governing trademark infringement):

> [T]he court *shall*, unless the court finds extenuating circumstances, enter judgment for three times such profits or damages, whichever amount is greater, t*ogether with a reasonable attorney's fee*, if the violation consists of
>
> (1) intentionally using a mark or designation, knowing such mark or designation is a counterfeit mark (as defined in section 1116(d) of this title), in connection with the sale, offering for sale, or distribution of goods or services; or
>
> (2) providing goods or services necessary to the commission of a violation specified in paragraph (1), with the intent that the recipient of the goods or services would put the goods or services to use in committing the violation.

15 U.S.C. § 1117(b) (emphasis added). Here, the jury verdict and Amended Final Judgment are both in Sprint's favor on all claims. *See* (ECF Nos. 309, 353). Moreover, the Retrobrands Defendants have not shown extenuating circumstances that would override the mandatory statutory award of fees pursuant to § 1117(b)(1). *See Audi AG v. Sun Am. Corp., Inc.*, No. 17-CV-62199, 2018 WL 7021842, at *3 (S.D. Fla. Dec. 18, 2018) (finding plaintiff entitled to mandatory reasonable attorneys' fees under § 1117(b)(1)), *report and recommendation adopted*, 2019 WL 188864 (S.D. Fla. Jan. 2, 2019); *Newpoint Media Grp., LLC v. Mitchell Media Grp., LLC*, No. 16-CV-1498-AT, 2017 WL 5303522, at *5 (N.D. Ga. Apr. 14, 2017) (finding attorneys' fees statutorily mandated where infringement is intentional and defendants have not presented extenuating circumstances); *Chanel, Inc. v. Singleton*, No. 08-CV-61065, 2009 WL 10699134, at *8 (S.D. Fla. May 15, 2009) (awarding attorneys' fees and costs where defendant intentionally infringed on trademark and used counterfeit goods); *Chanel, Inc. v. French*, No. 05-CV-61838, 2006 WL 3826780, at *5 (S.D. Fla. Dec. 27, 2006) (granting mandatory attorneys' fees and costs under § 1117(b)); *Tommy Hilfiger Licensing, Inc., v. Goody's Fam. Clothing, Inc.*, No. 00-CV-1934-BBM, 2003 WL 22331254, at *43 (N.D. Ga. May 9, 2003) (concluding that court must award attorneys' fees on prevailing claims for willful counterfeiting); *Louis Vuitton S.A. v. Lee*, 875 F.2d 584, 588 (7th Cir. 1989) (describing § 1117(b) as a "severe statute" subject only to extremely narrow exception for "extenuating circumstances"); *Louis Vuitton S.A. v. Downtown Luggage Ctr.*, 706 F. Supp. 839, 842 (S.D. Fla. 1988) (clarifying that § 1117(b) has a different standard for award of attorneys' fees, which requires intentional conduct).

Accordingly, the undersigned concludes that Sprint is entitled to an award of reasonable attorneys' fees pursuant § 1117(b)(1) as the prevailing party on its claims for willful counterfeiting.[7]

### B. Reasonable Attorney's Fees Pursuant to § 1117(b)

Having found that Sprint is entitled to mandatory reasonable attorneys' fees, the undersigned next considers the reasonableness of the amount requested.

---

[7] Because the Court finds that Sprint is entitled to mandatory reasonable attorneys' fees pursuant to § 1117(b), it need not address whether Sprint is alternatively entitled to attorneys' fees under FDUTPA or under the "exceptional case" standard of § 1117(a). *See Audi AG,* 2018 WL 7021842, at *4 n.6 (noting that court need not analyze whether a case is "exceptional" to award fees under § 1117(b)); *Chanel, Inc. v. Bryan*, No. 07-CV-225, 2008 WL 11336327, at *5 (N.D. Ga. Nov. 18, 2008) (finding mandatory entitlement pursuant to § 1117(b) and declining to address § 1117(a)'s alternative "exceptional case" standard); *see also* (ECF No. 405-1 at 11) (noting that the Court need not make a separate finding that Sprint it entitled to recover fees pursuant to FDUTPA because Sprint it entitled to recover fees pursuant to the Lanham Act); (ECF No. 409 at 5) (noting that "[t]he Court . . . can award fees [pursuant to § 1117(b)] and need not consider [whether] Defendants' . . . case is exceptional."). Nevertheless, to facilitate fulsome review of this R&R, the undersigned briefly addresses whether this is an "exceptional case" pursuant to § 1117(a) to warrant an award of attorneys' fees. More specifically, an "exceptional" case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014); *Tobinick v. Novella*, 884 F.3d 1110, 1113 (11th Cir. 2018) (applying *Octane Fitness* to Lanham Act cases); *see also Most Worshipful Nation Grand Lodge v. United Grand Lodge GA AF & AYM, Inc.*, 813 F. App'x 455, 460 (11th Cir. May 12, 2020) (applying standard); *Sream, Inc. v. Onive Food Inc.*, No. 18-80491, 2018 WL 8345099, at *3 (S.D. Fla. Sept. 26, 2018) (same). Whether a case is "exceptional" should be determined on a case-by-case exercise of discretion, considering the "totality of the circumstances" based on a nonexclusive list of factors, including "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case), and the need in particular circumstances to advance considerations of compensation and deterrence." *Octane Fitness*, 572 U.S. at 554 n.6 (citing *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994)). Lastly, the requisite evidentiary standard for proving an "exceptional" case is preponderance of the evidence. *Id.* at 557. Here, considering the governing law, the facts of the case, the strength of Sprint's litigation position, and to advance considerations of deterrence, the case satisfies the "exceptional case" standard for an award of fees pursuant to § 1117(a). This conclusion is also supported by the unreasonableness of Defendants' arguments throughout the case and through appeal. Accordingly, fees are alternatively warranted under § 1117(a).

*1. Determining Reasonable Fees Using the Lodestar Method*

In assessing the reasonableness of a request for attorneys' fees, courts in the Eleventh Circuit use the "lodestar" method to calculate an objective estimate of the value of an attorney's services. *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). Under the lodestar method, the value of an attorney's services is calculated by multiplying the hours that the attorney reasonably worked by a reasonable rate of pay. *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994) (citing *Norman*, 836 F.2d at 1299). The "'fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates.'" *ACLU v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999) (quoting *Norman*, 836 F.2d at 1303).

Importantly, courts are not authorized "to be generous with the money of others, and it is as much the duty of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded." *Id.* at 428. When a request for attorney's fees is unreasonably high, courts may "conduct an hour-by-hour analysis" or "reduce the requested hours with an across-the-board cut." *Bivins v. Wrap it Up Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008); *see also Procaps S.A. v. Patheon Inc.*, No. 12-CV-24356, 2013 WL 6238647, at *17 (S.D. Fla. Dec. 3, 2013) (reducing fee request with across-the-board reduction for billing inefficiencies). Although courts may apply either method, they cannot apply both. *Bivins*, 548 F.3d at 1351. Finally, courts need not become "green-eyeshade accountants." *Fox v. Vice*, 563 U.S. 826, 837 (2011). Instead, the essential goal for the court is to "do rough justice, not to achieve auditing perfection." *Id.* Additionally, the court may use its own expertise to fashion a pragmatic and reasonable remedy as "a request for attorney's fees should not result in a second major litigation." *Taylor Newman Cabinetry*, 436 F. App'x 888, 895 (11th Cir. 2011) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)).

Here, Sprint seeks $2,514,612.19 in attorneys' fees from all Defendants for litigating the case to trial and filing post-trial motions before the District Court, expending approximately 4,502 hours in attorney and paralegal time. *See* (ECF No. 405-1 at 6, 20). Sprint also seeks an additional $319,667.98 in fees from the Retrobrands Defendants for defending the appeal before the Eleventh Circuit. *Id.* at 6. In its fee request, Sprint emphasizes that the case was litigated for more than six years, involved two preliminary injunction motions, required multiple briefs on summary judgment, resulted in a six-day jury trial, and concluded with an appeal to the Eleventh Circuit— all evidencing lengthy and complex trademark litigation that make the requested fees more than reasonable. *Id.* at 20. In support of its motion, Sprint has also filed the Declaration of Brian C. Riopelle, supportive billing records, and counsel's biographies. *See* (ECF Nos. 405-2 at 1-98).

The Retrobrands Defendants challenge the fees incurred at trial as including time for "frivolous motions," block billing, and vague entries. *See generally* (ECF No. 407). According to the Retrobrands Defendants, the "award of $4.5 million in statutory damages . . . more than compensates [Sprint] for the cost of this litigation [and] it would be manifestly unjust and a gross windfall to award [Sprint] attorneys' fees and costs." *Id.* at 14. The Retrobrands Defendants, however, do not request a specific fee reduction, but instead generally argue that the Court may reduce the requested fees to address the purported billing inefficiencies. *Id.*

   2. *Reasonable Hourly Rates*

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman*, 836 F.2d at 1299 (citing *Blum v. Stenson*, 465 U.S. 886, 895-96 n.11 (1984)). The relevant market is "the place where the case is filed." *Barnes*, 168 F.3d at 437 (internal quotation marks and citation omitted). Here, although Sprint's counsel lists attorneys in offices in Jacksonville, Florida,

11

Richmond, Virginia, and Charlotte, North Carolina, *see* (ECF No. 405-2 at 62-98) (containing counsel's biographies), the relevant legal community is South Florida.

In determining reasonable hourly rates in South Florida, the undersigned may also consider certain factors, including "the attorneys' customary fee, the skill required to perform the legal services, the attorneys' experience, reputation and ability, the time constraints involved, preclusion of other employment, contingency, the undesirability of the case, the attorneys' relationship to the client, and awards in similar cases." *Mallory v. Harkness*, 923 F. Supp. 1546, 1555 (S.D. Fla. 1996) (citing factors articulated in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974) (the "*Johnson* factors")).[8]  The Court also may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value. *Loranger*, 10 F.3d at 781 (quoting *Norman*, 836 F.2d at 1303).

For ease of reference, below is a summary of the timekeepers, their experience, and the requested hourly rates as set forth in the Riopelle Declaration.[9]  (ECF No. 405-2 at 3-5).

| Time Keeper | Position/Experience | Hourly Rate | Hours Expended |
|---|---|---|---|
| Brian C. Riopelle | IP litigation partner - 35 years | $1064-$1077 (from 2019-2022) | 501 hours |
| Lucy Jewett Wheatley | IP litigation partner - 16 years | $675-$762 (from 2018-2024) | 1,028 hours |
| Jonathan Y. Ellis | Appeals and Issues partner – | $935-$1100 | 153 hours |

---

[8] Pursuant to *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), opinions of the Fifth Circuit issued prior to October 1, 1981, are binding precedent in the Eleventh Circuit.

[9] According to the Riopelle Declaration, the hourly rates were negotiated and have already been discounted. *See* (ECF Nos. 405-1 at 21, 405-2 at 2).  More specifically, Mr. Riopelle affirms that "in 2021, Sprint and McGuireWoods negotiated and agreed to keep hourly rates closer to those charged at the inception of this matter in 2018, which ultimately resulted in Sprint receiving discounted rates from 2021-2024.  Among the attorneys whose fees are being requested here, the discounted rates range from 5% to 52%, and the weighted average of those discounts (accounting for differences in billed time) ranges from 5% to 32%." *Id.*

|  | 14 years | (from 2022-2024) |  |
| Amanda L. DeFord | IP litigation partner – 11 years | $480-$600 (from 2018-2022) | 1,348 hours |
| Brad R. Newberg | IP litigation partner – 24 years | $810-$855 (from 2018-2021) | 48.7 hours |
| Brian D. Schmalzbach | Appeals and Issues partner – 14 years | $617 (in 2024) | 6 hours |
| Kathryn M. Barber | Appeals and Issues partner – 9 years | $501 (in 2024) | 4.8 hours |
| Claire H. Eller | IP litigation counsel – 11 years | $470-$590 (from 2019-2024) | 710.8 hours |
| Francis J. Aul | Midlevel associate – 5 years | $635 (in 2024) | 45 hours |
| Marjorie G. McLean | Midlevel associate – 3 years | $583-$697 (from 2022-2023) | 126 hours |
| Breanna Cross | Intermediate paralegal – 4.5 years | $261-$290 (from 2019-2022) | 382.5 hours |
| Caitlin Coggins | Paralegal – 7 years | $280-$295 (from 2018-2019) | 95.9 hours |
| Martina Liu | Paralegal – 3 years | $290 (from 2022-2023) | 50.5 hours |

The undersigned has considered the relevant *Johnson* factors and has reviewed counsel's qualifications (ECF No. 405-2 at 62-98) as well as the Riopelle Declaration in support of the Motions (*Id.* at 1-7). With no objection to the hourly rates from the Retrobrands Defendants and based on the Court's review, independent judgment, and expertise, the Court finds that the reduced hourly rates for the listed timekeepers are reasonable. Consequently, the undersigned recommends that counsel's hourly rates be approved, without further reduction.

### 3. *Reasonable Hours Expended*

#### a. *Legal Standard*

Having determined counsel's reasonable hourly rates, the undersigned next determines the reasonableness of the hours expended by the attorneys working on the case. Generally, attorneys must exercise what the Supreme Court has termed "billing judgment." *Hensley*, 461 U.S. at 434. That means they must exclude from fee applications "excessive, redundant, or otherwise

unnecessary hours," which are hours "that would be unreasonable to bill to a client and therefore to one's adversary irrespective of the skill, reputation or experience of counsel." *Norman*, 836 F.2d at 1301 (quotations and citations omitted).

Importantly, "if fee applicants do not exercise billing judgment, courts are obligated to do it for them." *Barnes*, 168 F.3d at 428. The fee applicant also bears the burden of providing specific and detailed evidence so that the court can determine the necessity and reasonableness of the time claimed for the task. *Id.* at 427, 432-33. In the end, however, "exclusions for excessive or unnecessary work on given tasks must be left to the discretion of the district court." *Norman*, 836 F. 2d at 1301.

### b. Hours Expended for Trial Proceedings Before District Court

The Retrobrands Defendants challenge the amount of fees incurred by counsel during the proceedings before the District Court, arguing that counsel have billed for "frivolous motions," engaged in block billing, have vague time entries, and expended excessive hours. *See generally* (ECF No. 407 at 10-14). The Court has reviewed counsel's billing records and finds that some adjustment is necessary to account for instances of inappropriate "block billing." *See Interim Healthcare, Inc. v. Health Care@Home, LLC*, No. 17-CV-61378, 2019 WL 6791465, at *6 (S.D. Fla. Nov. 27, 2019) (noting that "block billing" is the practice of including multiple distinct tasks within the same time entry), *report and recommendation adopted*, 2019 WL 6769666 (S.D. Fla. Dec. 12, 2019); *Bluegreen Vacations Unlimited, Inc. v. Timeshare Laws. P.A.*, No. 20-CV-24681, 2024 WL 3738890, at *13 (S.D. Fla. July 18, 2024) (noting that the practice of block billing is disfavored because it prevents the court from accurately ascertaining the amount to of time spent on each discreet task), *report and recommendation adopted*, 2024 WL 4297089 (S.D. Fla. Sept. 26, 2024).

To illustrate, a 7/11/2018 time entry for attorney DeFord reflects more than 11 hours for "work on objections and responses to report and recommendation; research case law in support of same." (ECF Nos. 405-2 at 14). Similarly, on 11/19/2018, attorney DeFord billed more than six hours for "work on witness list; correspond with M. Jobe regarding actual confusion evidence; revise, finalize, and serve second set of requests for production; revise, finalize, and serve first set of requests for production to new defendant; revise, finalize, and serve first set of requests for inspection; review documents for privilege, confidentiality, and responsiveness." *Id.* at 18. Likewise, on 1/29/2019, attorney DeFord billed more than nine hours to "prepare T. Shaughnessy and B. Mancuso for depositions; defend deposition of T. Shaughnessy; defend deposition of B. Mancuso; analyze document for responsiveness, privilege, and confidentiality; correspond with [redacted]" without indicating how much time was allocated to each deposition and other non-deposition tasks. *Id.* at 22; *see also id.* at 25 (7/5/2019 entry for attorney Wheatley for exactly 8 hours to "[r]esearch, draft and revise motion on damages; correspond with potential witnesses; review information on trial procedures and locations); *id.* at 28 (8/20/2019 entry for 7.30 hours for attorney Eller for "work on revising pretrial stipulation; review revisions sent by defendants; phone call with counsel for defendants regarding pretrial issues; review court orders on sanctions motion and motion to compel; review sealed exhibits to motion in limine to be filed; work on jury instructions); *id.* at 29 (9/16/2019 entry for 8.30 hours for attorney Wheatley to "[r]eview and revise deposition counter-designations and objections; office conference regarding trial plan and tasks; review materials for cross and draft comments regarding same; draft emails regarding [redacted]."); *id.* at 42 (3/31/2022 entry for 9.1 hours for attorney Riopelle to "revise Kaplan outline; adding Calabrese deposition designations; prepare T. Shaughnessy for trial; work on opening statement).

The instances of block billing increased as the case proceeded to trial before the District Court. For example, between 4/06/2022 and 4/15/2022, the billing records include several entries by different timekeepers, all listing between 6.8 and 17 hours a day for multiple tasks combined into one entry without distinguishing how much time was spent in court for trial proceedings versus out-of-court tasks, such as legal research, preparation of witnesses, and preparation of trial material or other case-related matters that were necessary during the trial. *See* (ECF No. 405-2 at 44-46).

While the undersigned does not doubt that counsel worked in good faith on the projects attributed to this case—particularly as the case proceeded toward a multi-day trial on complex trademark issues— the Court must be able to verify the need or relatedness of those projects before it can approve payment for the time incurred. *Floridians for Solar Choice, Inc. v. PCI Consultants, Inc.*, No. 15-CV-62688, 2021 WL 1092214, at *6 (S.D. Fla. Mar. 4, 2021); *Interim Healthcare*, 2019 WL 6791465, at *6 (citation omitted). Because of block billing, however, it is impossible for the Court "to ascertain how much time was spent on each task." *Dial HD, Inc. v. ClearOne Commc'ns, Inc.*, 536 F. App'x 927, 931 (11th Cir. 2013); *see also Bluegreen Vacations Unlimited*, 2024 WL 3738890, at *17 (reducing fees by 20% for block billing where court was unable to determine if the amount of time spent on each task was reasonable); *Kipu Sys. LLC v. Zencharts LLC*, No. 17-CV-24733, 2021 WL 1891710, at *17 (S.D. Fla. Apr. 6, 2021) (recommending 50% reduction to attorney hours to reflect reasonable amount of time spent on litigation), *report and recommendation adopted*, 2021 WL 4505527 (S.D. Fla. Sept. 30, 2021).

For the foregoing reasons, and because the Court recognizes that counsel for Sprint has negotiated and discounted its hourly rates to near 2018 rates, the undersigned concludes that a minor reduction in the requested fees is appropriate. Rather than conducting an hour-by-hour analysis of counsel's time entries, the undersigned recommends an across-the-board 5% reduction to the requested fees to account for counsel's block billing. *See, e.g.*, *Floridians for Solar Choice*,

2021 WL 1092214, at *6 (recommending a 5% reduction for block billing); *Interim Healthcare*,

2019 WL 6791465, at *6 (recommending a 10% reduction for billing inefficiencies); *Ovalle v.

Perez*, No. 16-CV-62134, 2017 WL 7792719, at *2 (S.D. Fla. Nov. 9, 2017), *report and

recommendation adopted*, 2017 WL 7796183 (S.D. Fla. Nov. 30, 2017) (adopting a 10% reduction

for block billing, redacted time entries, and redundancy); *Shipping and Transit, LLC v. 1A Auto,

Inc.*, 283 F. Supp. 3d 1290, 1306 (S.D. Fla. 2017) (adopting 15% reduction in fees based on billing

inefficiencies); *Rubenstein v. Fla. Bar*, No. 14-CV-20786, 2015 WL 1470633, at *4-6 (S.D. Fla.

Mar. 31, 2015), *report and recommendation adopted*, 2015 WL 11216722 (S.D. Fla. Apr. 22,

2015) (adopting a 30% reduction to counsel's hours for block billing); *see also Bivins*, 548 F.3d at

1350 (noting that when the number of hours claimed is unreasonably high, a court may conduct an

hour-by-hour analysis or may reduce the requested hours with an across-the-board cut).

Accordingly, the undersigned recommends that counsel for Sprint be awarded $2,388,881.40 in

attorneys' fees for the trial court proceedings.[10]

### c.  Hours Expended for Eleventh Circuit Appeal

Sprint also seeks $319,667.98 for attorneys' fees from the Retrobrands Defendants for

expending 466.39 hours defending in the appeal before the Eleventh Circuit.[11] *See* (ECF Nos. 405

---

[10] This amount consists of $2,514,612.19 (the requested fee amount incurred at the trial level) x
.95 = $2,388,881.40 (reflecting a 5% reduction for block billing).  This amount is also comparable
to fee awards in other trademark cases in this District Court. *See, e.g.*, *Marjam Supply Co. of Fla.,
LLC v. Pliteq, Inc.*, No. 15-CV-24363, 2021 WL 1200422, at *27 (S.D. Fla. Mar. 5, 2021), *report
and recommendation adopted*, 2021 WL 1198322 (S.D. Fla. Mar. 30, 2021) (awarding
approximately $1.5 million in attorneys' fees under both the Lanham Act and FDUTPA).

[11] Sprint's request for appellate fees is premised, in part, on entitlement pursuant to the Lanham
Act.  *See* (ECF No. 401-1 at 9-11).  Although § 1117(b) provides mandatory attorneys' fees for
willful counterfeiting, the statute does not mention appellate fees. *Cf.* Fla. Stat. § 501.2105
(FDUTPA provides prevailing party reasonable attorneys' fees and costs after "exhaustion of all
appeals."); *see also Marjam Supply Co.*, 2021 WL 1200422, at *25-*27 (recommending denial of
appellate attorney's fees under the Lanham Act's exceptional case standard because, in the absence
of Eleventh Circuit precedent, awarding fees to prevailing party on *appeal* may involve different
considerations).  Nevertheless, on the facts of this case and without objection from Defendants or

17

at 6, 405-2 at 60).  Although the Retrobrands Defendants challenge counsel's time for the trial court proceedings, *see* (ECF No. 407-1 at 16), they articulate no opposition to the fees incurred for the appeal before the Eleventh Circuit.  *Compare* (ECF No. 405-2 at 9-51) (billing records for 2/14/2018 to 12/2/2022 for trial proceedings)*, with* (ECF No. 405-2 at 53-60) (billing records for 6/3/2022 to 4/16/2024 for appellate proceedings).[12]

Accordingly, with no objection from the Retrobrands Defendants and based on the Court's independent review of the billing records for the appellate proceedings, the undersigned finds that counsel expended reasonable hours in defending the appeal and no reduction to the claimed hours is warranted.  Consequently, Sprint should be awarded $319,667.98 for attorneys' fees from the Retrobrands Defendants for the hours expended in connection with the appellate proceedings.

### C.  Sprint is Entitled to Taxable Costs Pursuant to 28 U.S.C. § 1920

In its Renewed Motion for Taxable Costs, Sprint seeks $18,216.25 in costs.  *See generally* (ECF No. 400 at 1).  More specifically, Sprint seeks: (i) $1,100 in fees paid to the Clerk and for process of service at a rate of $65 per service attempt, which included service of initial complaints on Defendants and attempted service of trial subpoenas on Defendant Calabrese; and (ii) $17,136.35 in costs for printed and electronically recorded transcripts of depositions, pretrial hearings and conferences, and trial.  *See generally id.* at 4; *see also* (ECF No. 400-1 at 1-2) (Declaration of Lucy J. Wheatley in Support of Sprint's initial Motion for Taxable Costs Pursuant to 28 U.S.C. § 1920).

---

contrary governing case law, the undersigned accepts—without determining—that appellate fees are recoverable under § 1117(b).

[12] The Retrobrands Defendants' objection includes billing records for the trial court proceedings that were filed in 2022, with Sprint's initial motion for fees.  For purposes of comparison, however, the time records are the same as those filed with the instant Motions.  *Compare* (ECF No. 340-1)*, with* (ECF No. 407-1).

As the prevailing party on the claims and counterclaims in this case, Sprint is entitled to its costs pursuant to Federal Rule of Civil Procedure 54 and 28 U.S.C. § 1920. A prevailing party may recover costs as a matter of course unless otherwise directed by the Court or applicable statute. *See* Fed. R. Civ. P. 54(d)(1). Further, the items that may be taxed as costs are listed in 28 U.S.C. § 1920, and include, in pertinent part: (i) fees of the clerk and marshal; (ii) fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case; (iii) fees and disbursements for printing and witnesses; (iv) fees for exemplification and copies of papers necessarily obtained for use in the case; (v) docket fees under section 1923 of this title; and (vi) compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title. 28 U.S.C. § 1920. The Court has the discretion to award those costs specifically enumerated in § 1920, but the Court may not tax as costs anything not authorized by the statute. *See, e.g., Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441-42 (1987).

In support of the taxable costs, Sprint filed the Declaration of Lucy J. Wheatley, with documentation supporting the requested amounts. *See generally* (ECF No. 400-1). Ms. Wheatley avers that transcripts from the hearings and conferences were used to, among other things: (i) prepare and respond to motions, including but not limited to Sprint's objections to the report and recommendation on its preliminary injunction motion and the parties' motions in limine; (ii) prepare for trial by, among other things, identifying issues about which the Court had previously ruled on; and (iii) use in trial, including the daily trial transcripts that were used, among other things, to prepare Sprint's closing and successful Rule 50(a) motions. *Id.* at 2 ¶ 5. Further, according to Ms. Wheatley, the deposition transcripts were used to: (i) support Sprint's motion for summary judgment; (ii) oppose Defendants' motion for summary judgment; (iii) prepare

witnesses for trial; (iv) prepare cross-examination outlines for trial; and (v) at trial where live witnesses were unavailable and for impeachment.  *Id.* at ¶ 6.

Defendants did not oppose Sprint's request for taxable costs.  *See* (ECF No. 409 at 2 n.1). Accordingly, without objection, the Court finds the enumerated taxable costs recoverable pursuant to § 1920.  Thus, the undersigned recommends that Sprint's Renewed Motion for Taxable Costs be **granted** against all Defendants.

### D.  Sprint is Entitled to Nontaxable Costs Pursuant to FDUTPA

Sprint also seeks $22,381.71 in nontaxable costs, initially arguing that it is entitled to these costs pursuant to both the Lanham Act and FDUTPA.[13]  (ECF Nos. 405-1 at 6, 22, 405-2 at 6). Alternatively, Sprint argues that it can recover nontaxable costs because it prevailed on its FDUTPA claim.  *See* (ECF No. 405-1 at 22 n.7).  Here, the Jury Verdict confirms that Sprint prevailed on its FDUTPA claims against Defendants.  Specifically, the Jury found that Sprint had proven by a preponderance of the evidence that the Defendants were liable under FDUTPA with respect to the NEXTEL trademark.  (ECF No. 309 at 2) (Jury Verdict with affirmative answer to Question 3 as to all Defendants).  Thus, it is undisputed that Sprint prevailed on its FDUTPA claim.

Having prevailed on its FDUTPA claim after judgment in the trial court, and exhaustion of all appeals, Sprint may, in the Court's discretion, receive its reasonable and costs from the nonprevailing party.[14]  *See DJ Lincoln Enters., Inc. v. Google, LLC*, No. 20-CV-14159, 2022 WL

---

[13] Despite its request, Sprint acknowledges that entitlement to nontaxable costs under the Lanham Act remains uncertain.  *See* (ECF No. 405-1 at 22 n.7).  Indeed, Sprint concedes that under analogous statutory construction of the Copyright Act, the United States Supreme Court has held that absent explicit statutory instruction, "costs" are limited to those items listed in § 1920.  *Rimini St., Inc. v. Oracle USA, Inc.*, 586 U.S. 334, 340 (2019).  Because the undersigned finds that nontaxable costs are alternatively recoverable under FDUTPA, the Court need not determine entitlement to nontaxable costs under the Lanham Act.

[14] Section 501.2105 governing attorneys' fees under FDUTPA and most cases discussing the statute include both fees *and* costs in determining whether an award is appropriate.  *See, e.g., Hard Rock Cafe Int'l USA, Inc. v. RockStar Hotels, Inc.*, No. 17-CV-62013, 2019 WL 3412155, at *9

4287640, at *4 (S.D. Fla. July 28, 2022) (citing Fla. Stat. § 501.2105), *report and recommendation adopted*, 2022 WL 3754182 (S.D. Fla. Aug. 30, 2022); *Kipu Sys.*, 2021 WL 1891710, at *5 (recognizing that court has discretion to grant costs pursuant to FDUTPA). FDUTPA allows for the recovery of taxable and nontaxable costs. *See Chow*, 640 F. App'x at 836 n.4 ("In addition to [an] award of taxable costs, FDUTPA allows for the award of nontaxable costs, i.e., those costs that are not taxable under federal law at 28 U.S.C. § 1920.") (citing Fla. Stat. § 501.2105(1)-(4)); *N Cherry Elec. (PTY) LTD v. Ferreira*, No. 19-CV-23382, 2020 WL 2526516, at *3 (S.D. Fla. May 18, 2020) (awarding nontaxable costs under FDUTPA where costs were recoverable, reasonable, and supported by exhibits); *see also Tropical Paradise Resorts, LLC v. JBSHBM, LLC*, No. 18-CV-60912, 2021 WL 2269822, at *12 (S.D. Fla. Apr. 30, 2021) (recommending recovery of all reasonable costs pursuant to FDUTPA), *report and recommendation adopted*, 2021 WL 2024424 (S.D. Fla. May 21, 2021); *Alhassid v. Bank of Am., N.A.*, 688 F. App'x 753, 758 (11th Cir. 2017) (affirming a discretionary award of fees and costs under FDUTPA).

FDUTPA also permits the recovery of litigation expenses that are "reasonable and related to the litigation." *Bluegreen Vacations*, 2024 WL 3738890, at *18; *Unisource Discovery, Inc. v. Unisource Discovery, LLC*, No. 20-CV-23276, 2023 WL 4187094, at *3 (S.D. Fla. June 9, 2023), *report and recommendation adopted,* 2023 WL 4188118 (S.D. Fla. June 26, 2023) (awarding nontaxable costs pursuant to FDUTPA). Here, based on the claims and defenses in this case, the nontaxable costs incurred relate to the overall litigation in that the FDUTPA claim was intertwined with the Lanham Act claims.

---

(S.D. Fla. May 20, 2019), *report and recommendation adopted*, 2019 WL 3408888 (S.D. Fla. June 4, 2019); *Chow v. Chak Yam Chau*, 640 F. App'x 834, 838 (11th Cir. 2015); *Sodikart USA v. Geodis Wilson USA, Inc.*, No. 14-CV-22461, 2014 WL 6968073, at *3 (S.D. Fla. Dec. 9, 2014). Here, however, because the Court recommends that Sprint be awarded attorneys' fees under § 1117(b) of the Lanham Act, this discussion focuses solely on whether FDUTPA permits an award of nontaxable costs.

Further, in exercising its discretion to award nontaxable costs under FDUTPA, the Court may consider various equitable factors, including but not limited to: (i) the scope and history of the litigation; (ii) the ability of the opposing party to satisfy an award of fees; (iii) whether an award of fees against the opposing party would deter others from acting in similar circumstances; (iv) the merits of the respective positions—including the degree of the opposing party's culpability or bad faith; (v) whether the claim brought was not in subjective bad faith but frivolous, unreasonable, or groundless; (vi) whether the defense raised a defense mainly to frustrate or stall; and (vii) whether the claim brought involved a significant legal question under FDUTPA law. *Sodikart*, 2014 WL 6968073, at *3 (citing *Humane Soc. of Broward Cnty., Inc. v. Fla. Humane Soc.*, 951 So. 2d 966, 971-72 (Fla. 4th DCA 2007)); *DJ Lincoln Enters.*, 2022 WL 4287640, at *4 (citing to *Chow,* 640 F. App'x at 838 and factors enumerated in *Humane Society*); *Hard Rock Cafe Int'l,* 2019 WL 3412155, at *9.

Several of these factors weigh in favor of an award of nontaxable costs.  For example, (i) the complexity of this trademark litigation, the multi-year history, the jury trial spanning several days, the appeal to the Eleventh Circuit; (ii) the ability of these financially sophisticated Defendants to satisfy an award of reasonable costs; and (iii) deterrence to others from acting in similar circumstances, all support an award of nontaxable costs under FDUTPA.  Similarly, the merits of Sprint's position, evidenced by its prevailing on all claims and counterclaims and obtaining a multi-million-dollar judgment against Defendants weigh in its favor.  Other factors, however, are neutral as there is no evidence that: (i) the claims were brought in bad faith, or were frivolous, unreasonable, or groundless; (ii) the defenses were brought mainly to frustrated or stall; or (iii) the claims involved a significant legal question under FDUTPA.  Thus, based on the totality of the circumstances and in the exercise of discretion, the undersigned concludes that Sprint is entitled to its reasonable nontaxable costs pursuant to FDUTPA.

Sprint seeks to recover: (i) $300 in Westlaw fees; (ii) $2,815 in mediation fees; (iii) $430 in fees incurred for an affidavit to authenticate trial evidence; (iv) $7,587.39 in travel expenses incurred for depositions and trial preparation sessions outside the District; (v) $10,889.32 for fees incurred for a private investigator who testified at trial about Defendants' counterfeiting and infringement activities; and (vi) $360 in fees paid to the USPTO for certified copies of the trademark for use at trial. (ECF No. 405-2 at 6).

Based on a review of the record, the parties' claims and defenses, and the relevant case law, the Court finds that the requested nontaxable costs are reasonable, supported by invoices, and recoverable pursuant to FDUTPA. *See. e.g.*, *N. Cherry Elect.*, 2020 WL 2526516, at *3 (awarding costs under FDUTPA for service of process, filing fees, asset searches, postage, and photocopies); *Unisource Discovery*, 2023 WL 4187094, at *4 (awarding nontaxable costs for deposition transcripts, PACER and Westlaw charges, and travel expenses pursuant to FDUTPA). Accordingly, the undersigned recommends that Sprint be awarded its nontaxable costs without reduction.

## III.   RECOMMENDATION

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that:

1. Sprint's Motion for an Award of Nontaxable Costs and Attorneys' Fees and (ECF No. 346) be **DENIED AS MOOT**;

2. Sprint's redacted Amended Motion for an Award of Attorneys' Fees and Nontaxable Costs (ECF No. 401) be **DENIED AS DUPLICATIVE** of ECF No. 405, below;

3. Sprint's Renewed Motion for Taxable Costs be **GRANTED**. Sprint should be awarded $18,216.25 in taxable costs against all Defendants pursuant to 28 U.S.C. § 1920; and

4.   Sprint's Amended Motion for an Award of Attorneys' Fees and Nontaxable Costs (ECF No. 405) be **GRANTED IN PART AND DENIED IN PART**.  More specifically, Sprint should be awarded:

    i.   $2,388,881.40 in attorneys' fees against all Defendants for the proceedings before the District Court, reflecting a 5% overall reduction of the requested fees;

    ii.   $319,667.98 in attorneys' fees against the Retrobrands Defendants for the appellate proceedings before the Eleventh Circuit; and

    iii.   $22,381.71 in nontaxable costs against all Defendants for costs incurred before the District Court.

Within **10 days** after being served with a copy of this R&R, any party may serve and file written objections to any of the above findings and recommendations as provided by the Local Rules for this district. 28 U.S.C. § 636(b)(1); S.D. Fla. Mag. R. 4(b). Subsequently, within **10 days**, a party may respond to objections, if any, filed to this R&R.  Failure to timely object waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions contained in this R&R. 11th Cir. R.  3-1 (2024); *see Thomas v. Arn*, 474 U.S. 140 (1985).  Lastly, if counsel do not intend to file objections, they shall file a Notice of Non-Objection **within 7 days** of this R&R.

      **DONE AND ORDERED** in Chambers at Fort Lauderdale, Florida, on February 20, 2025.


ALICIA O. VALLE
UNITED STATES MAGISTRATE JUDGE

cc:  U.S. District Judge Jose E. Martinez
     All Counsel of Record